UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**WILLIAM B. BARNETT and AMELIA A. BARNETT, Plaintiffs**

**CIVIL ACTION NO. 2:10-cv-1928**

**VERSUS**

**FRANK J. D'AMICO, JR., INDIVIDUALLY, And/or FRANK J. D'AMICO, JR., APLC, CAPITELLI & WICKER, APLC, THE DISCON FIRM, APLC, FOWLER, RODRIGUEZ & CHALOS, APLC, CLEMENT DENNIS, LINDA SHARPE, RS MEDICAL, BLUE CROSS BLUE SHIELD OF LOUISIANA, and THE UNITED STATES OF AMERICA, and/or THE INTERNAL REVENUE SERVICE, Defendants**

**Formerly No. 2010-13239, c/w No. 2005-12216, Div."H"**
**22nd Judicial District Court**
**St. Tammany Parish**
**State of Louisiana**

---

# POST ARGUMENT BRIEF

---

**MAY IT PLEASE THE COURT:**

NOW INTO COURT, come defendants, FRANK J. D'AMICO JR. AND FRANK J. D'AMICO, JR. APLC (hereinafter collectively referred to as "D'Amico") who respectfully submit D'Amico's Post Argument Brief in the above captioned matter:

## ARGUMENT

### I. No Federal Preemption Has Been Asserted by the United States

The United States Government Internal Revenue Service (hereinafter referred to as the 'IRS') has not asserted federal preemption that would refute the application of 26 U.S.C. § 6323(b)(8) as it relates to the superpriority of attorney liens subject to *local law* [emphasis added] and a valid and enforceable contract between the attorney and his client. With no federal preemption, it is proper to apply the superpriority of attorney liens under the lens of local state law. Louisiana law, determines what attorney

advances are afforded the protection of superpriority. Pertinent to this action and by way of reiteration, the superpriority statute 26 U.S.C. § 6323(b)(8) states:

> With respect to a judgment or other amount in settlement of a claim or of a cause of action, as against an attorney who, under local law, holds a lien upon or a contract enforceable against such judgment or amount, to the extent of his reasonable compensation for obtaining such judgment or procuring such settlement...

26 U.S.C. § 6323(b)(8). Further, so long as the "amount of the lien reflects the extent to which their efforts reasonably contributed to the award, the attorney's lien will have priority". *Id.* To the extent of "reasonably contributed," the United States has not asserted any federal case law or statute to reflect what federal law exists that would govern which advances were and were not subject to the return of attorney advances.

State law is preempted only where there is evidence of Congressional intent. *Witly v. Delta Airlines, Inc.* 366 F.3d 380, 384 (5th Cir. 2004). "Congressional intent to preempt is inferred from the existence of a pervasive regulatory scheme or where state law conflicts with federal law." *Id.* (citing *Hodges v. Delta Airlines, Inc.* 44 F.3d at 335). The statutory construction of 26 U.S.C. § 6323(b)(8), specifically the phrasing "under local law," renders the federal statute subject to any local law that has governance over an existing attorney lien. Additionally, this case's complexity is evidence as to the lack of a pre-existing regulatory scheme that could be used to shed light on the proper allocation of the advances. Assuming that advances were reasonably made by the attorney, there is no conflict between the federal and state law. The federal statute is clear that state law is the proper vehicle to determine legitimacy, reasonableness, and scope of advances once there is a preexisting attorney lien in place. If the federal statute is interpreted and applied literally, local law, specifically in this suit, Louisiana law, is the proper vehicle to allocate all advances made, post and pre settlement, to D'Amcio.

## II. Louisiana Law and the Client Contract Provide for the Validity of All Advances

### *a. Louisiana Law*

D'Amico may advance court costs and expenses of litigation as set forth in the Louisiana Rules of Professional Conduct which are enunciated in Louisiana Revised Statute § 37:218. Court costs and expenses of litigation are permissible under § 37:218 and the Rules of Professional Conduct of the Louisiana State Bar Association, of which, the later acknowledges that expenses of litigation are non-exhaustive and broad stating the following: "Court costs and expenses of litigation include, but are *not necessarily limited to* [emphasis added], filing fees; depositions costs; expert witness fees; transcript costs; witness fees; electronic, investigation fees; litigation related expenses; and any other case specific expenses directly related to the representation undertaken."[1] Moreover, the term "fee" in Louisiana, is defined broadly as "any and all" advances made by the attorney.[2] A statutory interpretation of this statute reveals *no* specificities concerning restrictions on said advances, except that they must comply with the Rules of Professional Conduct. There is *no* law that neither limits, qualifies, nor quantifies what "any and all other amounts advanced" encompass in Louisiana.

In this matter, D'Amico made several related advances to Amelia Barnett including "Litigation/Misc. Expenses", "Medical Expenses," and interest, and are attached hereto as "Exhibit B". Additionally, all expansive advances that were made to William Barnett, attached hereto as "Exhibit C," were within the scope of 1.8(e)(3) including the following categories of expenses: "Cash/Living Advances," "Client-Co-Pay Advances", "Client Life Insurance Premiums," "Litigation/Misc. Expenses," and

---

[1] 1.8(e)(1) of the Rules of Professional Conduct of the Louisiana State Bar Association, as amended in 2006, expressly providing for the types of advances made in this case under 1.8(e), states that a lawyer may advance expenses of litigation provided they were reasonable under the circumstances. The statute provides a list of expenses which can typically be covered; however, the language preceding the list states "not necessarily limited to" certain expenses including those set out in Rule 1.8(e)(3)."

[2] The term "fee" means "the agreed upon fee, whether fixed or contingent, and any and all other amounts advanced by the attorney to or on behalf of the client, as permitted by the Rules of Professional Conduct of the Louisiana State Bar Association" as per La. Rev. Stat. § 37:218(B).

"Expenses Guaranteed by FJD, Jr." D'Amico concedes that in the event post settlement advances are deemed not available to be reimbursed, the amount applicable still exceeds the amount of registry in the court.[3]

Absent any law that prohibits "any and all other amounts advanced" made previously to and following settlement in connection to reimbursement of said advances, and the failure of the IRS to posit any law that would suggest that post settlement advances do not fall within the scope of "any and all advances," D'Amico is entitled to the funds.

Additionally, it is neither implied nor written in the Rules of Professional Conduct of Louisiana, specifically referencing Rule 1.8(e)(1), that there are any expenses that are prohibited as attorney advancements; thus, any traditional notions of what has historically been classified as attorney advances are not necessarily the same under the unique classification of advances in Louisiana.[4] Here, the advances that D'Amico made to the Barnetts fall squarely within the statutory construction of both Louisiana Revised Statute § 37:218 and 1.8(e)(1), which intentionally do not place the limitation on expenses of litigation and the various advances that the IRS wishes to interpose.

Likewise, the IRS has failed to present law that strictly prohibits or sanctions the cash, medical, living, or educational advances that were made to the Barnetts. Rather, the IRS humbly offers during oral argument that D'Amico's advances were purely "unreasonable" based on traditional notions of

---

[3] See Exhibits B and C attached. The attached cost summaries are being proffered as new evidence of the loans and all permitted via Rule 1.8(e) and case law in Louisiana. The new cost summary reports are supported by Affidavit, attached as Exhibit A, as most recent, updated cost summary reports that have become more extensive since previously admitted cost summary reports in evidence. D'Amico requests the court take judicial notice of the previously filed affidavits of Frank D'Amico Jr., Darryl Carimi, Amelia Barnett, and William Barnett attached to the previously filed Motion for Partial Summary Judgment and Memorandum in Response to Opposition By United States attesting to the nature of all advances made. The Barnetts state, "I was unable to work, I was left destitute and without income as a result of my injuries. Without these loans, I would not have been able to survive during the pendency of this litigation." attached herein as Exhibits D and E.

[4] The idea of what advances are "traditional" have been changed since the revisions to Rule 1.8 as amended in 2006.

attorney advances in the practice of law. D'Amico posits the aforementioned law that expressly allows for the disputed advances, which are unique in nature to Louisiana and fall under the protections afforded vis-à-vis Louisiana Statutes and the Rules of Conduct.

*b. Client Contract*

D'Amico is entitled to reimbursement of the advances made to the Barnetts pursuant to contractual obligations that exist between them. An attorney is entitled to recover his or her pertinent advances in accordance with the contractual provisions that are included in the attorney-client agreement, as per § 37:218 which is predicated on the existence of a written contract between the attorney and client and establishes the attorney superpriority.[5] The express client contract between D'Amico and the Barnetts is a binding, lawful, and, most critically, precise contract between the parties addressing reimbursement of *all* advances made to the Barnetts recoverable by D'Amico. As pertinent to this action and by way of reference and reiteration, § 37:218 provides that:

> By *written contract* signed by his client, an *attorney* [emphasis added] at law *may acquire as his fee an interest in the subject matter of a suit* [emphasis added], proposed suit, or claim in the assertion, prosecution, or defense of which he is employed….

La. Rev. Stat. Ann. § 37:218(A).

Moreover, as stated in the client contract, to which both D'Amico and the Barnetts are all signatories, the "Client understands that in the course of attorney's representation of client, attorney may incur reasonable and necessary expenses including but not limited to litigation expenses, medical expenses, expert fees, court costs, deposition fees etc., for and/on behalf of client."[6] An existing contract between an attorney and his or her client may be the legal instrument through which an attorney may validly collect on and "acquire as his fee" in any legal work in an effort to obtain a

---

[5] La. Rev. Stat. Ann. § 37:218 (effective July 1, 2001).

[6] See "Agreement and Disclosure Regarding Reimbursement of Interest and Repayment of Principal and Right of Intervention" marked Government Exhibit 7 and attached hereto as "Exhibit F".

judgment or settlement for a client.[7] In *Chittenden v. State Farm Mut. Auto. Ins. Co.*, 788 So. 2d 1140 (La. 2001), the court concluded that the attorney was not prohibited from entering into an agreement which obligated the client to reimburse the attorney for advances used to fund litigation in addition to the client's living expenses, holding that where an attorney seeks to collect on his or her advances, the client must agree in writing to such a charge and the interest rate must be lawful and reasonable.[8] Because D'Amico had a binding, written agreement with the Barnetts for agreement to give and receive repayment for advances, a common practice in personal injury law, and this contract is in accordance with Louisiana law, the contract provides a legal vehicle through which authorization for reimbursement of all relative advances exists.

III. Expenses are Covered Under Louisiana Case Law

*a. Advent of the First Rank Priority*

Louisiana law gives attorneys first rank on all professional fees over all other privileges and security interests under Chapter 9 of the Louisiana Commercial Laws. *Hussain v. Boston Old Colony Ins. Co.*, 311 F.3d 623, 640 (5th Cir. 2002) (citing La. Rev. Stat. § 9:5001(A).)[9] The Louisiana Revised Statute not only creates a privilege for attorney's fees against a settlement, but also includes medical and living expenses advanced to the client as well as direct litigation expenses.[10] *Theodile v. RPM Pizza, Inc.*, 865 So.2d 980, 984 (La.App. 3 Cir. 2/4/04) (citing *Dupuis v. Faulk*, 609 So. 2d 1190, 1193 (La. App. 3d Cir. 1992), stating under 1.8(e) of the Louisiana Code of Professional Conduct, both medical *and*

---

[7] 1.8(A) states: "By written contract signed by the client, an attorney at law may acquire as his fee an interest in the subject matter of a suit, proposed suit, or claim in the assertion, prosecution, or defense of which he is employed, whether the claim or suit be for money or for property."

[8] 1 Attorneys' Fees § 2:13 (3d ed.).

[9] La. Rev. Stat. § 9:5001(A) (effective July 1, 2001) (stating that a special privilege is granted to attorneys at law for the amount of their professional fees on all judgments obtained by them).

[10] La. Rev. Stat. Ann. § 37:218 (stating that all fees are agreed upon fees between the client and the attorney and include any and all other amounts advanced by the attorney to or on behalf of the client.)

[emphasis added] living expenses advanced to clients in a personal injury suit are recoverable.[11] Additionally, "fee," for purposes of attorney fee privilege, can include any amounts a firm advances to a client in a personal injury action for medical and living purposes.)[12]; *Billiot v. K-Mart Corp.*, 99-1569 (La.App. 1 Cir. 6/23/00), 764 So.2d 329, writ denied, 00-2211 (La.10/13/00) 771 So.2d 653 (stating that attorney was entitled to advances made in personal injury case). By way of inference, the state of Louisiana is distinctive from other states. Here, attorneys are allowed to make reasonable, yet expansive, advances to assist their clients in various areas of financial need that may not necessarily be directly litigation related, but, are rather targeted at assisting a client, who would otherwise be destitute, to prevent the client from settling prematurely.

Additionally, state law has addressed what expenses are allowed in Louisiana pursuant to all law governing attorney advances taken in the cumulative. The Louisiana Supreme Court determined any advances or guarantees by a lawyer to a client to provide financial assistance, especially concerning living expenses, do not violate the spirit of the Louisiana Code of Professional Conduct. *Edwins*, 329 So. 2d at 446. This policy is implicated in this case, and will affect future attorneys who would reasonably refrain from taking on representation of clients if they were second in command to the government before recovering any advances.

*b. Policy Considerations*

By way of policy, the Louisiana Supreme Court strived to discourage forced, early settlements by impoverished people into early settlements because they were unable to wait out the delays of litigation

---

[11] In finding that those expenses were justified, the Court referenced *Louisiana State Bar Ass'n v. Edwins, 329* So. 2d 437, 446 (La. 1976), and stated: "Nor do we see how a lawyer's guarantee of necessary medical treatment for his client...can be regarded as unethical, if the lawyer for reasons for *humanity* [emphasis added] can afford to do so."

[12] *Dupuis* also references that, pursuant to *Brotherhood of Railroad Trainmen v. Virginia ex rel. Virginia State Bar*, 84 S. Ct. 1113, 1116 (1964), the constitutionality of a statute that denies a client subsistence from an attorney could potentially be called into question for its constitutionality.

that are necessary to enforce a cause of action. *Dupuis v. Faulk*, 609 So. 2d 1190, 1192 (La. Ct. App. 1992) (citing *Edwins*, 329 So.2d at 446). *Edwins* sets the limits on the privilege, including the following: (1) the advances cannot be promised as an inducement to obtain professional employment, nor made until after the relationship has commenced (2) the advances were *reasonably necessary* under the facts (3) the client remained liable for repayment of all funds, whatever the outcome of the litigation and (4) the attorney did not encourage public knowledge of his practice as an inducement to secure the representation of others.[13] *Chittenden*, 788 So. 2d at 1140.

First, all advances were made after representation had commenced and were, subsequently, not used to secure the Barnetts as clients. Second, the advances were reasonably necessary as per the financial status of the Barnetts after their severe personal injuries sustained that prompted the underlying litigation, which then prompted the advances. In respect to the necessity of the advances, the financial status of the Barnetts was extreme in nature, and most critically, minimal in nature in relative comparison to the expenses and financial demands the Barnetts faced during litigation. Third, the Barnetts were contractually liable to repayment of the advances to D'Amico pursuant to the aforementioned written contract agreement.[14] Lastly, D'Amico did not use the advancements in any way to bolster his practice, and the United States has never tried to suggest such.

The wording of 1.8(e) and the current practice of law, as supported by the aforementioned cases in Louisiana, allows attorneys to advance client funds under the constraints and policy principals enunciated in *Edwins*. All medical, living, and educational expenses are provided for pursuant to Louisiana law. D'Amico's advances to the Barnetts including living, medical, and educational expenses are all permissible within the scope of Louisiana law.

## CONCLUSION

[14] *See* Government Exhibit 8 as continuation of Exhibit 7 client contract.

D'Amico is entitled to superpriority and full reimbursement of both previous and post settlement advances due to the inherent nature of the advances justified and sufficient as per the Federal Statute pursuant to Louisiana Revised Statute LA R.S. § 37:218, Rule 1.8 of the Louisiana Code of Professional Ethics, and Louisiana case law. The United States does not claim federal preemption, and, absent any such claim, Louisiana law provides the governing law that justifies D'Amico's advances to the Barnetts. In addition, the contractual agreement between the Barnetts and D'Amico at the start of representation specifically covered all aforementioned advances. Because of the deep-rooted Louisiana law providing for such advances that, unambiguously cover medical, living, and educational loans, D'Amico is entitled to remuneration.

Respectfully Submitted:

**FRANK J. D'AMICO, JR., APLC**

**FRANK J. D'AMICO, JR., (#17519)**
622 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-7272
Facsimile: (504) 525-9522