Frank J. D'Amico, Jr., APLC

622 Baronne Street

New Orleans, LA 70113

RE: USDC   Case #2:10cv-1928-ILRL-ALC

William and Amelia Barnett

WILLIAM BARNETT

INTEREST CALCULATIONS ON COURT APPROVED CLIENT ADVANCES & MEDICALS PER OPINION 9/3/14

INTEREST DUE THROUGH 05/03/10

| DATE OF DRAW | # OF DAYS FROM DRAW TILL 5/3/2010 | FUNDING SOURCE | INTEREST RATE | DATE OF ADVANCE | CHECK # | AMOUNT OF ADVANCE | No. of Days From Date of Advance Through 5/03/10 | Stated Interest Rate | Interest Factor Utilizing A 360 Day Year | Interst Due |
|---|---|---|---|---|---|---|---|---|---|---|
| **Advances** | | | | | | | | | | |
| 11/20/2006 | | Advocate | 17% | 11/14/2006 | 24590 | $ 2,500.00 | 1260.00 | 17.0% | 59.5% | $ 1,487.50 |
| 11/29/2007 | | Regions | 8.5% | 11/29/2007 | 27990 | 500.00 | 886.00 | 8.5% | 20.9% | 104.60 |
| 11/29/2007 | | | 8.5% | 12/4/2007 | 28049 | 500.00 | 886.00 | 8.5% | 20.9% | 104.60 |
| 11/29/2007 | | | 8.5% | 12/4/2007 | 28047 | 1,500.00 | 886.00 | 8.5% | 20.9% | 313.79 |
| 2/22/2008 | | Regions new rate | 7.0% | 1/16/2008 | 28479 | 500.00 | 801.00 | 7.0% | 15.6% | 77.88 |
| 2/22/2008 | | | 7.0% | 2/28/2008 | 28884 | 500.00 | 801.00 | 7.0% | 15.6% | 77.88 |
| 2/22/2008 | | | 7.0% | 2/28/2008 | 28883 | 500.00 | 801.00 | 7.0% | 15.6% | 77.88 |
| 2/22/2008 | | | 7.0% | 3/25/2008 | 29100 | 1,600.00 | 801.00 | 7.0% | 15.6% | 249.20 |
| 2/22/2008 | | | 7.0% | 4/29/2008 | 29429 | 1,600.00 | 801.00 | 7.0% | 15.6% | 249.20 |
| 2/22/2008 | | | 7.0% | 5/28/2008 | 29686 | 500.00 | 801.00 | 7.0% | 15.6% | 77.88 |
| 7/15/2008 | | First Bank & Trust | 6.5% | 5/30/2008 | 29701 | 1,100.00 | 657.00 | 6.5% | 11.9% | 130.49 |
| 7/15/2008 | | | 6.5% | 6/23/2008 | 29912 | 434.73 | 657.00 | 6.5% | 11.9% | 51.57 |
| 12/17/2008 | | | 6.5% | 12/16/2008 | 31360 | 1,600.00 | 502.00 | 6.5% | 9.1% | 145.02 |
| 2/10/2009 | | | 6.5% | 2/2/2009 | 31700 | 642.00 | 447.00 | 6.5% | 8.1% | 51.81 |
| 3/16/2009 | | | 6.5% | 3/3/2009 | 31899 | 1,092.00 | 413.00 | 6.5% | 7.5% | 81.43 |
| 7/1/2009 | | Advocate | 12.0% | 6/30/2009 | 32862 | 958.00 | 306.00 | 12.0% | 10.2% | 97.72 |
| 7/30/2009 | | | 12.0% | 7/29/2009 | 33128 | 958.00 | 277.00 | 12.0% | 9.2% | 88.46 |
| 9/30/2009 | | | 12.0% | 9/29/2009 | 33641 | 958.00 | 215.00 | 12.0% | 7.2% | 68.66 |
| **Total Advances** | | | | | | $17,942.73 | | | | $ 3,535.54 |
| **Medical Payments** | | | | | | | | | | |
| 4/25/2007 | | Advocate | 17.0% | 12/6/2006 | 24678 | $ 300.00 | 1104.00 | 17.0% | 52.1% | $ 156.40 |
| 4/25/2007 | | | 17.0% | 12/29/2006 | 24925 | 500.00 | 1104.00 | 17.0% | 52.1% | 260.67 |
| 4/25/2007 | | | 17.0% | 4/24/2007 | 25918 | 700.00 | 1104.00 | 17.0% | 52.1% | 364.93 |
| 6/25/2007 | | | 17.0% | 5/29/2007 | 26270 | 50.00 | 1043.00 | 17.0% | 49.3% | 24.63 |
| 6/25/2007 | | | 17.0% | 6/12/2007 | 26398 | 300.00 | 1043.00 | 17.0% | 49.3% | 147.76 |
| 11/29/2007 | | Regions | 8.5% | 10/9/2007 | 27516 | 200.00 | 886.00 | 8.5% | 20.9% | 41.84 |
| 11/29/2007 | | | 8.5% | 10/9/2007 | 27517 | 100.00 | 886.00 | 8.5% | 20.9% | 20.92 |
| 11/29/2007 | | | 8.5% | 10/30/2007 | 27759 | 100.00 | 886.00 | 8.5% | 20.9% | 20.92 |
| 11/29/2007 | | | 8.5% | 12/4/2007 | 28049 | 500.00 | 886.00 | 8.5% | 20.9% | 104.60 |
| 2/22/2008 | | Regions | 7.0% | 2/14/2008 | 28734 | 263.62 | 801.00 | 7.0% | 15.6% | 41.06 |
| 2/22/2008 | | | 7.0% | 3/27/2008 | 29108 | 247.46 | 801.00 | 7.0% | 15.6% | 38.54 |
| 2/22/2008 | | | 7.0% | 4/11/2008 | 29283 | 268.46 | 801.00 | 7.0% | 15.6% | 41.81 |
| 2/22/2008 | | | 7.0% | 4/11/2008 | 29277 | 1,960.00 | 801.00 | 7.0% | 15.6% | 305.27 |
| 2/22/2008 | | | 7.0% | 5/2/2008 | 29466 | 186.00 | 801.00 | 7.0% | 15.6% | 28.97 |
| 2/22/2008 | | | 7.0% | 5/9/2008 | 29543 | 451.81 | 801.00 | 7.0% | 15.6% | 70.37 |
| 7/15/2008 | | First Bank & Trust | 6.5% | 6/17/2008 | 29851 | 380.00 | 657.00 | 6.5% | 11.9% | 45.08 |
| 7/15/2008 | | | 6.5% | 6/23/2008 | 29912 | 234.73 | 657.00 | 6.5% | 11.9% | 27.84 |
| 7/15/2008 | | | 6.5% | 6/25/2008 | 29927 | 469.98 | 657.00 | 6.5% | 11.9% | 55.75 |
| 8/14/2008 | | Regions | 6.0% | 8/14/2008 | 30368 | 1,025.30 | 627.00 | 6.0% | 10.5% | 107.14 |
| 8/14/2008 | | | 6.0% | 9/10/2008 | 30551 | 505.15 | 627.00 | 6.0% | 10.5% | 52.79 |
| 8/14/2008 | | | 6.0% | 9/10/2008 | 30554 | 855.00 | 627.00 | 6.0% | 10.5% | 89.35 |
| 10/27/2008 | | First Bank & Trust | 6.5% | 10/16/2008 | 30861 | 513.15 | 553.00 | 6.5% | 10.0% | 51.24 |
| 10/27/2008 | | | 6.5% | 10/22/2008 | 30928 | 115.20 | 553.00 | 6.5% | 10.0% | 11.50 |
| 10/27/2008 | | | 6.5% | 10/22/2008 | 30925 | 203.81 | 553.00 | 6.5% | 10.0% | 20.35 |
| 10/27/2008 | | | 6.5% | 10/22/2008 | 30928 | 500.00 | 553.00 | 6.5% | 10.0% | 49.92 |
| 10/27/2008 | | | 6.5% | 10/22/2008 | 31001 | 127.49 | 553.00 | 6.5% | 10.0% | 12.73 |
| 11/4/2008 | | | 6.5% | 10/30/2008 | 30986 | 475.00 | 545.00 | 6.5% | 9.8% | 46.74 |
| 11/19/2008 | | | 6.5% | 11/12/2008 | 31103 | 518.15 | 530.00 | 6.5% | 9.6% | 49.58 |
| 12/8/2008 | | | 6.5% | 12/5/2008 | 31280 | 518.15 | 511.00 | 6.5% | 9.2% | 47.81 |
| 1/12/2009 | | | 6.5% | 1/7/2009 | 31495 | 518.15 | 476.00 | 6.5% | 8.6% | 44.53 |
| 1/12/2009 | | | 6.5% | 1/12/2009 | 31535 | 500.00 | 476.00 | 6.5% | 8.6% | 42.97 |
| 1/26/2009 | | | 6.5% | 1/13/2009 | 31543 | 75.00 | 462.00 | 6.5% | 8.3% | 6.26 |
| 2/10/2009 | | | 6.5% | 2/2/2009 | 31697 | 121.00 | 447.00 | 6.5% | 8.1% | 9.77 |
| 2/12/2009 | ** | | 6.5% | 2/12/2009 | 31769 | 18.00 | 445.00 | 6.5% | 8.0% | 1.45 |
| 3/18/2009 | ** | | 6.5% | 3/18/2009 | 32028 | 20.00 | 411.00 | 6.5% | 7.4% | 1.48 |
| 3/26/2009 | | | 6.5% | 3/25/2009 | 32105 | 500.00 | 403.00 | 6.5% | 7.3% | 36.38 |
| 4/8/2009 | | | 6.5% | 4/1/2009 | 32146 | 500.00 | 390.00 | 6.5% | 7.0% | 35.21 |
| 5/6/2009 | | Advocate | 12.0% | 5/4/2009 | 32374 | 855.00 | 362.00 | 12.0% | 12.1% | 103.17 |
| 7/30/2009 | | | 12.0% | 7/6/2009 | 32901 | 46.00 | 277.00 | 12.0% | 9.2% | 4.25 |
| 7/30/2009 | | | 12.0% | 7/29/2009 | 33119 | 54.00 | 277.00 | 12.0% | 9.2% | 4.99 |
| 6/12/2009 | | | 12.0% | 7/29/2009 | 33121 | 148.00 | 325.00 | 12.0% | 10.8% | 16.03 |
| 7/30/2009 | | | 12.0% | 7/29/2009 | 33120 | 75.00 | 277.00 | 12.0% | 9.2% | 6.93 |
| 8/14/2009 | ** | | 12.0% | 8/14/2009 | 33294 | 56.00 | 262.00 | 12.0% | 8.7% | 4.89 |
| 10/14/2009 | | | 12.0% | 10/12/2009 | 33728 | 75.00 | 201.00 | 12.0% | 6.7% | 5.03 |
| 10/27/2009 | ** | | 12.0% | 10/27/2009 | 33871 | 125.00 | 188.00 | 12.0% | 6.3% | 7.83 |
| 11/24/2009 | ** | | 12.0% | 11/24/2009 | 34090 | 250.90 | 160.00 | 12.0% | 5.3% | 13.38 |
| 12/17/2009 | | | 12.0% | 11/25/2009 | 34096 | 20.00 | 137.00 | 12.0% | 4.6% | 0.91 |
| 12/17/2009 | | | 12.0% | 11/25/2009 | 34099 | 66.91 | 137.00 | 12.0% | 4.6% | 3.06 |

| | A | B | C | D | E | F | G | H | I | J | K |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Frank J. D'Amico, Jr., APLC | | | | | | | | | | |
| 2 | 622 Baronne Street | | | | | | | | | | |
| 3 | New Orleans, LA 70113 | | | | | | | | | | |
| 4 | | | RE: USDC | | Case #2:10cv-1928-ILRL-ALC | | | | | | |
| 5 | | | | | William and Amelia Barnett | | | | | | |
| 6 | WILLIAM BARNETT | | | | | | | | | | |
| 7 | INTEREST CALCULATIONS ON COURT APPROVED CLIENT ADVANCES & MEDICALS PER OPINION 9/3/14 | | | | | | | | | | |
| 8 | | | | | | | | | INTEREST DUE THROUGH 05/03/10 | | |
| 9 | DATE OF DRAW | # OF DAYS FROM DRAW TILL 5/3/2010 | FUNDING SOURCE | INTEREST RATE | DATE OF ADVANCE | CHECK # | AMOUNT OF ADVANCE | No. of Days From Date of Draw Through 5/03/10 | Stated Interest Rate | Interest Factor Utilizing A 360 Day Year | Interst Due |
| 80 | 12/17/2009 | | | 12.0% | 11/25/2009 | 34100 | 87.64 | 137.00 | 12.0% | 4.6% | 4.00 |
| 81 | 12/17/2009 | | | 12.0% | 11/25/2009 | 34101 | 124.27 | 137.00 | 12.0% | 4.6% | 5.67 |
| 82 | 12/17/2009 | | | 12.0% | 11/25/2009 | 34102 | 150.00 | 137.00 | 12.0% | 4.6% | 6.85 |
| 83 | 12/17/2009 ** | | | 12.0% | 12/17/2009 | 34258 | 608.82 | 137.00 | 12.0% | 4.6% | 27.80 |
| 84 | | | Total Medical Payments | | | | $17,563.15 | | | | $ 2,729.35 |
| 85 | | | | | | | | | | | |
| 86 | | | Total All Client Costs | | | | $ 35,505.88 | | | | $ 6,264.89 |
| 87 | | | | | | | | | | | |
| 88 | | | | | | | | | | | |
| 89 | Notes: | | | | | | | | | | |
| 90 | All interest computed utilizing 360 day year and simple interest method. | | | | | | | | | | |
| 91 | | | | | | | | | | | |
| 92 | ** Exact date of draw unable to be determined; therefore date of advance utilized | | | | | | | | | | |

WILLIAM B. BARNETT AND
AMELIA BARNETT

CIVIL ACTION

VERSUS

NO. 10-1928

FRANK J. D'AMICO, JR., APLC, ET AL

SECTION "B" (5)

## WILLIAM BARNETT

SUPPORTING DOCUMENTION FOR COURT APPROVED "ADVANCES"
INTEREST CALCULATIONS

# ADVOCATE FINANCIAL L.L.C.
# RATE 17%

# AMENDED AND RESTATED
## LAW FIRM REVOLVER PROMISSORY NOTE

| Principal $900,000.00 | Interest Rate Prime + 8.75% | Loan Date April 17, 2007 | Line of Credit Termination Date April 17, 2008 | Loan Number N/A | Firm Number 91-4 |
|---|---|---|---|---|---|

The information contained in this box is for Lender's internal use only and does not constitute a portion of the terms and conditions of this promissory note.

**LAW FIRM:** Frank J. D'Amico, Jr.,
a Professional Law Corporation
(TIN 72-1178721)
622 Baronne Street
New Orleans, LA 70113

**LENDER:** Advocate Financial, L.L.C.
(TIN 72-1246887)
P. O. Box 80839
5555 Hilton Avenue, Suite 410
Baton Rouge, Louisiana 70808

**1. PROMISE TO PAY.** Frank J. D'Amico, Jr., a Professional Law Corporation ("Law Firm"), promises to pay to the order of Advocate Financial, L.L.C., a Louisiana limited liability company ("Lender"), ON DEMAND, or if no demand is made by Lender then as set forth in Section 5 below, the sum of Nine Hundred Thousand Dollars and No Cents ($900,000.00), or such other amounts as may be shown from time to time on the books and records of Lender as reflecting the aggregate unpaid principal balance of Advances made to Law Firm under this Note, together with simple interest assessed on a variable rate basis at the rate per annum (the "Stated Rate") equal to 8.75% over the Bank Prime Loan Rate (defined below), as such interest rate may be adjusted from time to time, one or more times, assessed on the unpaid principal balance of this Note as outstanding from time to time, commencing on the date of funding and continuing until this Note is paid in full. Law Firm will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing from time to time.

**2. LOAN AGREEMENT.** This Note is (a) issued and delivered pursuant to that certain Amended and Restated Master Loan Facility Agreement dated April 17, 2007, as amended, modified, supplemented, or renewed from time to time, between Law Firm and Lender (collectively, the "Loan Agreement") and evidences the Line of Credit; (b) subject to the terms and conditions of the Loan Agreement and the other Loan Documents; and (c) secured by and entitled to the benefit of the Collateral described in the Loan Agreement and the other Loan Documents. Reference is hereby made to the Loan Agreement for a description of certain rights, limitation of rights and obligations of the parties hereto and for the meanings assigned to terms used and not defined herein. To the extent there is a conflict between the terms hereof and the terms of the Loan Agreement, the terms of the Loan Agreement shall control.

**3. VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change on or about January 15th of each year based on any change in the bank prime loan rate as identified by the Louisiana Supreme Court pursuant to Rule 1.8(e)(5)(iv) of the Louisiana Rules of Professional Conduct (the "Bank Prime Loan Rate"). As of the most recent January 15th, the Bank Prime Loan Rate was 8.25% per annum. The Stated Rate to be applied to the unpaid principal balance of this Note will be 8.75% over the Bank Prime Loan Rate, resulting in an initial Stated Rate of 17% per annum. In no event, however, shall the interest contracted for, charged or received under this Note, including any fees or other charges attendant to the loan evidenced hereby, exceed 10% over above the bank prime loan rate of interest as reported by the Federal Reserve Board on January 15th of each year in which this Note is outstanding, and the Stated Rate shall be considered modified automatically to the extent necessary to comply at all times with said Rule 1.8(e)(5)(iv). Any amounts of interest previously paid to Lender in excess of the amount permitted by said Rule 1.8(e)(5)(iv) shall be applied by Lender to reduce the principal of the indebtedness evidenced by this Note, or, at Lender's option, be refunded to Law Firm.

**4. REVOLVING NOTE.** The loan evidenced by this Note is a revolving loan pursuant to which Law Firm may from time to time re-borrow all or any portion of the principal balance of this Note which is repaid or prepaid so long as the total principal amount outstanding under this Note does not exceed the face amount of this Note ($900,000.00).

**5. PAYMENT TERMS.** Law Firm will pay interest on the outstanding principal balance of this Note on a monthly basis until the Line of Credit Termination Date. All such interest payments shall be due and payable within ten (10) days following Law Firm's receipt of Lender's invoice therefor. In addition to the foregoing monthly interest payments, the entire outstanding principal amount of Advances made to Law Firm hereunder, together with all accrued and unpaid interest thereon, shall be due and payable by Law Firm to Lender ON DEMAND, or if no demand is made by Lender, on the Line of Credit Termination Date. Further, with respect to any particular Case the expenses of which were funded by Advances made to Law Firm hereunder, Law Firm shall pay the entire outstanding principal amount of such Advances, together with all accrued and unpaid interest thereon, ON DEMAND, or if no demand is made by Lender, upon the earlier to occur of (a) the receipt by Law Firm of any funds in satisfaction of a favorable full or partial settlement or judgment of such Case or (b) the Line of Credit Termination Date.

**6. PREPAYMENT.** Law Firm may prepay this Note in full at any time by paying the then unpaid principal balance of this Note, plus accrued and unpaid interest and any unpaid fees and charges through date of prepayment. Even if Law Firm prepays this Note in full, or if Lender accelerates payment, Law Firm understands that, unless otherwise required by law, any prepaid fees or charges are not subject to rebate and are earned by Lender at the time this Note is signed.

**7. ADVANCES AT LENDER'S DISCRETION.** Law Firm acknowledges and agrees that no provision hereof, and no course of dealing by Lender in connection herewith, shall be deemed to create or shall imply the existence of any commitment or obligation on the part of Lender to make Advances to Law Firm hereunder; any and all Advances made to Law Firm under this Note shall be at the sole and absolute discretion of Lender. Without in any way limiting the foregoing, Lender will require at a minimum compliance, to the sole and absolute satisfaction of Lender, with the following requirements prior to making Advances to Law Firm under this Note.

{N1643506.1}

-1-

# INDIVIDUAL GUARANTY AGREEMENT

GUARANTOR: Frank J. D'Amico, Jr.
(SSN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)
622 Baronne Street
New Orleans, LA 70113

LENDER: Advocate Financial, L.L.C.
(TIN 72-1246887)
P. O. Box 80839
5555 Hilton Avenue, Suite 410
Baton Rouge, Louisiana 70808

LAW FIRM: Frank J. D'Amico, Jr., a
Professional Law Corporation
(TIN 72-1178721)
622 Baronne Street
New Orleans, LA 70113

THIS GUARANTY AGREEMENT, dated (the "Effective Date"), is entered into between Frank J. D'Amico, Jr., a Louisiana resident, and Advocate Financial, L.L.C., a Louisiana limited liability company, and is made and executed on the following terms and conditions. It is expressly agreed and understood by and among Law Firm, Guarantor and Lender that the execution and delivery to Lender of this Guaranty is a condition precedent to Lender making the Loan to Law Firm, or otherwise extending credit to Law Firm and that Lender is relying on this Guaranty in making the Loan to Law Firm, and that Lender would not make the Loan to Law Firm without this Guaranty.

1. **DEFINITIONS.** The following terms shall have the following meanings when used in this Agreement. Terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the **Amended and Restated Master Loan Facility Agreement** executed by Frank J. D'Amico, Jr., a Professional Law Corporation and Lender dated April 17, 2007, as amended, modified, supplemented, or renewed from time to time (the "Loan Agreement").

"**Agreement**" means this Individual Guaranty Agreement as amended or modified from time to time.

"**Guarantor**" means Frank J. D'Amico, Jr. and includes individually, collectively, interchangeably and without limitation, any and all guarantors, sureties, and accommodation parties in connection with the Indebtedness.

"**Indebtedness**" means the indebtedness of Law Firm evidenced by its Notes, in principal, interest, costs, expenses, attorneys' fees and all other fees and charges, and all other indebtedness and costs and expenses for which Law Firm is responsible under the Loan Agreement or under any of the Loan Documents. "Indebtedness" also includes any and all other loans, extensions of credit, obligations, debts and liabilities, including principal, interest, costs, expenses and attorneys' fees and all other fees and charges plus interest thereon, of Law Firm that may now and in the future be owed to or incurred in favor of Lender, as well as all claims by Lender against Law Firm, whether existing now or later, voluntary or involuntary, related or unrelated, due or to become due, direct or indirect or by way of assignment, absolute or contingent, liquidated or unliquidated, individually or jointly with others, of every nature and kind whatsoever, whether Law Firm may be obligated as guarantor, surety, accommodation party or otherwise, whether recovery upon such indebtedness may be or may become barred by prescription, and whether such indebtedness may be or may become void or otherwise unenforceable.

"**Law Firm**" means Frank J. D'Amico, Jr., a Professional Law Corporation and it successors and assigns.

"**Lender**" means Advocate Financial, L.L.C., TIN: 72-1246887, its successors and assigns, and any subsequent holder or holders of the Notes, or any interest therein.

"**Note**" means a promissory note executed by Law Firm evidencing Law Firm's obligations in favor of Lender, as well as any substitute, replacement or refinancing note or notes therefor.

2. **GUARANTEE OF LAW FIRM'S INDEBTEDNESS.** Guarantor hereby absolutely, unconditionally and irrevocably agrees to, and by these presents does hereby, guarantee the prompt and punctual payment, performance and satisfaction of any and all of Law Firm's present and future Indebtedness in favor of Lender.

3. **AMOUNT OF GUARANTY.** The amount of this Guaranty is unlimited.

4. **CONTINUING GUARANTY.** THIS IS A CONTINUING GUARANTY UNDER WHICH GUARANTOR AGREES TO GUARANTEE PAYMENT OF LAW FIRM'S PRESENT AND FUTURE INDEBTEDNESS IN FAVOR OF LENDER ON A CONTINUING BASIS. Guarantor's obligations and liability under this Agreement shall be open and continuous in effect. Guarantor intends to and does hereby guarantee at all times the prompt and punctual payment, performance and satisfaction of all of Law Firm's present and future Indebtedness in favor of Lender up to the maximum limitation, if any, set forth above. Any payments made on Law Firm's Indebtedness will not discharge or diminish the obligations and liability of Guarantor under this Agreement for any remaining and succeeding Indebtedness of Law Firm in favor of Lender.

5. **JOINT, SEVERAL AND SOLIDARY LIABILITY.** Guarantor's obligations and liability under this Agreement shall be on a "solidary" or "joint and several" basis along with Law Firm to the same degree and extent as if Guarantor had been and will be a co-borrower, co-principal obligor or co-maker of Law Firm's Indebtedness. In the event that there are other guarantors, endorsers or sureties of all or any portion of Law Firm's Indebtedness, Guarantor's obligations and liability hereunder shall be on a "solidary" or "joint and several" basis along with such other guarantors, endorsers and/or sureties.

**6. DURATION OF GUARANTY.** Guarantor's obligations and liability hereunder shall remain in full force and effect until such time as this Agreement may be canceled or otherwise terminated by Lender under a written cancellation instrument signed by Lender in favor of Guarantor (subject to the automatic reinstatement provisions below). It is anticipated that fluctuations may occur in the aggregate amount of Law Firm's Indebtedness and it is specifically acknowledged and agreed to by Guarantor that reductions in the amount of Law Firm's Indebtedness, even to zero ($0.00) dollars, prior to Lender's written cancellation of this Agreement, shall not constitute or give rise to a termination of this Agreement.

**7. DEFAULT.** Should any event of default occur or exist under any of Law Firm's Indebtedness in favor of Lender, and notwithstanding any limitation on Lender's right to assert a deficiency against Law Firm, Guarantor unconditionally and absolutely agrees to pay Lender, immediately following demand by Lender, the then unpaid amount of Law Firm's Indebtedness, subject to the maximum principal dollar amount limitation, if any, set forth in Section 3 above.

**8. GUARANTOR'S WAIVERS.** Guarantor hereby waives:

(a) any right to revoke this Guaranty with respect to the obligations guaranteed hereunder.

(b) any right to require Lender to do any of the following before Guarantor is obligated to pay or perform the obligations guaranteed hereunder before Lender may proceed against Guarantor:

    (i)    sue or exhaust remedies against Borrower or any other person liable for the obligations guaranteed hereunder;

    (ii)    sue on an accrued right of action in respect of any of the obligations guaranteed hereunder or bring any other action or exercise any other right, or exhaust any other remedy; or

    (iii)    enforce rights against Borrower's assets or the collateral pledged by Borrower to secure the obligations guaranteed hereunder.

(c) any rights relating to the timing, manner or conduct of Lender's enforcement of rights against Borrower's assets or the collateral pledged by Borrower to secure the obligations guaranteed hereunder.

(d) if Guarantor and Borrower (or any other person) have pledged assets to secure the obligations guaranteed hereunder, any right to require Lender to proceed first against collateral pledged by Borrower (or any other person) before proceeding against the collateral pledged by Guarantor.

(e) notice of Lender's acceptance of this Agreement.

(f) presentment for payment of Law Firm's Indebtedness, notice of dishonor and of nonpayment, notice of intention to accelerate, notice of acceleration, protest and notice of protest, collection or institution of any suit or other action by Lender in collection thereof, including any notice of default in payment thereof, or other notice to, or demand for payment thereof, on any party.

(g) any right to require Lender to notify Guarantor of any nonpayment relating to any collateral directly or indirectly securing Law Firm's Indebtedness, or notice of any action or inaction on the part of Law Firm, Lender, or any other guarantor, surety or endorser of Law Firm's Indebtedness, or notice of the creation of any new or additional Indebtedness subject to this Agreement.

(h) any rights to demand or require collateral security from the Law Firm or any other person as provided under applicable Louisiana law or otherwise.

(i) any right to require Lender to notify Guarantor of the terms, time and place of any public or private sale of any collateral directly or indirectly securing Law Firm's Indebtedness.

(j) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, or any action in lieu of foreclosure.

(k) any election of remedies by Lender that may destroy or impair Guarantor's subrogation rights or Guarantor's right to proceed for reimbursement against Law Firm or any other guarantor, surety or endorser of Law Firm's Indebtedness, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging Law Firm's Indebtedness.

(l) any disability or other defense of Law Firm, or any other guarantor, surety or endorser, or any other person, or by reason of the cessation from any cause whatsoever, other than payment in full of Law Firm's Indebtedness.

Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences, and that, under the circumstances, such waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law.

**9. GUARANTOR'S SUBORDINATION OF RIGHTS.** In the event that Guarantor should for any reason: (a) advance or lend monies to Law Firm; (b) make any payment(s) to Lender or others for and on behalf of Law Firm under Law Firm's Indebtedness; (c) make any payment to Lender in total or partial satisfaction of Guarantor's obligations and liabilities under this Agreement; or (d) if any of Guarantor's property is used to pay or satisfy any of Law Firm's Indebtedness, Guarantor hereby agrees that any and all rights that Guarantor may have or acquire to collect from or to be reimbursed by Law Firm (or from or by any other

guarantor, endorser or surety of Law Firm's Indebtedness), whether Guarantor's rights of collection or reimbursement arise by way of subrogation to the rights of Lender or otherwise, shall in all respects be subordinate, inferior and junior to the rights of Lender to collect and enforce payment, performance and satisfaction of Law Firm's then remaining Indebtedness, until such time as Law Firm's Indebtedness is fully paid and satisfied.

**10. GUARANTOR'S RECEIPT OF PAYMENTS.** Guarantor agrees to refrain from attempting to collect and/or enforce any of Guarantor's collection and/or reimbursement rights against Law Firm (or against any other guarantor, surety or endorser of Law Firm's Indebtedness), arising by way of subrogation or otherwise, until such time as all of Law Firm's then remaining Indebtedness in favor of Lender is fully paid and satisfied. In the event that Guarantor should receive any payment from or on behalf of Law Firm that Law Firm may owe to Guarantor for any of the reasons stated above, Guarantor agrees to accept such payment in trust for and on behalf of Lender, advising Law Firm (or the third party payee) of such fact, and Guarantor further unconditionally agrees to immediately deliver such funds to Lender.

**11. ADDITIONAL COVENANTS.** Guarantor agrees that Lender may, at its sole option, at any time, and from time to time, without the consent of or notice to Guarantor or to any other party, and without impairing or releasing any of Guarantor's obligations or liabilities under this Agreement:

    (a) Make additional secured or unsecured loans to Law Firm.

    (b) Discharge, release or agree not to sue any party who is or may be liable to Lender for any of Law Firm's Indebtedness.

    (c) Sell, release, surrender, realize upon, or otherwise deal with, in any order, any collateral directly or indirectly securing repayment of any of Law Firm's Indebtedness.

    (d) Alter, renew, extend, accelerate, or otherwise change the manner, terms and or times of payment or other terms of Law Firm's Indebtedness, or any part thereof, including any increase or decrease in the rate or rates of interest on any of Law Firm's Indebtedness.

    (e) Settle or compromise any of Law Firm's Indebtedness.

    (f) Take or accept any other collateral security or guaranty for any or all of Law Firm's Indebtedness.

    (g) Enter into, deliver, modify, amend or waive compliance with, any instrument or arrangement evidencing, securing or otherwise affecting, all or any part of Law Firm's Indebtedness.

**12. NO IMPAIRMENT OF GUARANTOR'S OBLIGATIONS.** No course of dealing between Lender and Law Firm (or any other guarantor, surety or endorser of Law Firm's Indebtedness), nor any failure or delay on the part of Lender to exercise any of Lender's rights and remedies under this Agreement or any other agreement by and between Lender and Law Firm (or any other guarantor, surety or endorser), shall have the effect of impairing or releasing Guarantor's obligations and liabilities to Lender, or of waiving any of Lender's rights and remedies under this Agreement or otherwise. Any partial exercise of any rights and remedies granted to Lender shall furthermore not constitute a waiver of any of Lender's other rights and remedies; it being Guarantor's intent and agreement that Lender's rights and remedies shall be cumulative in nature. Guarantor further agrees that, should Law Firm default under any of its Indebtedness, any waiver or forbearance on the part of Lender to pursue Lender's available rights and remedies shall be binding upon Lender only to the extent that Lender specifically agrees to such waiver or forbearance in writing. A waiver or forbearance on the part of Lender as to one event of default shall not constitute a waiver or forbearance as to any other default.

**13. NO RELEASE OF GUARANTOR.** Guarantor's obligations and liabilities under this Agreement shall not be released, impaired, reduced, or otherwise affected by, and shall continue in full force and effect notwithstanding the occurrence of any event, including without limitation any of the following events:

    (a) The insolvency, bankruptcy, liquidation, dissolution or lack of authority of Law Firm or the death, insolvency, bankruptcy of lack of capacity of any of Law Firm's partners or attorneys.

    (b) Any payment by Law Firm, or any other party, to Lender that is held to constitute a preferential transfer or a fraudulent conveyance under any applicable law, or any such amounts or payment which, for any reason, Lender is required to refund or repay to Law Firm or to any other person.

    (c) Any failure of Lender to notify Guarantor of the making of additional loans or other extensions of credit in reliance on this Agreement.

**14. AUTOMATIC REINSTATEMENT.** Guarantor's obligations and liabilities hereunder shall continue in effect or automatically and retroactively be reinstated, if a release or discharge has occurred, or if at any time, any payment or part thereof to Lender with respect to any of Law Firm's Indebtedness is rescinded or must otherwise be restored by Lender pursuant to any insolvency, bankruptcy, reorganization, receivership, or any other debt relief granted to Law Firm or to any other party to Law Firm's Indebtedness or any such security therefor. In the event that Lender must rescind or restore any payment received in total or partial satisfaction of Law Firm's Indebtedness, any prior release or discharge from the terms of this Agreement given to Guarantor shall be without effect, and Guarantor's obligations and liabilities hereunder shall automatically and retroactively be renewed and/or reinstated and shall remain in full force and effect to the same degree and extent as if such a release or discharge had never been granted.

**15. REPRESENTATIONS AND WARRANTIES BY GUARANTOR.** Guarantor represents and warrants that:

    (a) Guarantor has the lawful power to own Guarantor's properties and to undertake the obligations incurred herein.

(b) Guarantor's guaranty of Law Firm's Indebtedness and Guarantor's execution, delivery and performance of this Agreement are not in violation of any laws and will not result in a default under any contract, agreement, or instrument to which Guarantor is a party, or by which Guarantor or his property may be bound.

(c) This Agreement, when executed and delivered to Lender, will constitute a valid, legal and binding obligation of Guarantor, enforceable against Guarantor in accordance with its terms.

(d) Lender has made no representations to Guarantor as to the creditworthiness or any other characteristic of Law Firm, the use of any Note proceeds, or any other aspect of the Indebtedness, collateral or the transactions contemplated by or related to this Agreement. Guarantor has established adequate means of obtaining information from Law Firm on a continuing basis regarding Law Firm's financial condition, all Notes and the use of all Note proceeds.

**16. ADDITIONAL OBLIGATIONS OF GUARANTOR.** So long as this Agreement remains in effect, Guarantor has not and will not, without Lender's prior written consent, sell, lease, assign, pledge, hypothecate, encumber, transfer, or otherwise dispose of all or substantially all of Guarantor's assets. Guarantor agrees to keep adequately informed of any facts, events or circumstances which might in any way affect Guarantor's obligations or liabilities under this Agreement. Guarantor further agrees that Lender shall have no obligation to disclose to Guarantor any information or material relating to Law Firm or Law Firm's Indebtedness.

**17. TRANSFER OF INDEBTEDNESS.** This Agreement is for the benefit of Lender and for such other person or persons as may from time to time become or be the holders of all or any part of Law Firm's Indebtedness. This Agreement and the Indebtedness may be transferable and negotiable with the same force and effect and to the same extent as Law Firm's Indebtedness may be transferable. Upon any transfer of all or any portion of Law Firm's Indebtedness, Lender may transfer and deliver any and all collateral securing repayment of such Indebtedness (including, but not limited to, any collateral provided by Guarantor) to the transferee of such Indebtedness, and such collateral shall secure any and all of Law Firm's Indebtedness in favor of such a transferee. After any such transfer or assignment has taken place, Lender shall be fully discharged from any and all liability and responsibility to Law Firm and Guarantor with respect to such collateral, and the transferee thereafter shall be vested with all the powers and rights with respect to such collateral.

**18. NOTICES.** Any notice provided in this Agreement must be in writing and will be considered as given on the day it is delivered by hand or deposited in the U.S. Mail, postage prepaid, addressed to the person to whom the notice is to be given at the address shown above or at such other addresses as any party may designate to the other in writing. If there is more than one Guarantor under this Agreement, notice to any Guarantor shall constitute notice to all Guarantors.

**19. ADDITIONAL GUARANTIES.** Guarantor recognizes that Guarantor may have previously granted, and may in the future grant, additional guaranties of Law Firm's Indebtedness in favor of Lender. Should this occur, the execution of this Agreement and any additional guaranties on the part of Guarantor will not be construed as a cancellation of this Agreement or any of Guarantor's additional guaranties; it being Guarantor's full intent and agreement that all such guaranties of Law Firm's Indebtedness in favor of Lender shall remain in full force and effect and shall be cumulative in nature and effect.

**20. MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendment.** No amendment, modification, consent or waiver of any provision of this Agreement, and no consent to any departure by Guarantor therefrom, shall be effective unless the same shall be in writing signed by a duly authorized officer or representative of Lender, and then shall be effective only as to the specific instance and for the specific purpose for which given.

**Caption Headings.** Caption headings of the sections of this Agreement are for convenience purposes only and are not to be used to interpret or to define their provisions. In this Agreement, whenever the context so requires, the singular includes the plural and the plural also includes the singular.

**Governing Law.** This Agreement shall be governed and construed in accordance with the substantive laws of the State of Louisiana.

**Severability.** If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws effective during the term hereof, such provision shall be fully severable. This Agreement shall be construed and enforceable as if the illegal, invalid or unenforceable provision had never comprised a part of it, and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance herefrom.

**Successors And Assigns Bound.** Guarantor's obligations and liabilities under this Agreement shall be binding upon Guarantor's successors, heirs, legatees, devisees, administrators, executors and permitted assigns. Guarantor shall not, however, have the right to assign its obligations hereunder or any interest herein, without the prior written consent of Lender.

**Waiver Of Right To Jury Trial.** Guarantor and Lender hereby waive the right to a jury trial in any action, proceeding, or counterclaim arising out of, or related to, the terms, conditions or enforcement of this Agreement or the Loan Documents, or any other aspect of the Indebtedness or the transactions contemplated by or related to this Agreement and the Loan Documents.

[Remainder of page intentionally left blank.]

GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS AGREEMENT AND AGREES TO ITS TERMS. GUARANTOR UNDERSTANDS THAT THIS AGREEMENT IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND THAT THIS AGREEMENT WILL CONTINUE UNTIL TERMINATED AS PROVIDED HEREIN. NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS AGREEMENT EFFECTIVE.

GUARANTOR:

_____
Frank J. D'Amico, Jr.

# ADVOCATE FINANCIAL, LLC

*The Preferred Resource*

April 17, 2007

Mr. Frank J. D'Amico, Jr.,
Frank J. D'Amico, Jr., APLC
622 Baronne Street
New Orleans, LA 70113

RE: Line of Credit Increase

Dear Frank,

We are pleased to increase the firm line of credit to $900,000 as you requested. I have prepared the Amended and Restated Master Loan Facility Agreement, Security Agreement, Individual Guaranty and Law Firm Revolver Promissory Note for your review and signature. Please return all original documents to me for handling.

The firm's line of credit maturity date will now be April 17, 2008. The origination fee for the increase of $200,000 is $4,000 and the renewal fee for the $700,000 is $5,249.97 for 9 months. Please remit to Advocate Financial a check in the amount of $9,249.97.

Thank you Frank, we appreciate your business.

Sincerely yours,

Marilyn S. O'Hare
Director of Operations
MSO/mso
Enclosures

Check Date: 11/20/2006

Firm: Frank J. D'Amico, Jr. APLC
            Client: Barnett, William 91-4-9000448 Draw: 1

                                  Amount   Cash Acct   08   Check Total      $2,500.00
                                  $2,500.00
Acct#      Acct Descript
10520      DRAW CLEARING

                    $2,500.00              Check Total      $2,500.00

---

**ADVOCATE FINANCIAL, L.L.C.**
LOAN FUNDING ACCOUNT
5555 HILTON AVE. SUITE 410
BATON ROUGE, LA. 70808
(225) 924-6629

**HANCOCK BANK
OF LOUISIANA**
Member FDIC        84-16/654              **032126**

| CHECK NO. | CHECK DATE | VENDOR NO. |
|-----------|------------|------------|
| 32126     | 11/20/2006 |            |

| CHECK AMOUNT |
|--------------|
| $2,500.00    |

PAY    Two Thousand Five Hundred Dollars And 00 Cents

TO THE Frank J. D'Amico, Jr. APLC
ORDER 622 Barrone Street 2nd Floor
OF: New Orleans LA 70113

**FUNDS WIRED**

AUTHORIZED SIGNATURE

⑆032126⑆ ⑆065400653⑆ ⑈01 676180 1⑈

---

032126

Check Date      11/20/2006

Firm: Frank J. D'Amico, Jr. APLC
            Client: Barnett, William 91-4-9000448 Draw: 1      Check Total      $2,500.00

                                  Amount   Cash Acct   08   Check Total      $2,500.00
                                  $2,500.00
Acct#      Acct Descript
10520      DRAW CLEARING

                    $2,500.00              Check Total      $2,500.00

# ADVANCE/DRAW REQUEST

DATE OF REQUEST:  **11/17/2006**

BORROWER:  **William B Barnett**          CO-BORROWER: _____
          **206 Branch Lane**                      _____
          **Mandeville, LA 70448**                 _____

SSN:  **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**                   SSN: _____

LENDER:
ADVOCATE FINANCIAL, L.L.C.
P. O. BOX 80839
BATON ROUGE, LA 70898-0839

| ORIGINATION DATE | PRESENT PRINCIPAL BALANCE | DRAW NUMBER | AMOUNT REQUESTED TO BE DRAWN | NEW PRINCIPAL BALANCE AFTER DRAW |
|---|---|---|---|---|
| 11/17/2006 | 0.00 | 1 | 2,500.00 | 2,500.00 |

Pursuant to the above referenced note of Borrower the following draw request is submitted for approval and funding.

Total Amount Requested to be Funded Under this Draw                                             $          2,500.00
Total Amount to be Funded to Firm's Account                                    $        2,500.00
    Court Costs, Filing Fees, etc. (Itemized)                        $          0.00
        _____   $_____
        _____   $_____
        _____   $_____
        _____   $_____

    Medical Expenses (Itemized)                                     $          0.00
        _____   $_____
        _____   $_____
        _____   $_____
        _____   $_____

    Expert Witness Fees (Itemized)                                  $          0.00
        _____   $_____
        _____   $_____
        _____   $_____
        _____   $_____

    Necessary Living Costs (with the allowable
    of the Rules of Professional Ethics) (Itemized)                 $        2,500.00
        William Baylor Bennett Barnett   $        2,500.00
        _____   $_____
        _____   $_____
        _____   $_____

    Other Expenses (Itemized)                                       $          0.00
        _____   $_____
        _____   $_____
        _____   $_____
        _____   $_____

## ATTORNEY CERTIFICATION AND AUTHORIZATION TO DISBURSE

I certify that the above funding requests are accurate and truthful, comply with Rule 1.8(e) of the Louisiana Rules of Professional Conduct and the Master Loan Facility Agreement with Lender. I also certify that the above funding requests are within the authority granted to me by Borrower and hereby authorize disbursement thereof directly into an appropriate depository account of my law firm. I further warrant that a copy of this request has been forwarded by regular mail to Borrower and Co-borrower, if any.

_____   **11/20/06**          _____   **11/20/06**
ATTORNEY                  DATE                   WITNESS                   DATE

                                                _____
                                                WITNESS PRINTED NAME

WILLIAM B. BARNETT AND
AMELIA BARNETT

CIVIL ACTION

VERSUS

NO. 10-1928

FRANK J. D'AMICO, JR., APLC, ET AL

SECTION "B" (5)

## WILLIAM BARNETT

**SUPPORTING DOCUMENTION FOR COURT APPROVED "ADVANCES"
INTEREST CALCULATIONS**

# REGIONS
# RATE 8.5%

 
#BWNJPMG
FRANK J DAMICO JR
622 BARONNE ST
NEW ORLEANS LA 70113

| | | |
|---|---|---|
| Scheduled Payment Amount: | $459.31 |
| Past Due Amount: | $0.00 |
| Principal Due: | $0.00 |
| Interest Due: | $459.31 |
| Debt Protection Due: | $0.00 |
| Late Fee Due: | $0.00 |
| Other Fees Due: | $0.00 |
| Total Amount Due: | $459.31 |

Per Diem: 18.815700
Bank Number: 001
Account Number: 400 00007000024712
Interest Rate: 8.500%
Payment Due Date: 12/17/07

Int paid last year: $6,209.31

## LOAN STATEMENT
### November 2, 2007 through November 30, 2007

## DETAIL

| Trans Date | Trans Description | Trans Amount |
|---|---|---|
| 11/02/07 | Balance Forward | 68,690.35 |
| 11/16/07 | Payment - Thank You | 299.17 |
| 11/16/07 | Pmt Detail - Int | 299.17 |
| 11/29/07 | Line Advance | 11,000.00 |
| 11/30/07 | Ending Principal Balance | 79,690.35 |
| 11/30/07 | Your Credit Limit Is | 100,000.00 |
| 11/30/07 | Your Available Credit Is | 20,309.65 |

THE FINANCE CHARGE CALCULATION
METHOD IS DAILY SIMPLE INTEREST
          **              **
   ** A LATE FEE WILL BE ASSESSED IF THE **
   ** PAYMENT DUE ON 12/17/07 IS NOT PAID **
   ** BY THE LATE DATE OF 12/29/07.      **
          **              **

If you have any questions about your account, please contact us at 1-877-430-4562.

---

Please detach this portion and return with your payment in the enclosed envelope.

 REGIONS

LOAN REMITTANCE

FRANK J DAMICO JR
622 BARONNE ST
NEW ORLEANS LA 70113

0010000000024712700045931900040006

| | |
|---|---|
| Account Number: | 001/400/00007000024712 |
| Total Amount Due: | $459.31 |
| Payment Due Date: | 12/17/07 |
| Payment Enclosed: | 459.31 |

CONSUMER LOAN PROCESSING
PO BOX 2224
BIRMINGHAM AL 35246-0026

⑆400000 70⑈ ⑆500 1⑈0057⑆ 000 24712⑈

WILLIAM B. BARNETT AND
AMELIA BARNETT

CIVIL ACTION

VERSUS

NO. 10-1928

FRANK J. D'AMICO, JR., APLC, ET AL

SECTION "B" (5)

## WILLIAM BARNETT

### SUPPORTING DOCUMENTION FOR COURT APPROVED "ADVANCES" INTEREST CALCULATIONS

# REGIONS
# RATE 7%

 **REGIONS**

*Bonnett, William*

#BWNJPMG  
FRANK J DAMICO JR  
622 BARONNE ST  
NEW ORLEANS LA 70113

| | | | |
|---|---|---|---|
| | | Scheduled Payment Amount: | $452.54 |
| | | Past Due Amount: | $0.00 |
| | | Principal Due: | $0.00 |
| Per Diem: | 17.828600 | Interest Due: | $452.54 |
| Bank Number: | 001 | Debt Protection Due: | $0.00 |
| Account Number: 400 00007000024712 | | Late Fee Due: | $0.00 |
| ✱ Interest Rate: | 7.000% | Other Fees Due: | $0.00 |
| Payment Due Date: | 03/17/08 | Total Amount Due: | $452.54 |

Int paid last year: $6,293.52

## LOAN STATEMENT
### February 1, 2008 through February 29, 2008

## DETAIL

| Trans Date | Trans Description | Trans Amount |
|---|---|---|
| 02/01/08 | Balance Forward | 79,690.35 |
| 02/14/08 | Payment - Thank You | 526.29 |
| 02/14/08 | Pmt Detail - Int | 526.29 |
| ✱ 02/22/08 | Line Advance | 12,000.00 ✱ |
| 02/29/08 | Ending Principal Balance | 91,690.35 |
| 02/29/08 | Your Credit Limit Is | 100,000.00 |
| 02/29/08 | Your Available Credit Is | 8,309.65 |

THE FINANCE CHARGE CALCULATION  
METHOD IS DAILY SIMPLE INTEREST  
** **  
** A LATE FEE WILL BE ASSESSED IF THE **  
** PAYMENT DUE ON 03/17/08 IS NOT PAID **  
** BY THE LATE DATE OF 03/29/08. **  
** **

If you have any questions about your account, please contact us at 1-877-430-4562.

WILLIAM B. BARNETT AND
AMELIA BARNETT

CIVIL ACTION

VERSUS

NO. 10-1928

FRANK J. D'AMICO, JR., APLC, ET AL

SECTION "B" (5)

## WILLIAM BARNETT

### SUPPORTING DOCUMENTION FOR COURT APPROVED "ADVANCES" INTEREST CALCULATIONS

# FIRST BANK & TRUST
# RATE 6.5%

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,000,000.00 | 05-28-2008 | 05-28-2009 | 100161621 | 01,07 | NEW | 092 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

**Borrower:** FRANK J. D'AMICO, JR., A.P.L.C. (TIN: 72-1178721)
622 BARONE STREET 2ND FLOOR
NEW ORLEANS, LA 70113

**Lender:** FIRST BANK AND TRUST
METAIRIE COMMERCIAL BANKING
458 METAIRIE ROAD
METAIRIE, LA 70005

---

**Principal Amount: $1,000,000.00**    **Interest Rate: 6.500%**    **Date of Note: May 28, 2008**

**PROMISE TO PAY.** FRANK J. D'AMICO, JR., A.P.L.C. ("Borrower") promises to pay to the order of FIRST BANK AND TRUST ("Lender"), in lawful money of the United States of America the sum of One Million & 00/100 Dollars(U.S. $1,000,000.00) or such other or lesser amounts as may be reflected from time to time on Lender's books and records as evidencing the aggregate unpaid principal balance of loan advances made to Borrower on a revolving line of credit basis as provided herein, together with simple interest at the rate of 6.500% per annum assessed on the unpaid principal balance of this Note as outstanding from time to time, commencing on May 28, 2008 and continuing until this Note is paid in full.

**LINE OF CREDIT.** This Note evidences a revolving line of credit "master note". Advances under this Note may be requested orally by Borrower or as provided in this paragraph. All oral requests shall be confirmed in writing on the day of the request. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized to request advances and authorize payments under the revolving line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: FRANK J. D'AMICO, JR, President of FRANK J. D'AMICO, JR., APLC . Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's deposit accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on May 28, 2009. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning June 28, 2008, with all subsequent interest payments to be due on the same day of each month after that until this Note is paid in full. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT.** Other than Borrower's obligation to pay any prepayment penalty, Borrower may prepay this Note in full at any time by paying the then unpaid principal balance of this Note, plus accrued simple interest and any unpaid late charges through date of prepayment. If Borrower prepays this Note in full, or if Lender accelerates payment, Borrower understands that, unless otherwise required by law, any prepaid fees or charges will not be subject to rebate and will be earned by Lender at the time this Note is signed. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: FIRST BANK AND TRUST, METAIRIE COMMERCIAL BANKING, 458 METAIRIE ROAD, METAIRIE, LA 70005.

**LATE CHARGE.** If Borrower fails to pay any payment under this Note in full within 10 days of when due, Borrower agrees to pay Lender a late payment fee in an amount equal to 10.000% of the unpaid portion of the regularly scheduled payment with a maximum of $200.00. Late charges will not be assessed following declaration of default and acceleration of the maturity of this Note.

**INTEREST AFTER DEFAULT.** If Lender declares this Note to be in default, Lender has the right prospectively to adjust and fix the simple interest rate under this Note until this Note is paid in full, as follows: (A) If the original principal amount of this Note is $250,000 or less, the fixed default interest rate shall be equal to eighteen (18%) percent per annum, or three (3%) percent per annum in excess of the interest rate under this Note, whichever is greater. (B) If the original principal amount of this Note is more than $250,000, the fixed default interest rate shall be equal to twenty-one (21%) percent per annum, or three (3%) percent per annum in excess of the interest rate under this Note at the time of default, whichever is greater.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Default Under Loan Agreement.** If an event of default occurs or exists under the terms of Borrower's Loan Agreement in favor of Lender.

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Default Under Security Agreements.** Should Borrower or any guarantor violate, or fail to comply fully with any of the terms and conditions of, or default under any security right, instrument, document, or agreement directly or indirectly securing repayment of this Note.

**Other Defaults in Favor of Lender.** Should Borrower or any guarantor of this Note default under any other loan, extension of credit, security right, instrument, document, or agreement, or obligation in favor of Lender.

**Default in Favor of Third Parties.** Should Borrower or any guarantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may affect any property or other collateral directly or indirectly securing repayment of this Note.

**Insolvency.** Should the suspension, failure or insolvency, however evidenced, of Borrower or any Guarantor of this Note occur or exist.

**Death or Interdiction.** Should any guarantor of this Note die or be interdicted.

**Readjustment of Indebtedness.** Should proceedings for readjustment of indebtedness, reorganization, bankruptcy, composition or extension under any insolvency law be brought by or against Borrower or any guarantor.

**Assignment for Benefit of Creditors.** Should Borrower or any guarantor file proceedings for a respite or make a general assignment for the benefit of creditors.

**Receivership.** Should a receiver of all or any part of Borrower's property, or the property of any guarantor, be applied for or appointed.

**Dissolution Proceedings.** Proceedings for the dissolution or appointment of a liquidator of Borrower or any guarantor are commenced.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Material Adverse Change.** Should any material adverse change occur in the financial condition of Borrower or any guarantor of this Note or should any material discrepancy exist between the financial statements submitted by Borrower or any guarantor and the actual financial condition of Borrower or such guarantor.

**Insecurity.** Lender in good faith believes itself insecure with regard to repayment of this Note.

**LENDER'S RIGHTS UPON DEFAULT.** Should any one or more default events occur or exist under this Note as provided above, Lender shall have the right, at Lender's sole option, to declare formally this Note to be in default and to accelerate the maturity and insist upon immediate payment in full of the unpaid principal balance then outstanding under this Note, plus accrued interest, together with reasonable attorneys' fees, costs, expenses and other fees and charges as provided herein. Lender shall have the further right, again at Lender's sole option, to declare formal default and to accelerate the maturity and to insist upon immediate payment in full of each and every other loan, extension of credit, debt, liability and/or obligation of every nature and kind that Borrower may then owe to Lender, whether direct or indirect or by way of assignment, and whether absolute or contingent, liquidated or unliquidated, voluntary or involuntary, determined or undetermined, secured or unsecured, whether Borrower is obligated alone or with others on a "solidary" or "joint and several" basis, as a principal obligor or otherwise, all without further notice or demand, unless Lender shall otherwise elect.

**ATTORNEYS' FEES; EXPENSES.** If Lender refers this Note to an attorney for collection, or files suit against Borrower to collect this Note, or if Borrower files for bankruptcy or other relief from creditors, Borrower agrees to pay Lender's reasonable attorneys' fees in an amount not exceeding 25.000% of the principal balance due on the loan.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Louisiana without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Louisiana.

**NSF CHARGE.** In the event that Borrower makes any payment under this Note by check or electronic payment and Borrower's check or electronic payment is returned to Lender unpaid due to non-sufficient funds in Borrower's deposit account or otherwise, Borrower agrees to pay Lender an NSF charge in an amount of $30.00 or 5.000% of the dishonored item (whether check or electronic payment), whichever is greater.

**DEPOSIT ACCOUNTS.** As collateral security for repayment of this Note and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations that Borrower may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), and to the extent permitted by law, Borrower is granting Lender a continuing security interest in any and all funds that Borrower may now and in the future have on deposit with Lender or in certificates of deposit or other deposit accounts as to which Borrower is an account holder (with the exception of IRA, pension, and other tax-deferred deposits). Borrower further agrees that, to the extent permitted by law, Lender may at any time apply any funds that Borrower may have on deposit with Lender or in certificates of deposit or other deposit accounts as to which Borrower is an account holder against the unpaid balance of this Note and any and all other present and future indebtedness and obligations that Borrower may then owe to Lender, in principal, interest, fees, costs, expenses, and reasonable attorneys' fees.

**COLLATERAL.** This Note is secured by UCC Collateral and Real Estate Collateral. In particular, this Note is secured by a Multiple Indebtedness Mortgage dated May 28, 2008, to Lender on real property located in ST. TAMMANY/ORLEANS Parish, State of Louisiana. Collateral securing other loans with Lender may also secure this Note as the result of cross-collateralization.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**DEDUCTIBLE LIMIT.** For all real estate collateral, borrower agrees to elect a deductible not to exceek 5% of insurance coverage amount on each insurance policy.

**FLOOD INSURANCE REQUIREMENT.** Should the property be located in the Louisiana parishes of Orleans, St. Tammany, St. John, St. James, St. Bernard, St. Charles, Jefferson, or Plaquemines, regardless of whether said property is located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain prior to loan closing and to maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan. .

**CASE LOG REPORT .** Borrower agrees to submit to Lender monthly Case Log Report within ten (10) days of month-end. Failure to comply with said covenant shall constitute an event of default.

**DEPOSITORY RELATIONSHIP.** Borrower agrees to establish and maintain a depository accounts with Lender with an average balances of $50,000.00, throughout the term of the loan. Failure to comply with said covenant shall constitute an event of default.

**ADVANCES.** BORROWER AGREES THAT ADVANCES ARE SUBJECT TO VERIFICATION OF COSTS.

**FINANCIAL REPORTING REQUIREMENTS.** Borrower agrees to submit to lender annual financial statements within 120 days of fiscal year end and annual tax returns by April 30th of each calendar year.

Borrower also agrees to submit to lender annual personal financial statements within 60 days of fiscal year end and annual tax returns by April 30th of each calendar year on FRANK J. D'AMICO, JR. (guarantor).

Failure to comply with said financial reporting in a timely manner will result in an additional event of default

**WAIVERS.** Borrower and each guarantor of this Note hereby waive demand, presentment for payment, protest, notice of protest and notice of nonpayment, and all pleas of division and discussion, and severally agree that their obligations and liabilities to Lender hereunder shall be on a "solidary" or "joint and several" basis. Borrower and each guarantor further severally agree that discharge or release of any party who is or may be liable to Lender for the indebtedness represented hereby, or the release of any collateral directly or indirectly securing repayment hereof, shall not have the effect of releasing any other party or parties, who shall remain liable to Lender, or of releasing any other collateral that is not expressly released by Lender. Borrower and each guarantor additionally agree that Lender's acceptance of payment other than in accordance with the terms of this Note, or Lender's subsequent agreement to extend or modify such repayment terms, or Lender's failure or delay in exercising any rights or remedies granted to Lender, shall likewise not have the effect of releasing Borrower or any other party or parties from their respective obligations to Lender, or of releasing any collateral that directly or indirectly secures repayment hereof. In addition, any failure or delay on the part of Lender to exercise any of the rights and remedies granted to Lender shall not have the effect of waiving any of Lender's rights and remedies. Any partial exercise of any rights and/or remedies granted to Lender shall furthermore not be construed as a waiver of any other rights and remedies; it being Borrower's intent and agreement that Lender's rights and remedies shall be cumulative in nature. Borrower and each guarantor further agree that, should any default event occur or exist under this Note, any waiver or forbearance on the part of Lender to pursue the rights and remedies available to Lender, shall be binding upon Lender only to the extent that Lender's specifically agrees to any such waiver or forbearance in writing. A waiver or forbearance on the part of Lender as to one default event shall not be construed as a waiver or forbearance as to any other default. Borrower and each guarantor of this Note further agree that any late charges provided for under this Note will not be charges for deferral of time for payment and will not and are not intended to compensate Lender's for a grace or cure period, and no such deferral, grace or cure period has or will be granted to Borrower in return for the impositon of any late charge. Borrower recognizes that Borrower's failure to make timely payment of amounts due under this Note will result in damages to Lender, including but not limited to Lender's loss of the use of amounts due, and Borrower agrees that any late charges imposed by Lender hereunder will represent reasonable compensation to Lender for such damages. Failure to pay in full any installment or payment timely when due under this Note, whether or not a late charge is assessed, will remain and shall constitute an Event of Default hereunder.

**SUCCESSORS AND ASSIGNS LIABLE.** Borrower's and each guarantor's obligations and agreements under this Note shall be binding upon Borrower's and each guarantor's respective successors, heirs, legatees, devisees, administrators, executors and assigns. The rights and remedies granted to Lender under this Note shall inure to the benefit of Lender's successors and assigns, as well as to any subsequent holder or holders of this Note.

**CAPTION HEADINGS.** Caption headings in this Note are for convenience purposes only and are not to be used to interpret or define the provisions of this Note.

**SEVERABILITY.** If any provision of this Note is held to be invalid, illegal or unenforceable by any court, that provision shall be deleted from this Note and the balance of this Note shall be interpreted as if the deleted provision never existed.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's successors, heirs, legatees, devisees, administrators, executors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: FIRST BANK AND TRUST 909 POYDRAS ST NEW ORLEANS, LA 70112.

**APPLICABLE LENDING LAW.** To the extent not preempted by federal law, this business or commercial loan is being made under the terms and provisions of La. R.S. 9:3509, et seq.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE.**

**BORROWER:**

FRANK J. D'AMICO, JR., A.P.L.C.

By:_____
   **FRANK J. D'AMICO, JR, President of FRANK J. D'AMICO, JR., A.P.L.C.**

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,000,000.00 | 12-18-2009 | 02-28-2010 | 100161621 | 01.07 | 1019059 | 499 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** FRANK J. D'AMICO, JR., A.P.L.C. (TIN: 72-1178721)
622 BARONNE STREET 2ND FLOOR
NEW ORLEANS, LA 70113

**Lender:** FIRST BANK AND TRUST
SPECIAL ASSETS DEPARTMENT
909 POYDRAS STREET, SUITE 100
NEW ORLEANS, LA 70112

**Principal Amount: $1,000,000.00**      **Date of Agreement: December 18, 2009**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** ORIGINAL PROMISSORY NOTE DATED MAY 28, 2008, IN THE AMOUNT OF $1,000,000.00, REPRESENTING A REVOLVING LINE OF CREDIT WITH AN OUTSTANDING BALANCE OF $921,582.91.

**DESCRIPTION OF COLLATERAL.** REAL ESTATE COLLATERAL AND UCC COLLATERAL .

**DESCRIPTION OF CHANGE IN TERMS.** EXTENSION OF MATURITY DATE. PLEASE SEE "PAYMENT" PARAGRAPH STATED BELOW.

**PROMISE TO PAY.** FRANK J. D'AMICO, JR., A.P.L.C. ("Borrower") promises to pay to the order of FIRST BANK AND TRUST ("Lender"), in lawful money of the United States of America the sum of One Million & 00/100 Dollars (U.S. $1,000,000.00) or such other or lesser amounts as may be reflected from time to time on Lender's books and records as evidencing the aggregate unpaid principal balance of loan advances made to Borrower on a revolving line of credit basis as provided herein, together with simple interest assessed on the unpaid principal balance of this loan as outstanding from time to time, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 7.500% per annum based on a year of 360 days, commencing on December 18, 2009, and continuing until this loan is paid in full.

**LINE OF CREDIT.** This Agreement evidences a revolving line of credit "master note". Advances under this Agreement may be requested orally by Borrower or as provided in this paragraph. All oral requests shall be confirmed in writing on the day of the request. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized to request advances and authorize payments under the revolving line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: FRANK J. D'AMICO, JR, President of FRANK J. D'AMICO, JR., A.P.L.C. . Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's deposit accounts with Lender. The unpaid principal balance owing on this Agreement at any time may be evidenced by endorsements on this Agreement or by Lender's internal records, including daily computer print-outs.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on February 28, 2010. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning January 28, 2010, with all subsequent interest payments to be due on the same day of each month after that until this Agreement is paid in full. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

**PREPAYMENT.** Other than Borrower's obligation to pay any prepayment penalty, Borrower may prepay this Agreement in full at any time by paying the then unpaid principal balance of this Agreement, plus accrued simple interest and any unpaid late charges through date of prepayment. If Borrower prepays this Agreement in full, or if Lender accelerates payment, Borrower understands that, unless otherwise required by law, any prepaid fees or charges will not be subject to rebate and will be earned by Lender at the time this Agreement is signed. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: FIRST BANK AND TRUST, SPECIAL ASSETS DEPARTMENT, 909 POYDRAS STREET, SUITE 100, NEW ORLEANS, LA 70112.

**LATE CHARGE.** If Borrower fails to pay any payment under this Note in full within 10 days of when due, Borrower agrees to pay Lender a late payment fee in an amount equal to 10.000% of the unpaid portion of the regularly scheduled payment with a maximum of $200.00. Late charges will not be assessed following declaration of default and acceleration of the maturity of this Note.

**INTEREST AFTER DEFAULT.** If Lender declares this loan to be in default, Lender has the right prospectively to adjust and fix the simple interest rate under this Agreement until this loan is paid in full, as follows: (A) If the original principal amount of this loan is $250,000 or less, the fixed default interest rate shall be equal to eighteen (18%) percent per annum based on a year of 360 days, or three (3%) percent per annum in excess of the interest rate under this Agreement, whichever is greater. (B) If the original principal amount of this loan is more than $250,000, the fixed default interest rate shall be equal to twenty-one (21%) percent per annum based on a year of 360 days, or three (3%) percent per annum in excess of the interest rate under this Agreement at the time of default, whichever is greater.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Default Under Loan Agreement.** If an Event of Default occurs or exists under the terms of Borrower's Loan Agreement in favor of Lender.

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Default Under Security Agreements.** Should Borrower or any guarantor violate, or fail to comply fully with any of the terms and conditions of, or default under any security right, instrument, document, or agreement directly or indirectly securing repayment of this Agreement.

**Other Defaults in Favor of Lender.** Should Borrower or any guarantor of this Agreement default under any other loan, extension of credit, security right, instrument, document, or agreement, or obligation in favor of Lender.

**Default in Favor of Third Parties.** Should Borrower or any guarantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may affect any property or other collateral directly or indirectly securing repayment of this Agreement.

**Insolvency.** Should the suspension, failure or insolvency, however evidenced, of Borrower or any Guarantor of this Agreement occur or exist.

**Death or Interdiction.** Should any guarantor of this Agreement die or be interdicted.

**Readjustment of Indebtedness.** Should proceedings for readjustment of indebtedness, reorganization, bankruptcy, composition or extension under any insolvency law be brought by or against Borrower or any guarantor.

**Assignment for Benefit of Creditors.** Should Borrower or any guarantor file proceedings for a respite or make a general assignment for the benefit of creditors.

**Receivership.** Should a receiver of all or any part of Borrower's property, or the property of any guarantor, be applied for or appointed.

**Dissolution Proceedings.** Proceedings for the dissolution or appointment of a liquidator of Borrower or any guarantor are commenced.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Material Adverse Change.** Should any material adverse change occur in the financial condition of Borrower or any guarantor of this Agreement or should any material discrepancy exist between the financial statements submitted by Borrower or any guarantor and the actual financial condition of Borrower or such guarantor.

**Insecurity.** Lender in good faith believes itself insecure with regard to repayment of the Indebtedness.

**LENDER'S RIGHTS UPON DEFAULT.** Should any one or more default events occur or exist under this Agreement as provided above, Lender shall have the right, at Lender's sole option, to declare formally this Agreement to be in default and to accelerate the maturity and insist upon immediate payment in full of the unpaid principal balance then outstanding under this Agreement, plus accrued interest, together with reasonable attorneys' fees, costs, expenses and other fees and charges as provided herein. Lender shall have the further right, again at Lender's sole option, to declare formal default and to accelerate the maturity and to insist upon immediate payment in full of each and every other loan, extension of credit, debt, liability and/or obligation of every nature and kind that Borrower may then owe to Lender, whether direct or

indirect or by way of assignment, and whether absolute or contingent, liquidated or unliquidated, voluntary or involuntary, determined or undetermined, secured or unsecured, whether Borrower is obligated alone or with others on a "solidary" or "joint and several" basis, as a principal obligor or otherwise, all without further notice or demand, unless Lender shall otherwise elect.

**ATTORNEYS' FEES; EXPENSES.** If Lender refers this Agreement to an attorney for collection, or files suit against Borrower to collect this Agreement, or if Borrower files for bankruptcy or other relief from creditors, Borrower agrees to pay Lender's reasonable attorneys' fees in an amount not exceeding 25.000% of the principal balance due on the Indebtedness.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Louisiana without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Louisiana.

**RETURNED ITEM CHARGE.** In the event that Borrower makes any payment under this Agreement by check or electronic payment and Borrower's check or electronic payment is returned to Lender unpaid for any reason, Borrower agrees to pay Lender a returned item charge in an amount of $30.00 or 5.000% of the dishonored item (whether check or electronic payment), whichever is greater.

**DEPOSIT ACCOUNTS.** As collateral security for repayment of Borrower's Note and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations that Borrower may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), and to the extent permitted by law, Borrower is granting Lender a continuing security interest in any and all funds that Borrower may now and in the future have on deposit with Lender or in certificates of deposit or other deposit accounts as to which Borrower is an account holder (with the exception of IRA, pension, and other tax-deferred deposits). Borrower further agrees that, to the extent permitted by law, Lender may at any time apply any funds that Borrower may have on deposit with Lender or in certificates of deposit or other deposit accounts as to which Borrower is an account holder against the unpaid balance of Borrower's Note and any and all other present and future indebtedness and obligations that Borrower may then owe to Lender, in principal, interest, fees, costs, expenses, and reasonable attorneys' fees.

**COLLATERAL.** This Agreement is secured by UCC Collateral and Real Estate Collateral. In particular, this Agreement is secured by a Mortgage or Deed of Trust to a trustee in favor of Lender on real property located in ST. TAMMANY/ORLEANS Parish, State of Louisiana. Collateral securing other loans with Lender may also secure this Agreement as the result of cross-collateralization.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**DEDUCTIBLE LIMIT.** For all real estate collateral, borrower agrees to elect a deductible not to exceed 5% of insurance coverage amount on each insurance policy.

**FLOOD INSURANCE REQUIREMENT.** Should the property be located in the Louisiana parishes of Orleans, St. Tammany, St. John, St. James, St. Bernard, St. Charles, Jefferson, or Plaquemines, regardless of whether said property is located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain prior to loan closing and to maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan. .

**CASE LOG REPORT .** Borrower agrees to submit to Lender monthly Case Log Report within ten (10) days of month-end. Failure to comply with said covenant shall constitute an event of default.

**DEPOSITORY RELATIONSHIP.** Borrower agrees to establish and maintain a depository accounts with Lender with an average balances of $50,000.00, throughout the term of the loan. Failure to comply with said covenant shall constitute an event of default.

**ADVANCES.** BORROWER AGREES THAT ADVANCES ARE SUBJECT TO VERIFICATION OF COSTS.

**FINANCIAL REPORTING REQUIREMENTS.** Borrower agrees to submit to lender annual financial statements within 120 days of fiscal year end and annual tax returns by April 30th of each calendar year.

Borrower also agrees to submit to lender annual personal financial statements within 60 days of fiscal year end and annual tax returns by April 30th of each calendar year of FRANK J. D'AMICO, JR. (guarantor).

Failure to comply with said financial reporting in a timely manner will result in an additional event of default

**WAIVERS.** Borrower and each guarantor of this Agreement hereby waive demand, presentment for payment, protest, notice of protest and notice of nonpayment, and all pleas of division and discussion, and severally agree that their obligations and liabilities to Lender hereunder shall be on a "solidary" or "joint and several" basis. Borrower and each guarantor further severally agree that discharge or release of any party who is or may be liable to Lender for the indebtedness represented hereby, or the release of any collateral directly or indirectly securing repayment hereof, shall not have the effect of releasing any other party or parties, who shall remain liable to Lender, or of releasing any other collateral that is not expressly released by Lender. Borrower and each guarantor additionally agree that Lender's acceptance of payment other than in accordance with the terms of this Agreement, or Lender's subsequent agreement to extend or modify such repayment terms, or Lender's failure or delay in exercising any rights or remedies granted to Lender, shall likewise not have the effect of releasing Borrower or any other party or parties from their respective obligations to Lender, or of releasing any collateral that directly or indirectly secures repayment hereof. In addition, any failure or delay on the part of Lender to exercise any of the rights and remedies granted to Lender shall not have the effect of waiving any of Lender's rights and remedies. Any partial exercise of any rights and/or remedies granted to Lender shall furthermore not be construed as a waiver of any other rights and remedies; it being Borrower's intent and agreement that Lender's rights and remedies shall be cumulative in nature. Borrower and each guarantor further agree that, should any default event occur or exist under this Agreement, any waiver or forbearance on the part of Lender to pursue the rights and remedies available to Lender, shall be binding upon Lender only to the extent that Lender's specifically agrees to any such waiver or forbearance in writing. A waiver or forbearance on the part of Lender as to one default event shall not be construed as a waiver or forbearance as to any other default. Borrower and each guarantor of this Agreement further agree that any late charges provided for under this Agreement will not be charges for deferral of time for payment and will not and are not intended to compensate Lender's for a grace or cure period, and no such deferral, grace or cure period has or will be granted to Borrower in return for the imposition of any late charge. Borrower recognizes that Borrower's failure to make timely payment of amounts due under this Agreement will result in damages to Lender, including but not limited to Lender's loss of the use of amounts due, and Borrower agrees that any late charges imposed by Lender hereunder will represent reasonable compensation to Lender for such damages. Failure to pay in full any installment or payment timely when due under this Agreement, whether or not a late charge is assessed, will remain and shall constitute an Event of Default hereunder.

**SUCCESSORS AND ASSIGNS LIABLE.** Borrower's and each guarantor's obligations and agreements under this Agreement shall be binding upon Borrower's and each guarantor's respective successors, heirs, legatees, devisees, administrators, executors and assigns. The rights and remedies granted to Lender under this Agreement shall inure to the benefit of Lender's successors and assigns, as well as to any subsequent holder or holders of this Agreement.

**CAPTION HEADINGS.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**SEVERABILITY.** If any provision of this Agreement is held to be invalid, illegal or unenforceable by any court, that provision shall be deleted from this Agreement and the balance of this Agreement shall be interpreted as if the deleted provision never existed.

**SUCCESSORS AND ASSIGNS BOUND; SOLIDARY LIABILITY.** Subject to any limitations set forth herein on transfer of the Collateral, this Agreement shall be binding upon and inure to the benefit of the parties, and their successors and assigns. In the event that there is more than one Borrower under this Agreement, all of the agreements and obligations made and/or incurred by any Borrower under this Agreement shall be on a "solidary" or "joint and several" basis.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: First Bank and Trust Loan Operations Department 909 Poydras St., Suite 3300 New Orleans, LA 70112.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT.

BORROWER:

FRANK J. D'AMICO, JR., A.P.L.C.

By: _____
FRANK J. D'AMICO, JR., President of FRANK J.
D'AMICO, JR., A.P.L.C.

LASER PRO Lending, Ver. 5.46.00.003 Copr. Harland Financial Solutions, Inc. 1997, 2009. All Rights Reserved. - LA C:\CFI\TESTIC\FI\LPL\D20C.FC TR-12883 PR-2

# ACKNOWLEDGMENT OF EXISTING MULTIPLE INDEBTEDNESS MORTGAGE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $1,000,000.00 | 12-18-2009 | 02-28-2010 | 100161621 | 01.07 | 1019059 | 499 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Grantor:** FRANK J. D'AMICO, JR., A.P.L.C. (TIN: 72-1178721)
622 BARONNE STREET 2ND FLOOR
NEW ORLEANS, LA 70113

**Lender:** FIRST BANK AND TRUST
SPECIAL ASSETS DEPARTMENT
909 POYDRAS STREET, SUITE 100
NEW ORLEANS, LA 70112

## ACKNOWLEDGMENT OF EXISTING MULTIPLE INDEBTEDNESS MORTGAGE

### TERMS AND CONDITIONS:

**MULTIPLE INDEBTEDNESS MORTGAGE.** Desiring to secure the prompt and punctual payment and satisfaction of present and future Indebtedness may be outstanding from time to time, one or more times, as provided herein, Grantor previously executed the following described **MORTGAGE.** The word "Mortgage" means the multiple indebtedness mortgage described in the "Multiple Indebtedness Mortgage" paragraph. in favor of Lender:

**CONTINUING SECURITY INTEREST TO SECURE PRESENT AND FUTURE INDEBTEDNESS.** Grantor reaffirms that Grantor's Mortgage was intended to and shall secure any and all of Grantor's present and future Indebtedness in favor of Lender, as may be outstanding from time to time, one or more times, including Grantor's loan and promissory note described therein, with the continuing preferences and priorities provided under Louisiana law.

**TRANSFER OF INDEBTEDNESS.** Grantor hereby recognizes and agrees that Lender may assign all or any portion of the Indebtedness to one or more third party creditors. Such transfers may include, but are not limited to, sales of participation interests in the Indebtedness. Grantor specifically agrees and consents to all such transfers and further waives any notice of any such transfers as may be provided for under applicable law.

**EXECUTION OF ADDITIONAL DOCUMENTS.** Grantor agrees to execute all additional documents that Lender may deem necessary and proper, within its sole discretion, to better reflect the true intent of this Acknowledgment.

**WAIVERS.** Grantor hereby waives presentment for payment, protest and notice of protest and of nonpayment, and all pleas of division. and discussion with regard to the Indebtedness. Grantor agrees that Grantor shall remain liable together with any and all guarantors, endorsers and sureties of the Indebtedness on a "joint and several" or "solidary" basis. Grantor further agrees that discharge or release of any party, or extension of time for payment, or any delay in enforcing any rights granted to Lender, will not cause Lender to lose any of its rights under this Acknowledgment or under the Indebtedness. Grantor is also waiving any defenses that may arise because of any action or inaction on Lender's part, including without limitation, any failure or delay of Lender to exercise or enforce any of its rights related to Grantor's Mortgage. Grantor additionally agrees that any waiver or forbearance on Lender's part shall be binding upon Lender only if agreed to in writing.

Grantor additionally agrees that Lender's acceptance of payments other than in accordance with the terms of any agreement or agreements governing repayment of the Indebtedness, or Lender's subsequent agreement to extend or modify such repayment terms, shall likewise not have the effect of releasing Grantor, and/or o releasing the Indebtedness, and/or any other party or parties guaranteeing payment of the Indebtedness from their respective obligations to Lender, and/or of releasing any other collateral directly or indirectly securing repayment of the Indebtedness. In addition, no course of dealing between Grantor and Lender, nor any failure or delay on the part of Lender to exercise any of the rights and remedies granted under the aforesaid provisions, or under any other agreement or agreements by and between Grantor and Lender, shall have the effect of waiving any of Lender's rights and remedies. Any partial exercise of any rights and remedies granted to Lender shall furthermore not constitute a waiver of any of Lender's other rights and remedies, it being Grantor's intent and agreement that Lender's rights and remedies shall be cumulative in nature. Grantor further agrees that, upon the occurrence of any Event Of Default under the aforesaid provisions, any waiver or forbearance on the part of Lender to pursue the rights and remedies available to Lender, shall be binding upon Lender only to the extent that Lender specifically agrees to any such waiver or forbearance in writing. A waiver or forbearance as to one Event of Default shall not constitute a waiver or forbearance as to any other default.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Acknowledgment:

    **Caption Headings.** Caption headings in this Acknowledgment are for convenience purposes only and are not to be used to interpret or define the provisions of this Acknowledgment.

    **Governing Law.** This Acknowledgment will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Louisiana without regard to its conflicts of law provisions. This Acknowledgment has been accepted by Lender in the State of Louisiana.

    **Severability.** If any provision of this Acknowledgment is held to be illegal, invalid or unenforceable under present or future laws effective during the term hereof, such provision shall be fully severable. This Acknowledgment shall be construed and enforceable as if the illegal, invalid or unenforceable provision had never comprised a part of it, and the remaining provisions of this Acknowledgment shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance herefrom. Furthermore, in lieu of such illegal, invalid or unenforceable provision, there shall be added automatically as a part of this Acknowledgment, a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and legal, valid and enforceable.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Acknowledgment. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Acknowledgment shall have the meanings attributed to such terms in the Louisiana Commercial Laws (La. R.S. 10: 9-101, et seq.):

    **Borrower.** The word "Borrower" means FRANK J. D'AMICO, JR., A.P.L.C. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

    **Event of Default.** The words "Event of Default" mean any of the events of default set forth in the Note, the Mortgage or any Related Documents.

    **Grantor.** The word "Grantor" means FRANK J. D'AMICO, JR., A.P.L.C. .

    **Indebtedness.** The word "Indebtedness" shall have the same definition as provided in the Mortgage and shall include, without limitation, the indebtedness evidenced by the Note.

    **Lender.** The word "Lender" means FIRST BANK AND TRUST and its successors and assigns.

    **Mortgage.** The word "Mortgage" means the multiple indebtedness mortgage described in the "Multiple Indebtedness Mortgage" paragraph.

    **Note.** The word "Note" means the Note executed by FRANK J. D'AMICO, JR., A.P.L.C. in the principal amount of $1,000,000.00 dated December 18, 2009, together with all renewals, extensions, modifications, refinancings, consolidations and substitutions of and for the note or credit agreement.

    **Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS ACKNOWLEDGMENT AND AGREES TO ITS TERMS.  THIS ACKNOWLEDGMENT IS DATED  AS OF DECEMBER 18, 2009.

GRANTOR:

FRANK J. D'AMICO, JR., A.P.L.C.

By: _____
     FRANK J.  D'AMICO, JR., President of FRANK J.
     D'AMICO, JR., A.P.L.C.



**FIRST BANK AND TRUST**
Business. Made Personal.

P.O. Box 60007
New Orleans, LA 70160-0007
(504) 584-5900

FRANK J D'AMICO APLC
622 BARONNE STREET - 2ND FLOOR
NEW ORLEANS LA  70113

LINE:     194263

AS OF: 06/13/08



FDIC

LOAN BILLING STATEMENT                                         PAGE  1

THANK YOU FOR THE OPPORTUNITY TO SERVE YOUR BANKING NEEDS.  FIRST BANK AND
TRUST APPRECIATES YOUR BUSINESS.  IF YOU HAVE ANY QUESTIONS CONCERNING YOUR
BILL, PLEASE CONTACT OUR CUSTOMER SERVICE DEPARTMENT AT 584-5908 OR
1-888-287-9621.

==============================================================================
                    REAL ESTATE COMMERCI LOAN 100161621
==============================================================================
                     -----PAYMENT SPLIT-----     TRANSACTION      PRINCIPAL
  DATE    DESCRIPTION      PRINCIPAL    INTEREST     AMOUNT         BALANCE

| DATE | DESCRIPTION | PRINCIPAL | INTEREST | TRANSACTION AMOUNT | PRINCIPAL BALANCE |
|---|---|---|---|---|---|
| 05/28/08 | PRINCIPAL ADVANCE | | | 170,368.71 | 170,368.71 |
| 05/28/08 | PRINCIPAL ADVANCE | | | 700,130.98 | 870,499.69 |
| 06/10/08 | PRINCIPAL ONLY PAYMENT | 626.67 | .00 | 626.67 | 869,873.02 |
| 06/10/08 | PRINCIPAL ONLY PAYMENT | 2,666.83 | .00 | 2,666.83 | 867,206.19 |
| 06/10/08 | PRINCIPAL ONLY PAYMENT | 3,876.34 | .00 | 3,876.34 | 863,329.85 |
| 06/10/08 | PRINCIPAL ONLY PAYMENT | 10,483.08 | .00 | 10,483.08 | 852,846.77 |
| 06/10/08 | INTEREST ONLY PAYMENT | .00 | 1.21 | 1.21 | |
| 06/10/08 | INTEREST ONLY PAYMENT | .00 | 14.88 | 14.88 | |
| 06/10/08 | INTEREST ONLY PAYMENT | .00 | 839.58 | 839.58 | |
| 06/13/08 | BALANCE THIS STATEMENT | | | | 852,846.77 |

- - - - - - - - - - INTEREST CALCULATION - - - - - - - - - - - -

| FROM DATE | THRU DATE | INTEREST RATE | DAILY PERIODIC RATE | PRINCIPAL | DAYS | ACCRUED INTEREST |
|---|---|---|---|---|---|---|
| 05/28/08 | 06/09/08 | 6.5000 % | .00018055 | 870,499.69 | 13 | 2,043.25 |
| 06/10/08 | 06/27/08 | 6.5000 % | .00018055 | 852,846.77 | 18 | 2,771.75 |

                    * * * C O N T I N U E D * * *

FBT-443 (R4/07)



**FIRST BANK AND TRUST**
Business. Made Personal.

P.O. Box 60007
New Orleans, LA 70160-0007
(504) 584-5900

FRANK J D'AMICO APLC
622 BARONNE STREET - 2ND FLOOR
NEW ORLEANS LA 70113

LINE:      194263

AS OF: 06/13/08



- - - - - - - - - - - - - L O A N   S U M M A R Y - - - - - - - - - - - - LOAN BILLING STATEMENT                                    PAGE  2

| | | | |
|---|---|---|---|
| CREDIT LIMIT: | 1,000,000.00 | INTEREST ACCRUED FROM: | 05/28/08 |
| AVAILABLE CREDIT: | 147,153.23 | INTEREST ACCRUED THRU: | 06/27/08 |
| MATURITY DATE: | 05/28/09 | PRINCIPAL DUE: | .00 |
| - - - - ACTIVITY THIS PERIOD - - - - | | INTEREST DUE: | 3,959.33 |
| PRINCIPAL ADVANCES: | 870,499.69 | TOTAL PAYMENT DUE: | 3,959.33 |
| PRINCIPAL PAID: | 17,652.92 | NEXT PRINCIPAL DUE: | 05/28/09 |
| INTEREST PAID: | 855.67 | INTEREST DUE DATE: | 06/28/08 |

INTEREST ACCRUED:        4,815.00

ADD ADDITIONAL LATE CHARGE OF 200.00 IF NO PAYMENT IS RECEIVED BY 07/09/08

INTEREST PAID 2008:              855.67

# FIRST BANK TRUST - LOC DRAW - 7/15/08

| Client Name | DOA | Amount |
|---|---|---|
| | | |
| ███████████ | 5/20/2006 | 2,000.00 |
| ███████ | MM | 674.70 |
| ███████████ | 8/28/2007 | 655.13 |
| Barnett, Amelia | 5/17/2003 | 6,550.72 |
| Barnett, Jr. William | 5/17/2003 | 5,446.36 |
| ███████████ | 7/11/2006 | 297.78 |
| ███████████ | 1/16/2007 | 402.70 |
| ███████████ | 6/26/2007 | 704.97 |
| ███████████ | 2/15/2007 | 1,760.00 |
| ███████████ | 6/28/2007 | 521.01 |
| ███████████ | 5/10/2006 | 544.39 |
| ███████████ | 6/5/2008 | 995.50 |
| ███████████ | 12/15/2005 | 900.00 |
| ███████████ | 2/26/2007 | 1,874.00 |
| ███████████ | MM | 2,275.00 |
| ███████████ | 10/1/2006 | 576.84 |
| ███████████ | MM | 250.00 |
| ███████████ | 10/1/2006 | 285.35 |
| ███████████ | 2/9/2008 | 700.00 |
| ███████████ | 5/16/2005 | 460.00 |
| ███████████ | 8/28/2007 | 440.00 |
| ███████████ | 11/6/2007 | 500.00 |
| ███████████ | 12/10/2007 | 2,255.42 |
| ███████████ | 7/1/2007 | 3,833.60 |
| ███████████ | 3/18/2008 | 6,724.66 |
| ███████████ | 4/23/2008 | 661.10 |
| ███████████ | 3/9/2006 | 400.00 |
| ███████████ | 5/2/2007 | 1,209.49 |
| ███████████ | 9/16/2007 | 2,256.93 |
| ███████████ | 5/8/2003 | 1,000.00 |
| ███████████ | 10/7/2007 | 540.00 |
| ███████████ | 11/24/2007 | 915.52 |
| ███████████ | 2/15/2008 | 500.00 |
| ███████████ | 12/5/2007 | 3,132.30 |
| ███████████ | 1/10/2008 | 612.86 |
| ███████████ | 6/13/2007 | 999.19 |
| ███████████ | MM | 722.25 |
| ███████████ | 3/21/2008 | 484.66 |
| ███████████ | 3/31/2008 | 561.29 |
| | | 55,623.72 |

Amount 7/15/08 - A/R ⓒ

...TERED

# Invoice

Frank J. D'Amico, Jr., APLC

622 Baronne St., Second Floor
New Orleans, LA 70113

| Date | Invoice # |
|---|---|
| 7/15/2008 | 052808.79 |

| Bill To |
|---|
| William Barnett, Jr. |

| P.O. No. | Terms | Project |
|---|---|---|
| | | |

| Quantity | Description | Rate | Amount |
|---|---|---|---|
| 1 | June - Client Advance | 1,100.00 | 1,100.00 |
| 1 | Medical | 380.00 | 380.00 |
| 1 | June Interest - Regions | 519.20 | 519.20 |
| 1 | RX | 234.73 | 234.73 |
| 1 | Advance - July | 200.00 | 200.00 |
| 1 | RX | 469.98 | 469.98 |
| 1 | Advance - July | 1,600.00 | 1,600.00 |
| 1 | Court Cost | 440.00 | 440.00 |
| 1 | July - Interest - Regions | 502.45 | 502.45 |

| | **Total** | $5,446.36 |
|---|---|---|

| Client Name | DOA | Amount |
|---|---|---|
| Barnett, Amelia | 5/17/2003 | ✓ $900.00 |
| Barnett, William | 5/17/2003 | ✓ $1,600.00 |
| ███████████ | 2/15/2007 | ✓ $180.00 |
| ███████████ | 1/22/2005 | ✓ $1,395.82 |
| ███████████ | 7/28/2008 | ✓ $55.00 |
| ███████████ | 5/16/2005 | ✓ $415.69 |
| ███████████ | 1/17/2005 | ✓ $40.00 |
| ███████████ | 11/28/2006 | ✓ $975.17 |
| ███████████ | 11/20/2006 | ✓ $359.74 |
| ███████████ | 7/1/2008 | ✓ $475.93 |
| ███████████ | 11/24/2007 | ✓ $641.95 |
| ███████████ | 7/5/2008 | ✓ $180.00 |
| ███████████ | 1/28/2008 | ✓ $350.00 |
| ███████████ | 10/3/2008 | ✓ $115.34 |
| ███████████ | 6/13/2007 | ✓ $2,420.19 |
| **TOTAL DRAW REQUEST** | | **$10,104.83** |

RANK J. D'AMICO JR., APLC                                      50012

Frank J. D'Amico, Jr., APLC                    12/17/2008

LOC Draw from FB&T-TFR to GCB 12/17/08          10,104.83



Invoiced        ENTERED 12/17/08 nop

Deposit         ENTERED 12/17/08 nop

First Bank & Trust - O    LOC Draw from FB&T-TFR to GCB          10,104.83

Frank J. D'Amico, Jr., APLC

622 Baronne St., Second Floor
New Orleans, LA 70113

# Invoice

| Date | Invoice # |
|------|-----------|
| 12/17/2008 | 080408-176 |

**PAID**

| Bill To |
|---------|
| William Barnett, Jr. |

| P.O. No. | Terms | Project |
|----------|-------|---------|
|          |       |         |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 1 | DRAW - Advance to client | 1,600.00 | 1,600.00 |

| | **Total** | $1,600.00 |
|---|-----------|-----------|

| Client Name | DOA | Amount |
|---|---|---|
| ~~Adams, Maria~~ | 7/16/2005 | X $375.80 |
| ~~████████~~ | 5/20/2006 | X $355.00 |
| Barnett, Bill | 5/17/2003 | X $1,721.00 |
| ~~████████~~ | 8/28/2007 | X $662.96 |
| ~~████████~~ | 3/12/2008 | X $594.09 |
| ~~████████~~ | 5/20/2004 | X $836.25 |
| ~~████████~~ | 2/9/2008 | X $450.00 |
| ~~████████~~ve | 8/13/2007 | X $3,526.86 |
| ~~████████~~ | 12/11/2008 | X $350.00 |
| ~~████████~~ | 11/10/2007 | X $470.00 |
| ~~████████~~ | 7/23/2008 | X $267.44 |
| ~~████████~~ | 1/30/2009 | X $777.50 |
| ~~████████~~ | 7/1/2008 | X $494.36 |
| ~~████████~~ | 10/19/2007 | X $449.80 |
| ~~████████~~ | 11/26/2008 | X $500.00 |
| ~~████████~~ | 7/5/2008 | X $180.00 |
| ~~████████~~ | 10/3/2008 | X $132.69 |
| ~~████████~~ | 10/18/2005 | X $170.97 |
| ~~████████~~ | 2/15/2008 | X $183.72 |
| ~~████████~~ | 7/15/2008 | X $1,162.00 |
| ~~████████~~ | 2/20/2008 | X $626.52 |
| ~~████████~~ | 5/9/2008 | X $514.36 |
| **TOTAL DRAW REQUEST** | | **$14,801.32** |

*(handwritten note beside 10/18/2005 row)* 170 error charged to Fema 2/18/10 NDP

Deposit
ENTERED
2/10/09
NDP

Invoiced
ENTERED
2/12/09
AE

FRANK J. D'AMICO JR., APLC                                     50016

Frank J. D'Amico, Jr., APLC          2/18/2009
LOC Draw from FB&T-TFR to GCB 2/10/09          14,801.32

First Bank & Trust - O   LOC Draw from FB&T-TFR to GCB          14,801.32

Frank J. D'Amico, Jr., APLC

622 Baronne St., Second Floor
New Orleans, LA 70113

# Invoice

| Date | Invoice # |
|------|-----------|
| 2/10/2009 | 080408-233 |

**PAID**

**Bill To**

William Barnett, Jr.

| P.O. No. | Terms | Project |
|----------|-------|---------|
|          |       |         |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 1 | DRAW - RX $121.00 / Advance to Client $642.00 / Feb Rent $958.00 | 1,721.00 | 1,721.00 |

| | | | |
|---|---|---|---|
| | | **Total** | $1,721.00 |

| Client Name | DOA | Amount | |
|---|---|---|---|
| ~~Adams, Marion~~ | 7/16/2005 | $190.96 | |
| Barnett, Amelia | 5/17/2003 | $1,941.64 | |
| Barnett, Bill | 5/17/2003 | $1,517.80 | |
| ~~Copeland, Bonnie~~ | 10/1/2006 | $277.17 | |
| ~~Eidmann, Joyce & Elaine~~ | Brch of Contract | $244.16 | |
| ~~██████████████~~ | 2/9/2008 | $180.00 | |
| ~~██████████~~ | 12/11/2008 | $832.00 | |
| ~~King, Timothy~~ | 3/18/2008 | $158.98 | |
| ~~Knight ██████~~ | 1/30/2009 | $406.94 | |
| ~~██████████~~ | 5/2/2007 | $408.51 | |
| ~~██████████~~ | 11/20/2006 | $1,154.89 | |
| ~~██████████~~ | 1/22/2009 | $755.00 | |
| ~~██████████~~ | 7/5/2008 | $180.00 | |
| ~~██████████~~ | 2/15/2008 | $333.90 | |
| ~~██████████~~ | 3/26/2008 | $608.25 | |
| ~~██████ Deborah~~ | 10/31/2008 | $350.00 | |
| **TOTAL DRAW REQUEST** | | **$9,540.20** | revised |



Deposit QB



Invoice

ENTERED

**FRANK J. D'AMICO JR., APLC**                                          50020

    Frank J. D'Amico, Jr., APLC        LOC Draw from FB&T-TFR to GCB 3/16/09      3/16/2009      9,540.20

First Bank & Trust LOC Draw from FB&T-TFR to GCB      9,540.20

Frank J. D'Amico, Jr., APLC

622 Baronne St., Second Floor
New Orleans, LA 70113

# Invoice

| Date | Invoice # |
|------|-----------|
| 3/16/2009 | 080408-283 |

**Bill To**

William Barnett, Jr.

| P.O. No. | Terms | Project |
|----------|-------|---------|
| | | |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 1 | Draw - Client Advance $1092.00 / Regions Interest $330.56 / Copy charge $40.24 Cour Costs $55.00 | 1,517.80 | 1,517.80 |

| | **Total** | $1,517.80 |
|--|-----------|-----------|

WILLIAM B. BARNETT AND
AMELIA BARNETT

CIVIL ACTION

VERSUS

NO. 10-1928

FRANK J. D'AMICO, JR., APLC, ET AL

SECTION "B" (5)


## WILLIAM BARNETT

SUPPORTING DOCUMENTION FOR COURT APPROVED "ADVANCES"
INTEREST CALCULATIONS


# ADVOCATE FINANCIAL, LLC
# RATE 12%

# ADVOCATE FINANCIAL, LLC

*The Preferred Resource*

September 21, 2009

Nancy Pavon
Frank J. D'Amico, Jr., APLC
622 Baronne Street
New Orleans, LA 70113

## RE: Client Promissory Note

Dear Ms. Pavon:

Please find enclosed the original Promissory Notes regarding your client, **William B. Barnett,** stamped "REFINANCED", for your firm's records:

According to our records, this loan has been refinanced. If you have any questions, please do not hesitate to contact me at (225) 924-6629.

Sincerely,

Doris D. Kruegel

Enclosure - 1

# CLIENT PROMISSORY NOTE

| Principal | Interest Rate | Loan Date | Maturity Date | Firm Number |
|---|---|---|---|---|
| $ 20,000.00 | 12 % | 4/23/2009 | 4/23/2010 | 91-1 |

The information contained in this box is for Lender's internal use only and does not constitute a portion of the terms and conditions of this promissory note.

| BORROWER: | CO-BORROWER: | LENDER: |
|---|---|---|
| William B Barnett | | Advocate Financial, L.L.C. |
| 101 St. Ann Street, #32 | | TIN 72-1246887 |
| Mandeville, LA 70448 | | P. O. Box 80839 |
| SSN 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 | SSN | Baton Rouge, Louisiana 70898-0839 |

**1. PROMISE TO PAY.** I/We, William B Barnett ("Borrower"), promise to pay, on demand or if no demand is made then as set forth in Section 4 below, to the order of ADVOCATE FINANCIAL, L.L.C., a Louisiana limited liability company ("Lender"), the sum of TWENTY THOUSAND AND 00/100 Dollars ($20,000.00 ), or such other amounts as may be shown from time to time on the books and records of Lender as reflecting the aggregate unpaid principal balance of loan advances made to Borrower under this Note, together with (a) simple interest assessed on a variable rate basis at the rate per annum equal to 8.75 percentage points over the Bank Prime Loan Rate (defined below), as such interest rate may be adjusted from time to time, one or more times, (the "Stated Rate") assessed on the unpaid principal balance of this Note as outstanding from time to time commencing on the date of funding and continuing until this Note is paid in full and (b) interest that has accrued pursuant to the terms of any and all promissory notes made by Borrower in favor of Lender which have been extended, renewed, rearranged, restructured or refinanced by this Note, to the extent that such accrued interest has not been paid, as reflected on the books and records of Lender as of the date hereof. For the sake of clarity, Borrower and Lender agree that the accrued interest which is payable by accruing under any and all prior promissory notes executed by Borrower in favor of Lender relating to the case or cases financed by such prior promissory notes.

**2. VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change on or about January 15th of each year based on any change in the bank prime loan rate as identified by the Louisiana Supreme Court pursuant to Rule 1.8(e)(5)(iv) of the Louisiana Rules of Professional Conduct (the "Rules") (the "Bank Prime Loan Rate"). If the Bank Prime Loan Rate is unavailable during the term of this loan, Lender shall utilize in its place the "Prime Rate" as published by the Wall Street Journal on or about January 15th of each year during the term of the loan. The Bank Prime Loan Rate is currently 3.25 % per annum. The Stated Rate to be applied to the unpaid principal balance of this Note will be at a rate of 8.75 percentage points over the Bank Prime Loan Rate, resulting in an initial Stated Rate of 12.00 % per annum. In no event, however, shall the interest contracted for, charged or received under this Note exceed the maximum interest permitted by Rule 1.8(e) or any other applicable provision of the Rules, and the Stated Rate shall be considered modified automatically to the extent necessary to comply at all times with the Rules. Any amounts of interest previously paid to Lender in excess of the amounts permitted by the Rules shall be applied by Lender to reduce the principal of the indebtedness evidenced by this Note, or, at Lender's option, be refunded.

**3. INTEREST.** Interest on this Note is computed on a 365/365 simple interest basis; that is, by multiplying the outstanding principal balance by the annual interest rate and by the ratio of the actual number of days the principal balance is outstanding over a year of 365 days. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing. Unless otherwise agreed or required by applicable law, payments will be applied first to accrued unpaid interest, then to principal.

**4. PAYMENT TERMS.** Borrower will pay this Note in readily available funds of all principal, accrued and unpaid interest hereon and all accrued and unpaid interest referenced in clause (b) of Section 1 above on demand by Lender, or if no demand is made, then in one payment (a) upon the expiration of 15 days following (i) the receipt of funds in payment of any full or partial settlement or final and nonappealable judgment, or (ii) an adverse, final dismissal with prejudice of Borrower's case; or (b) on April 23, 2010 , whichever occurs earliest (the "Maturity Date").

**5. PREPAYMENT.** Borrower may prepay this Note in full at any time by paying the then unpaid principal balance of this Note plus accrued and unpaid interest hereon plus accrued and unpaid interest referenced in clause (b) of Section 1 above.

**6. DISBURSEMENTS AT LENDER'S DISCRETION.** Borrower acknowledges and agrees that no provision hereof, and no course of dealing by Lender in connection herewith, shall be deemed to create or shall imply the existence of any commitment or obligation on the part of Lender to disburse funds hereunder; any and all disbursements under this Note shall be at the sole and absolute discretion of Lender. Without in any way limiting the foregoing, Lender will require at a minimum compliance, to the sole and absolute satisfaction of Lender, with the following requirements prior to disbursing funds under this Note.
  **Submission Of Draw Request Form.** Borrower and/or the law firm representing Borrower, Frank J. D'Amico, Jr., APLC ("Law Firm") have executed and submitted to Lender a fully completed Draw Request form provided by Lender.
  **No Event Of Default.** No condition exists which constitutes, or with the passage of time or the giving of notice by Lender would constitute, an Event of Default under this Note or any related loan document executed by Borrower.
  **Advancement Of Case.** Borrower and Law Firm are prosecuting in a timely fashion the case or cause of action funded by disbursements under this Note with the progress in the case or cause of action to date suggesting an ensuing judgment favorable to Client in an amount necessary to cover all principal, interest, fees and charges due under this Note.

**7. SPECIAL POWER OF ATTORNEY.** Borrower hereby makes, constitutes, and appoints, both acting separately or together, Law Firm and FD , individually, as Borrower's true and lawful agents, attorneys in fact and mandatories for Borrower and in Borrower's name, place and stead, and give and grant to Borrower's attorneys in fact full power and authority to do and perform each and every act and thing whatsoever requisite and necessary to be done with respect to this Note including, but not limited to, the execution of draw requests for funds and receipts for the disbursement of funds under this Note. (BORROWER'S INITIALS WB )

**8. MANNER OF DISBURSEMENT OF FUNDS.** Borrower agrees and acknowledges that Lender shall have the right to and is hereby directed to deposit any funds disbursed to Borrower or for Borrower's benefit into the client trust account of Law Firm, and further, that such funds disbursed may be transmitted by single check, wire or other transfer with funds disbursed to or for the benefit of other clients of Law Firm. (BORROWER'S INITIALS WB )

**9. DEFAULT.** Each of the following actions or inactions shall constitute an "Event of Default" under this Note:
  **Default Under This Note.** Should Borrower default in the payment of any principal or interest due under this Note.
  **Other Defaults In Favor Of Lender.** Should Borrower default under any other loan, extension of credit, security agreement or any other agreement or obligation in favor of Lender.
  **Default In Favor Of Third Parties.** Should Borrower default under any loan, extension of credit, security agreement, or any other agreement or obligation in favor of any other creditor or person that may materially affect any of Borrower's property or ability to perform any obligation under this Agreement or any other agreement or obligation in favor of Lender.
  **Insolvency/ Bankruptcy.** Should any of the following occur or exist: (a) the suspension, failure or insolvency, however evidenced, of Borrower; (b) the institution of proceedings for bankruptcy protection, readjustment of indebtedness, or reorganization under any insolvency law by or against Borrower; (c) the filing by Borrower of proceedings for a respite or to make a general assignment for the benefit of creditors; or (d) the application for or appointment of a receiver of all or any part of Borrower's property.
  **Death, Interdiction Or Incarceration.** Should Borrower die, be interdicted, or be incarcerated with the result that Law Firm is prevented from prosecuting in a timely fashion the case or cause of action funded by disbursements under this Note.
  **Dismissal Of Law Firm.** Should Borrower, despite any fee agreement, dismiss or otherwise remove Law Firm from representing Borrower, or retain other counsel to assume the primary responsibility of representing Borrower, in the case or cause of action funded by disbursements under this Note.
  **Affidavit Of Necessity.** Should Borrower fail to execute, when requested by Lender, an affidavit, in a form satisfactory to Lender, attesting to the fact that all funds loaned to Borrower by Lender have been and will continue to be used for court costs, litigation expenses and legitimate and necessary living and medical expenses qualifying for attorney funding under the Louisiana Rules of Professional Conduct.
  **False Statements.** Should any representation, warranty, or material statement of Borrower made in connection with the obtaining of the loan evidenced by this Note or any security agreement directly or indirectly securing repayment of this Note prove to be incorrect or misleading in any respect.

**10. LENDER'S RIGHTS UPON DEFAULT.** Should an Event of Default occur or exist under this Note, and remain uncured for ten (10) days after notice to Borrower by Lender of such Event of Default, Lender shall have the right, at its sole option, to declare formally this Note to be in default and to accelerate the maturity and insist upon immediate payment in full of the unpaid principal balance then outstanding under this Note, plus accrued and unpaid interest hereon plus accrued and unpaid interest referenced in clause (b) of Section 1 above, together with reasonable attorney's fees, costs and expenses as provided herein. Lender shall have the further right, again at its

sole option, to declare formal default and to accelerate the maturity and to insist upon immediate payment in full of every loan, debt and obligation whatsoever that Borrower may then owe to Lender, all without further notice or demand.

**11. ATTORNEYS' FEES.** If Lender refers this Note to an attorney for collection or files suit against Borrower to collect this Note, or if Borrower files for bankruptcy or other relief from creditors, Borrower agrees to pay Lender's reasonable attorney's fees in an amount not exceeding twenty-five percent (25%) of the unpaid debt then owing under this Note.

**12. FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**13. GOVERNING LAW.** Borrower agrees that this Note and the loan evidenced hereby shall be governed under the laws of the State of Louisiana.

**14. WAIVERS.** Borrower and each guarantor of this Note hereby agree (a) to waive demand, presentment for payment, protest, notice of protest and notice of nonpayment, and all pleas of division and discussion; (b) that their obligations and liabilities to Lender hereunder shall be on a "solidary" or "joint and several" basis; (c) that discharge or release of any party who is or may be liable to Lender for the indebtedness represented hereby, or the release of any collateral directly or indirectly securing repayment hereof, shall not have the effect of releasing any other party, who shall remain liable to Lender, or of releasing any other collateral that is not expressly released by Lender; (d) that Lender's acceptance of payment other than in accordance with the terms of this Note, or Lender's subsequent agreement to extend or modify such repayment terms, or Lender's failure or delay in exercising any rights or remedies granted to Lender, shall likewise not have the effect of releasing Borrower or any other party from their respective obligations to Lender, or of releasing any collateral that directly or indirectly secures repayment hereof; (e) that Lender's failure or delay to exercise, or partial exercise of, any of Lender's rights and remedies shall not have the effect of waiving any of Lender's rights and remedies, it being Borrower's intent and agreement that Lender's rights and remedies shall be cumulative in nature; and (f) that any waiver or forbearance on the part of Lender to pursue the rights and remedies available to Lender, shall be binding upon Lender only to the extent that such waiver or forbearance is set forth in writing, and a waiver or forbearance on the part of Lender as to one Event of Default shall not be construed as a waiver or forbearance as to any other Event of Default.

**15. SUCCESSORS AND ASSIGNS LIABLE.** Borrower's and each guarantor's obligations and agreements under this Note shall be binding upon Borrower's and each guarantor's respective successors, heirs, legatees, devisees, administrators, executors and assigns. The rights and remedies granted to Lender under this Note shall inure to the benefit of Lender's successors and assigns, as well as to any subsequent holder or holders of this Note.

**16. NO REPRESENTATIONS BY LENDER.** Lender has made no representations to Borrower as to the use of the Note proceeds, Borrower's claim or cause of action or any other aspect of the transactions contemplated by or related to this Note. Borrower has established adequate means of obtaining information from Law Firm on a continuing basis regarding the use of the Note proceeds and Borrower's claim or cause of action funded hereby.

**17. GENERAL PROVISIONS.** Caption headings of the sections of this Note are for convenience purposes only and are not to be used to interpret or to define the provisions. In this Note, whenever the context so requires, the singular includes the plural and the plural also includes the singular. If any provision of this Note is held to be invalid, illegal or unenforceable by any court, that provision shall be deleted from this Note and this Note shall be interpreted as if the deleted provision never existed.

**18. WAIVER OF RIGHT TO JURY TRIAL.** Borrower and Lender hereby waive the right to a jury trial in any action, proceeding, or counterclaim arising out of, or related to, the terms, conditions or enforcement of this Note or any other aspect of the transactions contemplated by or related to this Note.

**BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS PROMISSORY NOTE AND BORROWER AGREES TO ITS TERMS.**

_____  4-24-09
BORROWER NAME          DATE

_____  _____
CO-BORROWER NAME          DATE

_____
BORROWER PRINTED NAME

_____
CO-BORROWER PRINTED NAME

_Patricia Wininger_  4-24-09
WITNESS NAME          DATE

_PATRICIA WININGER_
WITNESS PRINTED NAME

**ACKNOWLEDGMENT BY BORROWER**

State of Louisiana
Parish of _ORLEANS_

BEFORE ME, the undersigned notary, on _APRIL 24_, _2009_ [Date] personally came and appeared _WILLIAM BARNETT_ [Borrower Name] ("Affiant"), who being first duly sworn by me, did depose and say that Affiant executed this Client Promissory Note as his/her own free act and deed.

_____
NOTARY PUBLIC

_FRANK J. D'AMICO, JR._
NOTARY PUBLIC PRINTED NAME

# CLIENT PROMISSORY NOTE

| Principal | Interest Rate | Loan Date | Maturity Date | Firm Number |
|---|---|---|---|---|
| $ 45,000.00 | 12          % | 9/11/2009 | 9/11/2010 | 91-1 |

The information contained in this box is for Lender's internal use only and does not constitute a portion of the terms and conditions of this promissory note.

**BORROWER:**  **CO-BORROWER:**  **LENDER:**

William B Barnett     Advocate Financial, L.L.C.

101 St. Ann Street, #32     TIN 72-1246887

Mandeville, LA 70448     P. O. Box 80839

SSN  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    SSN    Baton Rouge, Louisiana 70898-0839

---

1. **PROMISE TO PAY.** I/We, **William B Barnett** ("Borrower"), promise to pay, on demand or if no demand is made then as set forth in Section 4 below, to the order of ADVOCATE FINANCIAL, L.L.C., a Louisiana limited liability company ("Lender"), the sum of **FORTY-FIVE THOUSAND AND 00/100** Dollars ($**45,000.00** ), or such other amounts as may be shown from time to time on the books and records of Lender as reflecting the aggregate unpaid principal balance of loan advances made to Borrower under this Note, together with (a) simple interest assessed on a variable rate basis at the rate per annum equal to **8.75** percentage points over the Bank Prime Loan Rate (defined below), as such interest rate may be adjusted from time to time, one or more times, (the "Stated Rate") assessed on the unpaid principal balance of this Note as outstanding from time to time, commencing on the date of funding and continuing until this Note is paid in full and (b) interest that has accrued pursuant to the terms of any and all promissory notes made by Borrower in favor of Lender which have been extended, renewed, rearranged, restructured or refinanced by this Note, to the extent that such accrued interest has not been paid, as reflected on the books and records of Lender as of the date hereof. For the sake of clarity, Borrower and Lender agree that this Note is an extension, renewal, rearrangement, restructuring or refinancing of any and all amounts of principal and accrued and unpaid interest, to the extent not previously paid by Borrower, represented by or accruing under any and all prior promissory notes executed by Borrower in favor of Lender relating to the case or cases financed by such prior promissory notes.

2. **VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change on or about January 15th of each year based on any change in the bank prime loan rate as identified by the Louisiana Supreme Court pursuant to Rule 1.8(e)(5)(iv) of the Louisiana Rules of Professional Conduct (the "Rules") (the "Bank Prime Loan Rate"). If the Bank Prime Loan Rate is unavailable during the term of this loan, Lender shall utilize in its place the "Prime Rate" as published by the Wall Street Journal on or about January 15th of each year during the term of the loan. The Bank Prime Loan Rate is currently **3.25** % per annum. The Stated Rate to be applied to the unpaid principal balance of this Note will be at a rate of **8.75** percentage points over the Bank Prime Loan Rate, resulting in an initial Stated Rate of **12.00** % per annum. In no event, however, shall the interest contracted for, charged or received under this Note exceed the maximum interest permitted by Rule 1.8(e) or any other applicable provision of the Rules, and the Stated Rate shall be considered modified automatically to the extent necessary to comply at all times with the Rules. Any amounts of interest previously paid to Lender in excess of the amounts permitted by the Rules shall be applied by Lender to reduce the principal of the indebtedness evidenced by this Note, or, at Lender's option, be refunded.

3. **INTEREST.** Interest on this Note is computed on a 365/365 simple interest basis; that is, by multiplying the outstanding principal balance by the annual interest rate and by the ratio of the actual number of days the principal balance is outstanding over a year of 365 days. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing. Unless otherwise agreed or required by applicable law, payments will be applied first to accrued unpaid interest, then to principal.

4. **PAYMENT TERMS.** Borrower will pay this Note in readily available funds of all principal, accrued and unpaid interest hereon and all accrued and unpaid interest referenced in clause (b) of Section 1 above on demand by Lender, or if no demand is made, then in one payment (a) upon the expiration of 15 days following (i) the receipt of funds in payment of any full or partial settlement or final and nonappealable judgment, or (ii) an adverse, final dismissal with prejudice of Borrower's case; or (b) on **September 11, 2010** , whichever occurs earliest (the "Maturity Date").

5. **PREPAYMENT.** Borrower may prepay this Note in full at any time by paying the then unpaid principal balance of this Note plus accrued and unpaid interest hereon plus accrued and unpaid interest referenced in clause (b) of Section 1 above.

6. **DISBURSEMENTS AT LENDER'S DISCRETION.** Borrower acknowledges and agrees that no provision hereof, and no course of dealing by Lender in connection herewith, shall be deemed to create or shall imply the existence of any commitment or obligation on the part of Lender to disburse funds hereunder; any and all disbursements under this Note shall be at the sole and absolute discretion of Lender. Without in any way limiting the foregoing, Lender will require at a minimum compliance, to the sole and absolute satisfaction of Lender, with the following requirements prior to disbursing funds under this Note.

    **Submission Of Draw Request Form.** Borrower and/or the law firm representing Borrower, **Frank J. D'Amico, Jr., APLC** ("Law Firm") have executed and submitted to Lender a fully completed Draw Request form provided by Lender.

    **No Event Of Default.** No condition exists which constitutes, or with the passage of time or the giving of notice by Lender would constitute, an Event of Default under this Note or any related loan document executed by Borrower.

    **Advancement Of Case.** Borrower and Law Firm are prosecuting in a timely fashion the case or cause of action funded by disbursements under this Note with the progress in the case or cause of action to date suggesting an ensuing judgment favorable to Client in an amount necessary to cover all principal, interest, fees and charges due under this Note.

7. **SPECIAL POWER OF ATTORNEY.** Borrower hereby makes, constitutes and appoints, both acting separately or together, Law Firm and **FD** , individually, as Borrower's true and lawful agents, attorneys in fact and mandataries for Borrower and in Borrower's name, place and stead, and give and grant to Borrower's attorneys in fact full power and authority to do and perform each and every act and thing whatsoever requisite and necessary to be done with respect to this Note, including, but not limited to, the execution of draw requests for funds and receipts for the disbursement of funds under this Note. (BORROWER'S INITIALS )

8. **MANNER OF DISBURSEMENT OF FUNDS.** Borrower agrees and acknowledges that Lender shall have the right to and is hereby directed to deposit any funds disbursed to Borrower or for Borrower's benefit into the client trust account of Law Firm, and further, that such funds disbursed may be transmitted by single check, wire or other transfer with funds disbursed to or for the benefit of other clients of Law Firm. (BORROWER'S INITIALS )

9. **DEFAULT.** Each of the following actions or inactions shall constitute an "Event of Default" under this Note:

    **Default Under This Note.** Should Borrower default in the payment of any principal or interest due under this Note.

    **Other Defaults In Favor Of Lender.** Should Borrower default under any other loan, extension of credit, security agreement or any other agreement or obligation in favor of Lender.

    **Default In Favor Of Third Parties.** Should Borrower default under any loan, extension of credit, security agreement, or any other agreement in favor of any other creditor or person that may materially affect any of Borrower's property or ability to perform any obligation under this Agreement or any other agreement or obligation in favor of Lender.

    **Insolvency/ Bankruptcy.** Should any of the following occur or exist: (a) the suspension, failure or insolvency, however evidenced, of Borrower; (b) the institution of proceedings for bankruptcy protection, readjustment of indebtedness, or reorganization under any insolvency law by or against Borrower; (c) the filing by Borrower of proceedings for a respite or to make a general assignment for the benefit of creditors; or (d) the application for or appointment of a receiver of all or any part of Borrower's property.

    **Death, Interdiction Or Incarceration.** Should Borrower die, be interdicted, or be incarcerated with the result that Law Firm is prevented from prosecuting in a timely fashion the case or cause of action funded by disbursements under this Note.

    **Dismissal Of Law Firm.** Should Borrower, despite any fee agreement, dismiss or otherwise remove Law Firm from representing Borrower, or retain other counsel to assume the primary responsibility of representing Borrower, in the case or cause of action funded by disbursements under this Note.

    **Affidavit Of Necessity.** Should Borrower fail to execute, when requested by Lender, an affidavit, in a form satisfactory to Lender, attesting to the fact that all funds loaned to Borrower by Lender have been and will continue to be used for court costs, litigation expenses and legitimate and necessary living and medical expenses qualifying for attorney funding under the Louisiana Rules of Professional Conduct.

    **False Statements.** Should any representation, warranty, or material statement of Borrower made in connection with the obtaining of the loan evidenced by this Note or any security agreement directly or indirectly securing repayment of this Note prove to be incorrect or misleading in any respect.

10. **LENDER'S RIGHTS UPON DEFAULT.** Should an Event of Default occur or exist under this Note, and remain uncured for ten (10) days after notice to Borrower by Lender of such Event of Default, Lender shall have the right, at its sole option, to declare formally this Note to be in default and to accelerate the maturity and insist upon immediate payment in full of the unpaid principal balance then outstanding under this Note, plus accrued and unpaid interest hereon plus accrued and unpaid interest referenced in clause (b) of Section 1 above, together with reasonable attorney's fees, costs and expenses as provided herein. Lender shall have the further right, again at its

sole option, to declare formal default and to accelerate the maturity and to insist upon immediate payment in full of every other loan, debt and obligation whatsoever that Borrower may then owe to Lender, all without further notice or demand.

**11. ATTORNEYS' FEES.** If Lender refers this Note to an attorney for collection or files suit against Borrower to collect this Note, or if Borrower files for bankruptcy or other relief from creditors, Borrower agrees to pay Lender's reasonable attorney's fees in an amount not exceeding twenty-five percent (25%) of the unpaid debt then owing under this Note.

**12. FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**13. GOVERNING LAW.** Borrower agrees that this Note and the loan evidenced hereby shall be governed under the laws of the State of Louisiana.

**14. WAIVERS.** Borrower and each guarantor of this Note hereby agree (a) to waive demand, presentment for payment, protest, notice of protest and notice of nonpayment, and all pleas of division and discussion; (b) that their obligations and liabilities to Lender hereunder shall be on a "solidary" or "joint and several" basis; (c) that discharge or release of any party who is or may be liable to Lender for the indebtedness represented hereby, or the release of any collateral directly or indirectly securing repayment hereof, shall not have the effect of releasing any other party, who shall remain liable to Lender, or of releasing any other collateral that is not expressly released by Lender; (d) that Lender's acceptance of payment other than in accordance with the terms of this Note, or Lender's subsequent agreement to extend or modify such repayment terms, or Lender's failure or delay in exercising any rights or remedies granted to Lender, shall likewise not have the effect of releasing Borrower or any other party from their respective obligations to Lender, or of releasing any collateral that directly or indirectly secures repayment hereof; (e) that Lender's failure or delay to exercise, or partial exercise of, any of Lender's rights and remedies shall not have the effect of waiving any of Lender's rights and remedies, it being Borrower's intent and agreement that Lender's rights and remedies shall be cumulative in nature; and (f) that any waiver or forbearance on the part of Lender to pursue the rights and remedies available to Lender, shall be binding upon Lender only to the extent that such waiver or forbearance is set forth in writing, and a waiver or forbearance on the part of Lender as to one Event of Default shall not be construed as a waiver or forbearance as to any other Event of Default.

**15. SUCCESSORS AND ASSIGNS LIABLE.** Borrower's and each guarantor's obligations and agreements under this Note shall be binding upon Borrower's and each guarantor's respective successors, heirs, legatees, devisees, administrators, executors and assigns. The rights and remedies granted to Lender under this Note shall inure to the benefit of Lender's successors and assigns, as well as to any subsequent holder or holders of this Note.

**16. NO REPRESENTATIONS BY LENDER.** Lender has made no representations to Borrower as to the use of the Note proceeds, Borrower's claim or cause of action or any other aspect of the transactions contemplated by or related to this Note. Borrower has established adequate means of obtaining information from Law Firm on a continuing basis regarding the use of the Note proceeds and Borrower's claim or cause of action funded hereby.

**17. GENERAL PROVISIONS.** Caption headings of the sections of this Note are for convenience purposes only and are not to be used to interpret or to define the provisions. In this Note, whenever the context so requires, the singular includes the plural and the plural also includes the singular. If any provision of this Note is held to be invalid, illegal or unenforceable by any court, that provision shall be deleted from this Note and the balance of this Note shall be interpreted as if the deleted provision never existed.

**18. WAIVER OF RIGHT TO JURY TRIAL.** Borrower and Lender hereby waive the right to a jury trial in any action, proceeding, or counterclaim arising out of, or related to, the terms, conditions or enforcement of this Note or any other aspect of the transactions contemplated by or related to this Note.

**BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS PROMISSORY NOTE AND BORROWER AGREES TO ITS TERMS.**

| | |
|---|---|
| _____ 9/14/2009 | _____ _____ |
| BORROWER NAME            DATE | CO-BORROWER NAME       DATE |
| | |
| _____ | _____ |
| BORROWER PRINTED NAME | CO-BORROWER PRINTED NAME |

_Darryl Carimi_ 9/14/2009
WITNESS NAME            DATE

_Darryl J. Carimi_
WITNESS PRINTED NAME

**ACKNOWLEDGMENT BY BORROWER**

State of Louisiana
Parish of _____Orleans_____

BEFORE ME, the undersigned notary, on _____September 14, 2009_____ _____[Date] personally came and appeared _____William Burnett_____ _____ [Borrower Name] ("Affiant"), who being first duly sworn by me, did depose and say that Affiant executed this Client Promissory Note as his/her own free act and deed.

_____
NOTARY PUBLIC

_Frank J. D'Amico, Jr._
NOTARY PUBLIC PRINTED NAME

## FEDERAL TRUTH IN LENDING DISCLOSURE STATEMENT

| BORROWER: | CO-BORROWER: | LENDER: |
|---|---|---|
| William B Barnett | _____ | ADVOCATE FINANCIAL, L.L.C. |
| 101 St. Ann Street, #32 | _____ | P. O. BOX 80839 |
| Mandeville, LA 70448 | _____ | BATON ROUGE, LA 70898-0839 |
| SSN 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 | SSN _____ | (225) 924-6629 |

| ANNUAL PERCENTAGE RATE: The cost of my credit as a yearly rate. | FINANCE CHARGE: The dollar amount the credit will cost me. | AMOUNT FINANCED: The amount of credit provided to me or on my behalf. | PRIOR ACCRUED AND UNPAID INTEREST: | TOTAL OF PAYMENTS: The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|---|
| 12 | $ 5,400.00 | $ 45,000.00 | $ 66.77 | $ 50,466.77 |

Payment Schedule:

| NUMBER OF PAYMENTS: | AMOUNT OF PAYMENT: | MATURITY DATE: |
|---|---|---|
| 1 | $ 50,466.77 | 9/11/2010 |

ITEMIZATION OF THE AMOUNT FINANCED OF............................................ $ _____45,000.00_____
    Amount Disbursed to You Directly.................................................... $ _____0.00_____
    Amount Disbursed to Your Attorney's Bank
    Client Account for Your Benefit.................................................. $ _____26,540.82_____
AMOUNTS PAID TO LENDER:
    Prior Loan Balance......................................................................... $ _____18,459.18_____
    Amount Not Yet Disbursed by Lender............................. ... ... ... ... $ _____0.00_____

**PRIOR ACCRUED AND UNPAID INTEREST:** Because your loan is an extension, renewal, rearrangement, restructuring or refinancing of a prior loan or loans made by Advocate Financial, L.L.C. to you, in addition to the foregoing you owe accrued and unpaid interest on such prior loan(s) in the amount of $ 66.77 .

**BASIS OF DISCLOSURES:** Because your loan will be advanced in multiple draws (the exact number and amounts of which are unknown at this time), this disclosure is based on the following assumptions: (a) principal outstanding of $ 45,000.00 (the maximum amount available under your loan), (b) 49 additional draws of $500.00 after the initial draw, and (c) a loan maturity date of one year. All disclosures are estimates.

**SECURITY INTEREST:** You are giving a security interest to Lender in any recovery you obtain from your _____
Automobile Accident (type) claim against _____
Lincoln General (persons or entities), and the following additional collateral: _____
_____
_____

**PREPAYMENT:** If you pay this loan off early, you will not have to pay a penalty.

**SEE YOUR LOAN DOCUMENTS FOR ANY ADDITIONAL INFORMATION REGARDING NON PAYMENT, DEFAULT, ANY REQUIRED PAYMENT IN FULL BEFORE THE SCHEDULED DATE, PENALTIES AND THE SECURITY RIGHTS GRANTED TO LENDER.**

I/WE HEREBY ACKNOWLEDGE READING AND RECEIVING A COMPLETE COPY OF THIS DISCLOSURE.

_____    9/14/2009    _____
BORROWER    DATE        CO-BORROWER    DATE

William Barnett
BORROWER PRINTED NAME        CO-BORROWER PRINTED NAME

# CLIENT SECURITY AGREEMENT

| GRANTOR: | CO-GRANTOR: | LENDER: |
|---|---|---|
| William B Barnett | | Advocate Financial, L.L.C. |
| 101 St. Ann Street, #32 | | P. O. Box 80839 |
| Mandeville, LA 70448 | | Baton Rouge, LA 70898-0839 |
| SSN  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 | SSN | |

THIS SECURITY AGREEMENT, dated ___September 11, 2009_____, is entered into between ___William B Barnett_____
_____ ("Grantor"), and ADVOCATE FINANCIAL, L.L.C., a Louisiana limited liability company ("Lender").

**1. GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a continuing security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**2. DEFINITIONS.** The following words shall have the following meanings when used in this Agreement:

**"Agreement"** means this Security Agreement, as amended or modified from time to time, together with all exhibits and schedules attached or to be attached to this Security Agreement from time to time.

**"Collateral"** means the following:

All of Grantor's present and future rights, title and interest in and to, together with any and all present and future additions to the Claim (as defined below), including any and all Income and Proceeds from the Claim delivered or to be delivered to Grantor or to any other person for the benefit of Grantor, received or to be received by or on behalf of Grantor, or otherwise attributable to Grantor's interest in the Claim, whether from a named party in the case or any other person or entity on a named party's behalf, whether in satisfaction of a full or partial judgment or full or partial settlement of the Claim. "Claim" means that certain claim and cause of action of Grantor which arose on or about the date, involving the persons or entities (along with other parties who may not yet be identified), regarding the types of claims or injuries, and which Grantor (a) intends to assert by litigious action, if not settled before any such action is filed, or (b) has asserted as a cause of action presently pending in court, in the matter described as follows:

Grantor/Client(s):___William B Barnett_____
Date of Incident:___May 17, 2003_____Other Parties Involved:___Lincoln General_____
Type(s) of Claims or Injuries:___Automobile Accident_____
Case Name:___William B. Barnett and Amelia Barnett vs. Lincoln General Insurance Company_____
Case No.:___05-12216____Court:___22nd JDC_____Court Location:___St. Tammany_____
Parish/County, State of ___LA_____.

In addition, "Collateral" includes all Possessory Collateral delivered to Lender (or in the possession of a third party subject to the control of Lender) by or on behalf of Grantor, whether now or hereafter existing and whether tangible or intangible in character, including without limitation the following: (a) all property to which Lender acquires title or documents of title; (b) all property assigned to Lender; (c) all promissory notes, stock certificates, bonds, insurance policies, and all other instruments and evidences of an obligation; and (d) all records relating to any of the property described in this definition.

**"Event Of Default"** means any of the Events of Default set forth below in the Section 9 below.

**"Grantor"** means ___William B Barnett_____, and his/her heirs, successors, representatives and assigns.

**"Guarantor"** means ___Frank J. D'Amico, Jr., APLC_____ [Law Firm Name], and without limitation, any and all guarantors, sureties, and accommodation parties in connection with the Indebtedness.

**"Income And Proceeds"** mean all present and future income, proceeds, earnings, increases and substitutions from or for the Collateral of every kind and nature, including without limitation all payments, interest, profits, distributions, allocations, benefits, rights, options, monies, claims for money due and to become due, proceeds of any insurance on the Collateral, and all other types of proceeds, and all other property of every type and description which Grantor is entitled to receive on account of such Collateral, including accounts, contract rights, documents, instruments, chattel paper, and general intangibles.

**"Indebtedness"** means the indebtedness evidenced by any promissory note signed by Grantor in favor of Lender, in principal, interest, costs, expenses, and attorneys' fees, together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any Loan Document. "Indebtedness" also includes any and all other loans, extensions of credit, obligations, debts, liabilities and all other fees and charges, of Grantor, that may now and in the future be owed to or incurred in favor of Lender; as well as all claims by Lender against Grantor, whether existing now or later, voluntary or involuntary, related or unrelated, due or to become due, direct or indirect or by way of assignment, absolute or contingent, liquidated or unliquidated, individually or jointly with others, of every nature and kind whatsoever; whether Grantor may be obligated as guarantor, surety, accommodation party or otherwise; whether recovery upon such indebtedness may be or may become barred by prescription; and whether such indebtedness may be or may become void or otherwise unenforceable, up to a maximum principal amount outstanding at any one or more times, or from time to time, not to exceed $10,000,000.00, together with interest, costs, expenses, attorneys' fees and other fees and charges.

**"Lender"** means Advocate Financial, L.L.C., its successors and assigns, and any subsequent holder or holders of the Note, or any interest therein.

**"Loan Documents"** means all promissory notes, loan agreements, guaranties, security agreements, financing statements, mortgages and all other instruments, agreements and documents, whether now or hereafter existing, executed in favor of Lender by Grantor as borrower, guarantor, surety, accommodation party or otherwise.

**"Obligor"** means any person or entity obligated to Grantor to pay money or to perform some other act affecting or under the Collateral, including, but not limited to, anydefendant in a Claim or such defendant's insurer.

**"Possessory Collateral"** means the portion of the Collateral which Lender must have in its possession in order for Lender to have a perfected security interest under the provisions of the Louisiana Commercial Laws (La. R.S. 10: 9-101, *et seq.*).

**3. DELIVERY OF POSSESSORY COLLATERAL.** Upon execution of this Agreement, Grantor has delivered or will deliver to Lender those portions of t above described Collateral constituting Possessory Collateral. As long as this Agreement remains in effect, Grantor further agrees to immediately deliver to Lend any and all additions to and substitutions or replacements for the Possessory Collateral.

**4. CONTINUING SECURITY INTEREST TO SECURE PRESENT AND FUTURE INDEBTEDNESS.** Grantor has granted a continuing security interest in the Collateral in favor of Lender to secure any and all present and future Indebtedness of Grantor in favor of Lender, as may be outstanding from time t time, with the continuing preferences and priorities provided under applicable Louisiana law.

**5. DURATION.** This Agreement shall remain in full force and effect until such time as this Agreement and the security interests created hereby are terminated canceled by Lender under a written cancellation instrument signed by Lender in favor of Grantor.

**6. GRANTORS REPRESENTATIONS AND WARRANTIES.** Grantor represents and warrants to Lender that:

**Ownership.** Until termination of this Agreement, Grantor at all times will continue to be the legal and lawful owner of the Collateral free and clear of all securit interests, liens, encumbrances and claims of others except as disclosed to and accepted by Lender in writing prior to execution of this Agreement.

**Authority; No Violation.** Grantor has the right, power and authority to enter into this Agreement and to grant a continuing security interest in the Collateral in favor of Lender. Grantor's execution, delivery and performance of this Agreement do not conflict with, and will not result in a violation of, or constitute or give i to an event of default under (a) any agreement or other instrument which may be binding upon Grantor or govern or affect the Collateral, or (b) any law, governmental regulation or court decree or order applicable to Grantor or the Collateral.

**Perfection Of Security Interest.** Upon delivery of the Possessory Collateral to Lender, or upon filing of an appropriate financing statement of public record und the provisions of the Louisiana Commercial Laws (La. R.S. 10: 9-101, *et seq.*), this Agreement shall create a valid first lien upon, and perfect a security interest i the Collateral subject to no prior security interest, lien, charge, encumbrance or other agreement purporting to grant to any third party a security interest in the Collateral.

**Binding Effect.** This Agreement is binding upon Grantor, as well as Grantor's heirs, successors, representatives and assigns, and is legally enforceable in accordance with its terms.

**No Further Assignment.** Grantor has not, and will not, sell, assign, transfer, encumber or otherwise dispose of any of Grantor's rights in the Collateral except a provided in this Agreement.

**Survival Of Representations And Warranties.** The foregoing representations and warranties and all other representations and warranties of Grantor under thi Agreement shall be continuing in nature and shall survive the termination of this Agreement.

**7. LENDER'S RIGHTS AND OBLIGATIONS WITH RESPECT TO COLLATERAL.** Lender shall have the following rights in addition to all other rights it may have by law:
**Intervention In Claims.** Whether or not an Event of Default exists under this Agreement, Lender shall have the right to protect and preserve the security interest in the Collateral granted to Lender herein by filing an intervention in any court action involving the Claim, or by notifying any party, whether orally or in writing, of the existence of Lender' s security interest in the Collateral.
**Maintenance And Protection Of Collateral.** Lender may, but shall not be obligated to, take such steps as it deems necessary or desirable to protect, maintain, insure, store, or care f the Collateral, including payment of any liens or claims against the Collateral. Lender may charge any cost incurred in so doing to Grantor.
**Income And Proceeds From The Collateral.** Lender shall have the right, whether or not an Event of Default exists under this Agreement, to collect directly and receive any and all Income and Proceeds as such become due and payable. In order to permit the foregoing, Grantor unconditionally agrees to deliver to Lender, immediately following demand, any and such Income and Proceeds that may be received by or that may be payable to Grantor. Grantor further unconditionally agrees that Lender shall have the right to notify all Obligors to p and/or deliver such Income and Proceeds directly to Lender or Lender's nominee at an address to be designated by Lender, and to do any and all other things as Lender may deem necessary and proper, within Lender's sole discretion, to carry out the terms and intent of this Agreement. In order to permit the foregoing, Grantor agrees that Lender shall ha the additional irrevocable rights, coupled with an interest, to (a) receive, open and dispose of all mail addressed to Grantor pertaining to any of the Collateral; (b) notify the postal authorities to change the address and delivery of mail addressed to Grantor pertaining to any of the Collateral to such address as Lender may designate; and (c) endorse Grantor's name on any and all notes, acceptances, checks, drafts, money orders or other instruments of payment of such Income and Proceeds that may come into Lender's possession, and to deposit  otherwise collect the same, applying such funds to the unpaid balance of the Indebtedness.
**Transactions With Others.** Lender may (a) extend time for payment or other performance, (b) grant a renewal or change in terms or conditions, or (c) compromise, compound or release any obligation, with any one or more Obligors, endorsers, or Guarantors of the Indebtedness as Lender deems advisable, without obtaining the prior written consent of Grantor, and no such act or failure to so act shall affect Lender's rights against Grantor or the Collateral.
**8.   LIMITATIONS ON OBLIGATIONS OF LENDER.** Lender shall use ordinary reasonable care in the physical preservation and custody of any Possessory Collateral, but sha have no other obligation to protect the Collateral (whether or not Possessory Collateral) or its value. In particular, but without limitation, Lender shall have no responsibility for (a) any depreciation in value or deterioration of the Collateral or for the collection or protection of any Income and Proceeds from the Collateral, (b) preservation of rights against parties to the Collateral or against third persons, (c) ascertaining any maturities, calls, conversions, exchanges, offers, tenders, or similar matters relating to any of the Collateral, or (d) informing Grantor about any of the above, whether or not Lender has or is deemed to have knowledge of such matters.
**9. EVENTS OF DEFAULT.** The following actions and inactions shall constitute Events of Default under this Agreement:
**Default Under The Indebtedness.** Should Grantor default in the payment of principal, interest or any charge or fee under any of the Indebtedness.
**Default Under This Agreement.** Should Grantor violate, or fail to comply fully with any of the terms and conditions of, or default under, this Agreement.
**Default Under Other Agreements.** Should Grantor violate, or fail to comply fully with any of the terms and conditions of, or default under, any promissory note or other Loan Document executed by Grantor in favor of Lender.
**10.  REMEDIES.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender may exercise any one or more of the following rights and remedies:
**Accelerate Indebtedness.** At its sole option, accelerate the maturity and declare and demand immediate payment in full of any and all Indebtedness secured hereby.
**Collect The Collateral.** Collect any of the Collateral and, at Lender' s option, retain possession thereof while suing on the Indebtedness.
**Sell The Collateral.** Sell the Collateral, at Lender's discretion, as a unit or in parcels, at one or more public or private sales, or through any exchange or broker, at such prices and on such terms as Lender may deem appropriate, for cash or on credit or future delivery, without assumption of any credit risk, without any further demand or notice upon Grantor for performance, without appraisal, without the intervention of any court and without any formalities other than those provided herein. For purposes of selling the Collateral, Lender has been and is hereby made and constituted the agent of Grantor, such agency being coupled with an interest. Unless the Collateral is perishable or threatens to decline speedily in value  is of a type customarily sold on a recognized market, Lender shall give or mail to Grantor, or any of them, notice at least ten (10) days in advance of the time and place of any public sa or of the date after which any private sale may be made. Grantor agrees that any requirement of reasonable notice is satisfied if Lender mails notice by ordinary mail addressed to Grantor, or any of them, at the last address Grantor has given Lender in writing. If a public sale is held, there shall be sufficient compliance with all requirements of notice to the publi by a single publication in any newspaper of general circulation in the parish or county where the Collateral is located, setting forth the time and place of sale and a brief description of  property to be sold. Lender may be a purchaser at any public sale. Grantor agrees that any such sale shall be conclusively deemed to be conducted in a commercially reasonable mann if it is made consistent with the standard of similar sales of collateral by commercial banks in Baton Rouge, Louisiana.
**Foreclosure.** Maintain a judicial suit for foreclosure and sale of the Collateral.
**Confession Of Judgment.** For purposes of foreclosure under Louisiana executory process procedures, Grantor confesses judgment and acknowledges to be indebted to Lender up to  full amount of the Indebtedness. Grantor further confesses judgment and acknowledges to be indebted to Lender in the amount of all additional advances that Lender may make on Grantor's behalf pursuant to the terms of this Agreement, together with interest thereon, up to a maximum of two (2) times the total face amount of the Note or Notes secured by this Agreement. To the extent permitted under applicable Louisiana law, Grantor additionally waives: (a) the demand and three (3) days delay as provided under Articles 2639 and 2721 o the Louisiana Code of Civil Procedure; (b) the notice of seizure as provided under Articles 2293 and 2721 of the Louisiana Code of Civil Procedure; (c) the three (3) days delay provid under Articles 2331 and 2722 of the Louisiana Code of Civil Procedure; (d) all other benefits provided under Articles 2331, 2722 and 2723 of the Louisiana Code of Civil Procedure; and (e) all other Articles not specifically mentioned above.
**Specific Performance.** In addition to the foregoing remedies, or in lieu thereof, and in Lender's sole discretion, commence an appropriate action or actions against Grantor seeking specific performance of any covenants contained herein, or in aid of the execution or enforcement of any power herein granted.
**Transfer Title.** Effect transfer of title upon sale of all or part of the Collateral. For this purpose, Grantor irrevocably appoints Lender as its attorney-in-fact to execute endorsements, assignments and instruments in the name of Grantor and each of them (if more than one) as shall be necessary or reasonable.
**Other Rights And Remedies.** Have and exercise any or all of the rights and remedies of a secured creditor under the provisions of the Louisiana Commercial Laws (La. R.S. 10: 9-1 et seq.), at law, in equity, or otherwise.
**Application Of Proceeds And Payments.** Any and all proceeds, interest, profits, and Income and Proceeds that Lender actually receives and collects, whether resulting from the pub or private sale of the Collateral and/or collection or exercise of any of Lender's rights provided hereunder, shall be applied first to reimburse Lender for its costs and attorney's fees for collecting the same, with the balance being applied to principal, interest, costs, expenses, attorneys' fees and other fees and charges under the Indebtedness, in such order and with suc preferences and priorities as Lender shall determine within its sole discretion.
**Cumulative Remedies.** All of Lender's rights and remedies, whether evidenced by this Agreement or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation  Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and to exercise its remedies. Nothing under this Agreement or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any Guarantor and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.
**11.  INDEMNIFICATION OF LENDER.** Grantor agrees to indemnify, to defend and to save and hold Lender harmless from any and all claims, suits, obligations, damages, costs expenses (including without limitation, Lender's reasonable attorneys' fees), penalties, fines and forfeitures of any nature whatsoever which may be asserted against or incurred by Lender, arising out of or related to the Collateral, this Agreement or the rights and remedies granted to Lender hereunder. The foregoing indemnity provision shall survive the cancellation of this Agreement as to all matters arising or accruing prior to such cancellation, and the foregoing indemnity provision shall further survive in the event that Lender elects exercise any of the remedies as provided under this Agreement following any Event of Default hereunder.
**12.  ADDITIONAL OBLIGATIONS OF GRANTOR.** Grantor shall have the following additional obligations under this Agreement:
**Additional Collateral.** In the event that any of the Collateral should at any time decline in value, Grantor agrees to immediately provide Lender with such additional collateral securit as may then be acceptable to Lender.
**No Sale Or Encumbrance.** As long as this Agreement remains in effect, Grantor unconditionally agrees not to sell, option, assign, pledge, or create or permit to exist any lien or security interest in or against any of the Collateral in favor of any person other than Lender.
**Notice To Obligors.** Upon request by Lender, Grantor will immediately notify individual Obligors under Grantor's Collateral, advising such Obligors of the fact that their obligations have been collaterally assigned and pledged to Lender. In the event that Grantor should fail to provide such notices for any reason, upon request by Lender, Grantor agrees that Lender may forward appropriate notices to such Obligors, either in Lender's name or in the name of Grantor.
**Additional Documents.** Grantor agrees, at any time, from time to time, and one or more times, upon written request by Lender, to execute and deliver such further documents and do suc further acts and things as Lender may reasonably request, within Lender's sole discretion, to effect the purposes of this Agreement.
**Notification Of Lender.** Grantor will promptly deliver to Lender all written notices, and will promptly give Lender written notice of any other notices received by Grantor with respec to the Collateral.
**Representations And Warranties.** Take (or refrain from) any and all actions (or inactions), as necessary, for Grantor's representations and warranties in Section 6 above to remain t and correct at all times during the term of this Agreement.
**13.  EFFECT OF WAIVERS.** Grantor hereby waives (a) presentment for payment, protest, notice of protest and notice of nonpayment under all of the Indebtedness secured by this Agreement; and (b) all pleas of division and discussion, and all similar rights with regard to the Indebtedness, and agrees that Grantor shall remain liable, together with any and all Guarantors of the Indebtedness, on a "solidary" or "joint and several" basis. Likewise, any (a) discharge or release of any party who is, may, or will be liable to Lender under any of th Indebtedness, (b) release of the Collateral or any other collateral directly or indirectly securing repayment of the Indebtedness, (c) acceptance of payments other than in accordance wit the terms of the Loan Documents, or (d) agreement to extend or modify such repayment terms, shall not (i) release or otherwise reduce the liability of Grantor or any other party guaranteeing payment of the Indebtedness, (ii) release any Collateral or other collateral not expressly released by Lender, or (iii) waive any of Lender's rights and

forbearance by Lender to enforce the terms and conditions of this Agreement or the Loan Documents or to pursue its rights and remedies under this Agreement or the Loan Documents shall be binding upon Lender only if Lender specifically agrees to any such waiver or forbearance in a writing signed by a duly authorized officer of Lender.  A waiver or forbearance to one Event of Default shall not constitute a waiver or forbearance as to any other Event of Default.

**14.  MISCELLANEOUS PROVISIONS.**  The following miscellaneous provisions are a part of this Agreement:

**Amendments.**  This Agreement, together with the other Loan Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Applicable Law.**  This Agreement has been delivered to Lender and accepted by Lender in the State of Louisiana.  This Agreement shall be governed by and construed in accordance with the laws of the State of Louisiana.

**Attorneys' Fees; Expenses.**  Grantor agrees to pay upon demand all of Lender's costs and expenses, including attorneys' fees, court costs and legal expenses, incurred in connection with the enforcement of this Agreement, whether by litigation or otherwise, and specifically including such fees and costs incurred in bankruptcy proceedings (and including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services.

**Caption Headings.**  Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Notices.**  To give Grantor any notice required under this Agreement, Lender may hand deliver or mail such notice to Grantor.  Lender will deliver or mail any notice to Grantor (or any of them if more than one) at any address which Grantor may have given Lender by written notice as provided in this paragraph.  In the event that there is more than one Grantor under this Agreement, notice to a single Grantor shall be considered notice to all Grantors.  To give Lender any notice under this Agreement, Grantor (or any Grantor) shall mail the notice to Lender by registered or certified mail at the address specified in this Agreement, or at any other address that Lender may have given to Grantor (or any Grantor) by written notice as provided in this paragraph.  All notices required or permitted under this Agreement must be in writing and will be considered as given on the day it is delivered by hand or deposited in the U.S. Mail, by registered or certified mail to the address specified in this Agreement.

**Severability.**  If a court of competent jurisdiction finds any provision of this Agreement to be invalid or unenforceable as to any person or circumstance, such finding shall not render provision invalid or unenforceable as to any other persons or circumstances.  If feasible, any such offending provision shall be deemed to be modified within the limits of enforceability validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.

**Sole Discretion Of Lender.**  Whenever Lender's consent or approval is required under this Agreement, the decision whether to consent or approve shall be in the sole and exclusive discretion of Lender and Lender's decision shall be final and conclusive.

**Successors And Assigns Bound; Solidary Liability.**  Grantor's obligations and agreements under this Agreement shall be binding upon Grantor's successors, heirs, legatees, devisee administrators, executors and assigns.  In the event that there is more than one Grantor under this Agreement, all of the agreements and obligations made and incurred by Grantors under this Agreement shall be on a "solidary" or "joint and several" basis.

**Waiver Of Right To Jury Trial.**  Grantor and Lender hereby waive the right to a jury trial in any action, proceeding, or counterclaim arising out of, or related to, the terms, condition or enforcement of this Agreement, or any other aspect of the Indebtedness, the Collateral or the transactions contemplated by or related to this Agreement and the Loan Documents.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS SECURITY AGREEMENT, AND GRANTOR AGREES TO ITS TERMS.

| | |
|---|---|
| X _____  9/14/2009 | _____  _____ |
| GRANTOR                          DATE | CO-GRANTOR                          DATE |
| _____ | _____ |
| GRANTOR PRINTED NAME | CO-GRANTOR PRINTED NAME |

_____  9/14/2009
WITNESS                          DATE

DARRYL J. CARIMI
WITNESS PRINTED NAME

### ACKNOWLEDGMENT BY BORROWER

State of Louisiana
Parish of  Orleans _____

BEFORE ME, the undersigned notary, on  September 14 _____ 2009 personally came and appeared  William Barnett  [Borrower Name], who be first duly sworn by me, did depose and say that Affiant executed this Client Security Agreement as his/her own free act and deed.

_____
NOTARY PUBLIC

Frank J. D'Amico, Jr.
NOTARY PUBLIC PRINTED NAME

### AGREEMENT & DISCLOSURE
### REGARDING REIMBURSEMENT OF INTEREST
### AND REPAYMENT OF PRINCIPAL
### AND RIGHT OF INTERVENTION
### *ADDENDUM TO CONTINGENCY FEE CONTRACT DATED 11/9/2006*

I, **WILLIAM BARNETT**, (hereinafter referred to as "Client"), a person of legal age and/or capacity, do hereby declare that I am a client of and represented by The Law Firm of Frank J. D'Amico, Jr., PLC (hereinafter referred to as "Attorney"), and understand, acknowledge and agree to the following:

1.  CLIENT understands that in the course of ATTORNEY's representation of CLIENT, ATTORNEY may incur reasonable and necessary expenses including but not limited to litigation expenses, medical expenses, expert fees, court costs, deposition fees etc. for and/on behalf of CLIENT;

2.  CLIENT understands that in the course of ATTORNEY's representation of CLIENT, ATTORNEY may activate the firm's line of credit through **Advocate Financial, LLC** for the sole purpose of financing CLIENT's case expenses;

3.  CLIENT understands that upon the activation of the firm's line of credit, current interest charges at the rate of **PRIME plus 9.5%**[1] will begin to accrue as the funds are drawn from the firm's line of credit. CLIENT further acknowledges that this loan will be re-assessed *(as reported by the Federal Reserve Board on January 15th of each year in which the loan is outstanding)* on an annual basis pursuant to Rule 1.8 (iv) of the Rules of Professional Conduct. In no event will the rate exceed the maximum allowable by *law (Rule 1.8(iv); ... interest rate is not to exceed ten percentage points above the bank prime loan rate of interest...);*

4.  CLIENT FURTHER UNDERSTANDS, ACKNOWLEDGES AND AGREES that all case related costs as well as all interest charges incurred by ATTORNEY for/and on behalf of CLIENT shall be reimbursed out of any judgment and/or settlement proceeds;

5.  CLIENT FURTHER UNDERSTANDS, ACKNOWLEDGES AND AGREES that all case related expenses advanced on CLIENTS' behalf as set out in the executed Contingency Fee Contract, including any accrued interest is the responsibility of the CLIENT irrespective of any recovery and/or judgment and/or award; and

6.  Should CLIENT terminate representation, ATTORNEY has the right to intervene in said lawsuit to recover any and all costs and accrued interest advanced on CLIENT (S)' behalf.

I, the undersigned Client, execute the foregoing Agreement and Disclosure on this 24 th day of APRIL, 2009.

_____      _____
WITNESS                                                        WILLIAM BARNETT

Frank J. D'Amico, Jr., APLC
BY: _____

---

[1] Effective 4/1/06

*ADDENDUM TO THE FEE AGREEMENT & AUTHORITY TO REPRESENT*

*In accordance with amended Rule 1.8 (iv) of the Louisiana Rules of Professional Conduct, effective date April 1, 2006.*

*A lawyer providing a guarantee or security on a loan made in favor of a client may do so only to the extent that the interest charges, including any fees or other charges attendant to such a loan, do not exceed ten percentage points (10%) above the bank prime rate of interest as reported by the Federal Reserve Board on January 15th of each year in which the loan is outstanding. Interest together with other charges attendant to such loans which exceeds this maximum may not be the subject of the lawyer's guarantee or security."*

# State of Louisiana
## Uniform Commercial Code – Financing Statement
### UCC-1
**Important-Read instructions before filling out form.**

**1. DEBTOR'S EXACT FULL LEGAL NAME** – insert only one debtor name (1a or 1b) – do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 1b. INDIVIDUAL'S LAST NAME (AND TITLE OF LINEAGE [e.g. Jr., Sr., III], if applicable | FIRST NAME | | MIDDLE NAME | |
|---|---|---|---|---|
| Barnett | William | | B | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 101 St. Ann Street, #32 | Mandeville | LA | 70448 | USA |

| 1d. TAX ID#: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR: | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| 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 | | | | ☐ None |

**2. ADDITIONAL DEBTOR'S EXACT FULL NAME** – insert only one debtor name (2a or 2b) – do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME (AND TITLE OF LINEAGE [e.g. Jr., Sr., III], if applicable | FIRST NAME | | MIDDLE NAME | |
|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR: | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ None |

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P)** – insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| ADVOCATE FINANCIAL, L.L.C. | | | | |

OR

| 3b. INDIVIDUAL'S LAST NAME (AND TITLE OF LINEAGE [e.g. Jr., Sr., III], if applicable) | FIRST NAME | | MIDDLE NAME | |
|---|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. BOX 80839 | BATON ROUGE | LA | 70898-0839 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

A continuing security interest in all present and future rights to recover damages and other sums payable under or as a result of the claim against Lincoln General, arising out of the accident or other cause of action occurring on 5/17/2003, in Suit #05-12216, captioned William B. Barnett and Amelia Barnett vs. Lincoln General Insurance Company, pending before the 22nd JDC, Parish of St. Tammany, State of LA as well as under or arising from any other or additional claims, demands, or causes of action that may be asserted by me or by others on my behalf, in litigation or otherwise, and further including all general intangible rights relating thereto, and all proceeds thereof.

**5a.** Check if applicable and attach legal description of real property: ☐ Fixture filing ☐ As-extracted collateral ☐ Standing timber constituting goods ☐ The debtor(s) do not have an interest of record in the real property (Enter name of an owner of record in 5b)

**5b.** Owner of real property (if other than named debtor)

**6a.** Check only if applicable and check only one box.
☐ Debtor is a Transmitting Utility. Filing is Effective Until Terminated.
☐ Filed in connection with a public finance transaction. Filing is Effective for 30 Years.
**6b.** Check only if applicable and check only one box.
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held In trust or ☐ Decedent's Estate

**7. ALTERNATIVE DESIGNATION [if applicable]:** ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

**8.** Name & Phone Number to contact filer
ADVOCATE FINANCIAL    225-924-6629

**9.** Send Acknowledgment To: (Name & Address)

**10.** The below space is for Filing Office Use Only

**11.** ☐ CHECK TO REQUEST SEARCH REPORT(S) ON DEBTOR(S) (ADDITIONAL FEE REQUIRED) ☐ ALL DEBTORS ☐ DEBTOR1 ☐ DEBTOR 2

LOUISIANA APPROVED FORM UCC-1 SECRETARY OF STATE FOX MCKEITHEN (REV. 7-2001)

# ADVOCATE FINANCIAL, L.L.C.
P. O. BOX 80839
BATON ROUGE, LA 70898-0839
(225) 924-6629

## CLIENT LOAN APPLICATION

PRIMARY [x]   CO-APPLICANT [ ]

LINE OF CREDIT AMOUNT: $ 20,000.00 _____   NEW [x]   RENEWAL [ ]

**APPLICANT:**

NAME ___William B Barnett_____   DOB: __9/23/1953__   SSN: __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__
ADDRESS: __101 St. Ann Street, #32_____   CITY: __Mandeville__   STATE: __LA__
ZIP CODE: __70448__   MARITAL STATUS: [x]SINGLE [ ]MARRIED [ ]SEPARATED
TELEPHONE:(WORK)_____   (HOME)_____
SPOUSE'S NAME:_____
SSN:_____

**EMPLOYMENT:**

EMPLOYER:_____   TELEPHONE: _____
ADDRESS:_____   CITY:_____   STATE:_____   ZIP CODE:_____
SPOUSE'S
EMPLOYER:_____   TELEPHONE _____

**REFERENCES:**

BANK:_____   LOCATION:_____   ACCOUNT NO.:_____
FAMILY:_____   ADDRESS:_____   TELEPHONE:_____

**CLAIM DATA:**

NATURE OF
CLAIM: __Automobile Accident_____
DATE OF OCCURRENCE: 5/17/2003 _____   LOCATION:_____
DEFENDANTS: Lincoln General _____

DEFENDANTS'
INSURER: __Lincoln General_____
DATE SUIT FILED: __5/10/2005__   COURT: __22nd JDC__   SUIT NO.: __05-12216__
OPPOSING
COUNSEL __Perrier & LaCoste_____
ADDRESS_____

I, the undersigned applicant, am requesting that Advocate Financial, L.L.C. ("Lender") fund costs related to my above-described claim such as court costs, other litigation costs, medical costs and necessary living expenses approved by __Frank J. D'Amico, Jr., APLC__ (my "Attorney") while my claim is pending.

I understand that the Client Promissory Note I am signing authorizes my Attorney to make draws on my loan on my behalf and that all money borrowed on my loan will be deposited into an appropriate depository account of my Attorney.

I understand that (1) my loan from Lender will have to be paid off out of any funds received in partial or full satisfaction of my claim, and (2) repayment of my loan will have priority over any disbursement of claim proceeds to me. Accordingly, I direct my Attorney to pay off my loan from Lender prior to disbursing any claim proceeds to me.

For the limited purpose of inducing Lender to approve my loan and for Lender's use only, I authorize and instruct my Attorney to (1) make all my client files related to my claim available for review, inspection and copying by Lender, and (2) discuss with and provide to Lender any and all information related to my claim. This limited transmission of information regarding my claim to Lender shall be confidential and shall not constitute a waiver of the attorney-client privilege.

I certify that all statements contained in this application and all other information provided by me to Lender are accurate and truthful.

_____ 4-24-09 _____
APPLICANT   DATE   CO-APPLICANT   DATE

WITNESS: _Patricia Wininger_ DATE 4-24-09

_Patricia Wininger_
WITNESS PRINTED NAME

## INITIAL ADVANCE/DRAW REQUEST

DATE OF REQUEST: 4/23/2009

BORROWER: William B Barnett          CO-BORROWER: _____     LENDER:
    101 St. Ann Street, #32          _____          ADVOCATE FINANCIAL, L.L.C.
    Mandeville, LA 70448          _____          P. O. BOX 80839
                                     BATON ROUGE, LA 70898-0839

SSN: 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          SSN: _____

| DATE OF NOTE | FACE AMOUNT OF NOTE | PRESENT PRINCIPAL BALANCE | DRAW NUMBER | AMOUNT REQUESTED TO BE DRAWN | NEW PRINCIPAL BALANCE AFTER DRAW | MATURITY DATE |
|---|---|---|---|---|---|---|
| 4/23/2009 | 20,000.00 | 0.00 | 1 | 800.00 | 800.00 | 4/23/2010 |

Pursuant to the above referenced note of Borrower the following draw request is submitted for approval and funding.

Total Amount Requested to be Funded Under this Draw                  $ 800.00
Amount Used to Pay Off Prior Loan                           $ 0.00
Total Disbursement From This Draw to Law Firm          $ 800.00

    Court Costs, Filing Fees, etc.(Itemized)             $ 0.00
    _____ $_____
    _____ $_____
    _____ $_____
    _____ $_____
    _____ $_____

    Medical Expenses (Itemized)                   $ 0.00
    _____ $_____
    _____ $_____
    _____ $_____
    _____ $_____
    _____ $_____

    Expert Witness Fees (Itemized)               $ 0.00
    _____ $_____
    _____ $_____
    _____ $_____
    _____ $_____
    _____ $_____

    Necessary Living Expenses (Itemized)         $ 0.00
    _____ $_____
    _____ $_____
    _____ $_____
    _____ $_____
    _____ $_____

    Other Expenses (Itemized)                   $ 800.00
    Advance                 $ 800.00
    _____ $_____
    _____ $_____
    _____ $_____
    _____ $_____

### BORROWER CERTIFICATION AND AUTHORIZATION TO DISBURSE:

I certify that the above funding requests are accurate and truthful, and authorize disbursement of these funds into an appropriate depository account of my attorney.

_____          _Patricia Wininger_  4-24-09
BORROWER          DATE          WITNESS          DATE

                                        PATRICIA WININGER

_____          WITNESS PRINTED NAME
CO-BORROWER          DATE

### ATTORNEY CERTIFICATION AND AUTHORIZATION TO DISBURSE

I certify that the above funding requests are accurate and truthful, comply with Rule 1.8(e) of the Louisiana Rules of Professional Conduct and my law firm's Master Loan Facility Agreement with Lender. I also certify that the above funding requests are within the authority granted to me by Borrower in the referenced note and hereby authorize disbursement thereof directly into an appropriate depository account of my law firm. I further warrant that a copy of this request has been forwarded by regular mail to Borrower and Co-borrower, if any.

_____  4-24-09          _Patricia Wininger_  4-24-09
ATTORNEY          DATE          WITNESS          DATE

                                        PATRICIA WININGER
                                        WITNESS PRINTED NAME

# CLIENT SECURITY AGREEMENT

| GRANTOR: | CO-GRANTOR: | LENDER: |
|---|---|---|
| William B Barnett | | Advocate Financial, L.L.C. |
| 101 St. Ann Street, #32 | | P. O. Box 80839 |
| Mandeville, LA 70448 | | Baton Rouge, LA 70898-0839 |
| SSN 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 | SSN | |

THIS SECURITY AGREEMENT, dated __April 23, 2009_____, is entered into between __William B Barnett_____ ("Grantor"), and ADVOCATE FINANCIAL, L.L.C., a Louisiana limited liability company ("Lender").

**1. GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a continuing security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**2. DEFINITIONS.** The following words shall have the following meanings when used in this Agreement:

**"Agreement"** means this Security Agreement, as amended or modified from time to time, together with all exhibits and schedules attached or to be attached to this Security Agreement from time to time.

**"Collateral"** means the following:

All of Grantor's present and future rights, title and interest in and to, together with any and all present and future additions to the Claim (as defined below), including any and all Income and Proceeds from the Claim delivered or to be delivered to Grantor or to any other person for the benefit of Grantor, received or to be received by or on behalf of Grantor, or otherwise attributable to Grantor's interest in the Claim, whether from a named party in the case or any other person or entity on a named party's behalf, whether in satisfaction of a full or partial judgment or full or partial settlement of the Claim. "Claim" means that certain claim and cause of action of Grantor which arose on or about the date, involving the persons or entities (along with other parties who may not yet be identified), regarding the types of claims or injuries, and which Grantor (a) intends to assert by litigious action, if not settled before any such action is filed, or (b) has asserted as a cause of action presently pending in court, in the matter described as follows:

Grantor/Client(s): __William B Barnett_____ Other Parties Involved: __Lincoln General_____
Date of Incident: __May 17, 2003_____
Type(s) of Claims or Injuries: __Automobile Accident_____
Case Name: __William B. Barnett and Amelia Barnett vs. Lincoln General Insurance Company_____
Case No.: __05-12216__ Court: __22nd JDC__ Court Location: __St. Tammany__
Parish/County, State of __LA_____.

In addition, "Collateral" includes all Possessory Collateral delivered to Lender (or in the possession of a third party subject to the control of Lender) by or on behalf of Grantor, whether now or hereafter existing and whether tangible or intangible in character, including without limitation the following: (a) all property to which Lender acquires title or documents of title; (b) all property assigned to Lender; (c) all promissory notes, stock certificates, bonds, insurance policies, and all other instruments and evidences of an obligation; and (d) all records relating to any of the property described in this definition.

**"Event Of Default"** means any of the Events of Default set forth below in the Section 9 below.

**"Grantor"** means __William B Barnett_____, and his/her heirs, successors, representatives and assigns.

**"Guarantor"** means __Frank J. D'Amico, Jr., APLC_____ [Law Firm Name], and without limitation, any and all guarantors, sureties, and accommodation parties in connection with the Indebtedness.

**"Income And Proceeds"** mean all present and future income, proceeds, earnings, increases and substitutions from or for the Collateral of every kind and nature, including without limitation all payments, interest, profits, distributions, allocations, benefits, rights, options, monies, claims for money due and to become due, proceeds of any insurance on the Collateral, and all other types of proceeds, and all other property of every type and description which Grantor is entitled to receive on account of such Collateral, including accounts, contract rights, documents, instruments, chattel paper, and general intangibles.

**"Indebtedness"** means the indebtedness evidenced by any promissory note signed by Grantor in favor of Lender, in principal, interest, costs, expenses, and attorneys' fees, together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any Loan Document. "Indebtedness" also includes any and all other loans, extensions of credit, obligations, debts, liabilities and all other fees and charges, of Grantor, that may now and in the future be owed to or incurred in favor of Lender; as well as all claims by Lender against Grantor, whether existing now or later, voluntary or involuntary, related or unrelated, due or to become due, direct or indirect or by way of assignment, absolute or contingent, liquidated or unliquidated, individually or jointly with others, of every nature and kind whatsoever; whether Grantor may be obligated as guarantor, surety, accommodation party or otherwise; whether recovery upon such indebtedness may be or may become barred by prescription; and whether such indebtedness may be or may become void or otherwise unenforceable, up to a maximum principal amount outstanding at any one or more times, or from time to time, not to exceed $10,000,000.00, together with interest, costs, expenses, attorneys' fees and other fees and charges.

**"Lender"** means Advocate Financial, L.L.C., its successors and assigns, and any subsequent holder or holders of the Note, or any interest therein.

**"Loan Documents"** means all promissory notes, loan agreements, guaranties, security agreements, financing statements, mortgages and all other instruments, agreements and documents, whether now or hereafter existing, executed in favor of Lender by Grantor as borrower, guarantor, surety, accommodation party or otherwise.

**"Obligor"** means any person or entity obligated to Grantor to pay money or to perform some other act affecting or under the Collateral, including, but not limited to, anydefendant in a Claim or such defendant's insurer.

**"Possessory Collateral"** means the portion of the Collateral which Lender must have in its possession in order for Lender to have a perfected security interest under the provisions of the Louisiana Commercial Laws (La. R.S. 10: 9-101, et seq.).

**3. DELIVERY OF POSSESSORY COLLATERAL.** Upon execution of this Agreement, Grantor has delivered or will deliver to Lender those portions of t above described Collateral constituting Possessory Collateral. As long as this Agreement remains in effect, Grantor further agrees to immediately deliver to Lend any and all additions to and substitutions or replacements for the Possessory Collateral.

**4. CONTINUING SECURITY INTEREST TO SECURE PRESENT AND FUTURE INDEBTEDNESS.** Grantor has granted a continuing security interest in the Collateral in favor of Lender to secure any and all present and future Indebtedness of Grantor in favor of Lender, as may be outstanding from time time, with the continuing preferences and priorities provided under applicable Louisiana law.

**5. DURATION.** This Agreement shall remain in full force and effect until such time as this Agreement and the security interests created hereby are terminated canceled by Lender under a written cancellation instrument signed by Lender in favor of Grantor.

**6. GRANTORS REPRESENTATIONS AND WARRANTIES.** Grantor represents and warrants to Lender that:

**Ownership.** Until termination of this Agreement, Grantor at all times will continue to be the legal and lawful owner of the Collateral free and clear of all security interests, liens, encumbrances and claims of others except as disclosed to and accepted by Lender in writing prior to execution of this Agreement.

**Authority; No Violation.** Grantor has the right, power and authority to enter into this Agreement and to grant a continuing security interest in the Collateral in favor of Lender. Grantor's execution, delivery and performance of this Agreement do not conflict with, and will not result in a violation of, or constitute or give i to an event of default under (a) any agreement or other instrument which may be binding upon Grantor or govern or affect the Collateral, or (b) any law, governmental regulation or court decree or order applicable to Grantor or the Collateral.

**Perfection Of Security Interest.** Upon delivery of the Possessory Collateral to Lender, or upon filing of an appropriate financing statement of public record und the provisions of the Louisiana Commercial Laws (La. R.S. 10: 9-101, et seq.), this Agreement shall create a valid first lien upon, and perfect a security interest in the Collateral subject to no prior security interest, lien, charge, encumbrance or other agreement purporting to grant to any third party a security interest in the Collateral.

**Binding Effect.** This Agreement is binding upon Grantor, as well as Grantor's heirs, successors, representatives and assigns, and is legally enforceable in accordance with its terms.

**No Further Assignment.** Grantor has not, and will not, sell, assign, transfer, encumber or otherwise dispose of any of Grantor's rights in the Collateral except a provided in this Agreement.

**Survival Of Representations And Warranties.** The foregoing representations and warranties and all other representations and warranties of Grantor under this Agreement shall be continuing in nature and shall survive the termination of this Agreement.

**7. LENDER'S RIGHTS AND OBLIGATIONS WITH RESPECT TO COLLATERAL.** Lender shall have the following rights in addition to all other rights it may have by law:
**Intervention In Claims.** Whether or not an Event of Default exists under this Agreement, Lender shall have the right to protect and preserve the security interest in the Collateral granted to Lender herein by filing an intervention in any court action involving the Claim, or by notifying any party, whether orally or in writing, of the existence of Lender's security interest in the Collateral.
**Maintenance And Protection Of Collateral.** Lender may, but shall not be obligated to, take such steps as it deems necessary or desirable to protect, maintain, insure, store, or care f the Collateral, including payment of any liens or claims against the Collateral. Lender may charge any cost incurred in so doing to Grantor.
**Income And Proceeds From The Collateral.** Lender shall have the right, whether or not an Event of Default exists under this Agreement, to collect directly and receive any and all Income and Proceeds as such become due and payable. In order to permit the foregoing, Grantor unconditionally agrees to deliver to Lender, immediately following demand, any and such Income and Proceeds that may be received by or that may be payable to Grantor. Grantor further unconditionally agrees that Lender shall have the right to notify all Obligors to p and/or deliver such Income and Proceeds directly to Lender or Lender's nominee at an address to be designated by Lender, and to do any and all other things as Lender may deem necessary and proper, within Lender's sole discretion, to carry out the terms and intent of this Agreement. In order to further permit the foregoing, Grantor agrees that Lender shall ha the additional irrevocable rights, coupled with an interest, to (a) receive, open and dispose of all mail addressed to Grantor pertaining to any of the Collateral; (b) notify the postal authorities to change the address and delivery of mail addressed to Grantor pertaining to any of the Collateral to such address as Lender may designate; and (c) endorse Grantor's nam on any and all notes, acceptances, checks, drafts, money orders or other instruments of payment of such Income and Proceeds that may come into Lender's possession, and to deposit otherwise collect the same, applying such funds to the unpaid balance of the Indebtedness.
**Transactions With Others.** Lender may (a) extend time for payment or other performance, (b) grant a renewal or change in terms or conditions, or (c) compromise, compound or release any obligation, with any one or more Obligors, endorsers, or Guarantors of the Indebtedness as Lender deems advisable, without obtaining the prior written consent of Grantor, and no such act or failure to act shall affect Lender's rights against Grantor or the Collateral.
**8. LIMITATIONS ON OBLIGATIONS OF LENDER.** Lender shall use ordinary reasonable care in the physical preservation and custody of any Possessory Collateral, but sha have no other obligation to protect the Collateral (whether or not Possessory Collateral) or its value. In particular, but without limitation, Lender shall have no responsibility for (a) any depreciation in value or deterioration of the Collateral or for the collection or protection of any Income and Proceeds from the Collateral, (b) preservation of rights against parties to the Collateral or against third persons, (c) ascertaining any maturities, calls, conversions, exchanges, offers, tenders, or similar matters relating to any of the Collateral, or (d) informing Grantor about any of the above, whether or not Lender has or is deemed to have knowledge of such matters.
**9. EVENTS OF DEFAULT.** The following actions and inactions shall constitute Events of Default under this Agreement:
**Default Under The Indebtedness.** Should Grantor default in the payment of principal, interest or any charge or fee under any of the Indebtedness.
**Default Under This Agreement.** Should Grantor violate, or fail to comply fully with any of the terms and conditions of, or default under, this Agreement.
**Default Under Other Agreements.** Should Grantor violate, or fail to comply fully with any of the terms and conditions of, or default under, any promissory note or other Loan Document executed by Grantor in favor of Lender.
**10. REMEDIES.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender may exercise any one or more of the following rights and remedies:
**Accelerate Indebtedness.** At its sole option, accelerate the maturity and declare and demand immediate payment in full of any and all Indebtedness secured hereby.
**Collect The Collateral.** Collect any of the Collateral and, at Lender' s option, retain possession thereof while suing on the Indebtedness.
**Sell The Collateral.** Sell the Collateral, at Lender's discretion, as a unit or in parcels, at one or more public or private sales, or through any exchange or broker, at such prices and on such terms as Lender may deem appropriate, for cash or on credit or future delivery, without assumption of any credit risk, without any further demand or notice upon Grantor for performance, without appraisal, without the intervention of any court and without any formalities other than those provided herein. For purposes of selling the Collateral, Lender has been and is hereby made and constituted the agent of Grantor, such agency being coupled with an interest. Unless the Collateral is perishable or threatens to decline speedily in value is of a type customarily sold on a recognized market, Lender shall give or mail to Grantor, or any of them, notice at least ten (10) days in advance of the time and place of any public sa or of the date after which any private sale may be made. Grantor agrees that any requirement of reasonable notice is satisfied if Lender mails notice by ordinary mail addressed to Grantor, or any of them, at the last address Grantor has given Lender in writing. If a public sale is held, there shall be sufficient compliance with all requirements of notice to the publi by a single publication in any newspaper of general circulation in the parish or county where the Collateral is located, setting forth the time and place of sale and a brief description of t property to be sold. Lender may be a purchaser at any public sale. Grantor agrees that any such sale shall be conclusively deemed to be conducted in a commercially reasonable mann if it is made consistent with the standard of similar sales of collateral by commercial banks in Baton Rouge, Louisiana.
**Foreclosure.** Maintain a judicial suit for foreclosure and sale of the Collateral.
**Confession Of Judgment.** For purposes of foreclosure under Louisiana executory process procedures, Grantor confesses judgment and acknowledges to be indebted to Lender up to full amount of the Indebtedness. Grantor further confesses judgment and acknowledges to be indebted to Lender in the amount of all additional advances that Lender may make on Grantor's behalf pursuant to the terms of this Agreement, together with interest thereon, up to a maximum of two (2) times the total face amount of the Note or Notes secured by this Agreement. To the extent permitted under applicable Louisiana law, Grantor additionally waives: (a) the demand and three (3) days delay as provided under Articles 2639 and 2721 o the Louisiana Code of Civil Procedure; (b) the notice of seizure as provided under Articles 2293 and 2721 of the Louisiana Code of Civil Procedure; (c) the three (3) days delay provid under Articles 2331 and 2722 of the Louisiana Code of Civil Procedure; (d) all other benefits provided under Articles 2331, 2722 and 2723 of the Louisiana Code of Civil Procedure; and (e) all other Articles not specifically mentioned above.
**Specific Performance.** In addition to the foregoing remedies, or in lieu thereof, and in Lender's sole discretion, commence an appropriate action or actions against Grantor seeking specific performance of any covenants contained herein, or in aid of the execution or enforcement of any power herein granted.
**Transfer Title.** Effect transfer of title upon sale of all or part of the Collateral. For this purpose, Grantor irrevocably appoints Lender as its attorney-in-fact to execute endorsements, assignments and instruments in the name of Grantor and each of them (if more than one) as shall be necessary or reasonable.
**Other Rights And Remedies.** Have and exercise any or all of the rights and remedies of a secured creditor under the provisions of the Louisiana Commercial Laws (La. R.S. 10: 9-1 *et seq.*), at law, in equity, or otherwise.
**Application Of Proceeds And Payments.** Any and all proceeds, interest, profits, and Income and Proceeds that Lender actually receives and collects, whether resulting from the pub or private sale of the Collateral and/or collection or exercise of any of Lender's rights provided hereunder, shall be applied first to reimburse Lender for its costs and attorney's fees for collecting the same, with the balance being applied to principal, interest, costs, expenses, attorneys' fees and other fees and charges under the Indebtedness, in such order and with suc preferences and priorities as Lender shall determine within its sole discretion.
**Cumulative Remedies.** All of Lender's rights and remedies, whether evidenced by this Agreement or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and to exercise its remedies. Nothing under this Agreement or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability ol Lender to proceed directly against Grantor and/or against any Guarantor and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.
**11. INDEMNIFICATION OF LENDER.** Grantor agrees to indemnify, to defend and to save and hold Lender harmless from any and all claims, suits, obligations, damages, costs expenses (including without limitation, Lender's reasonable attorneys' fees), penalties, fines and forfeitures of any nature whatsoever which may be asserted against or incurred by Lender, arising out of or related to the Collateral, this Agreement or the rights and remedies granted to Lender hereunder. The foregoing indemnity provision shall survive the cancellation of this Agreement as to all matters arising or accruing prior to such cancellation, and the foregoing indemnity provision shall further survive in the event that Lender elect exercise any of the remedies as provided under this Agreement following any Event of Default hereunder.
**12. ADDITIONAL OBLIGATIONS OF GRANTOR.** Grantor shall have the following additional obligations under this Agreement:
**Additional Collateral.** In the event that any of the Collateral should at any time decline in value, Grantor agrees to immediately provide Lender with such additional collateral securit as may then be acceptable to Lender.
**No Sale Or Encumbrance.** As long as this Agreement remains in effect, Grantor unconditionally agrees not to sell, option, assign, pledge, or create or permit to exist any lien or security interest in or against any of the Collateral in favor of any person other than Lender.
**Notice To Obligors.** Upon request by Lender, Grantor will immediately notify individual Obligors under Grantor's Collateral, advising such Obligors of the fact that their obligations have been collaterally assigned and pledged to Lender. In the event that Grantor should fail to provide such notices for any reason, upon request by Lender, Grantor agrees that Lender may forward appropriate notices to such Obligors, either in Lender's name or in the name of Grantor.
**Additional Documents.** Grantor agrees, at any time, from time to time, one or more times, upon written request by Lender, to execute and deliver such further documents and do suc further acts and things as Lender may reasonably request, within Lender's sole discretion, to effect the purposes of this Agreement.
**Notification Of Lender.** Grantor will promptly deliver to Lender all written notices, and will promptly give Lender written notice of any other notices received by Grantor with respe to the Collateral.
**Representations And Warranties.** Take (or refrain from) any and all actions (or inactions), as necessary, for Grantor's representations and warranties in Section 6 above to remain t and correct at all times during the term of this Agreement.
**13. EFFECT OF WAIVERS.** Grantor hereby waives (a) presentment for payment, protest, notice of protest and notice of nonpayment under all of the Indebtedness secured by this Agreement; and (b) all pleas of division and discussion, and all similar rights with regard to the Indebtedness, and agrees that Grantor shall remain liable, together with any and all Guarantors of the Indebtedness, on a "solidary" or "joint and several" basis. Likewise, any (a) discharge or release of any party who is, may, or will be liable to Lender under any of th Indebtedness, (b) release of the Collateral or any other collateral directly or indirectly securing repayment of the Indebtedness, (c) acceptance of payments other than in accordance wit the terms of the Loan Documents, or (d) agreement to extend or modify such repayment terms, shall not (i) release or otherwise reduce the liability of Grantor or any other party guaranteeing payment of the Indebtedness, (ii) release any Collateral or other collateral not expressly released by Lender, or (iii) waive any of Lender's rights and

# ADVOCATE FINANCIAL, L.L.C.
## P. O. BOX 80839
## BATON ROUGE, LA 70898-0839
### (225) 924-6629

## CLIENT LOAN APPLICATION

PRIMARY [x]    CO-APPLICANT [ ]

LINE OF CREDIT AMOUNT: $ __45,000.00__    NEW [ ]  RENEWAL [x]

### APPLICANT:

NAME __William B Barnett__    DOB: __9/23/1953__    SSN: __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__
ADDRESS: __101 St. Ann Street, #32__    CITY: __Mandeville__    STATE: __LA__
ZIP CODE: __70448__    MARITAL STATUS: [x]SINGLE [ ]MARRIED [ ]SEPARATED
TELEPHONE:(WORK)_____ (HOME)_____
SPOUSE'S NAME:_____
SSN:_____

### EMPLOYMENT:

EMPLOYER:_____    TELEPHONE: _____
ADDRESS:_____    CITY:_____    STATE:_____    ZIP CODE:_____
SPOUSE'S
EMPLOYER:_____    TELEPHONE_____

### REFERENCES:

BANK:_____    LOCATION:_____    ACCOUNT NO.:_____
FAMILY:_____    ADDRESS:_____    TELEPHONE:_____

### CLAIM DATA:

NATURE OF
CLAIM: __Automobile Accident__
DATE OF OCCURRENCE:__5/17/2003__    LOCATION:_____
DEFENDANTS:__Lincoln General__

DEFENDANTS'
INSURER: __Lincoln General__
DATE SUIT FILED: __5/10/2005__    COURT: __22nd JDC__    SUIT NO.: __05-12216__
OPPOSING
COUNSEL __Perrier & LaCoste__
ADDRESS_____

I, the undersigned applicant, am requesting that Advocate Financial, L.L.C. ("Lender") fund costs related to my above-described claim such as court costs, other litigation costs, medical expenses and necessary living expenses approved by __Frank J. D'Amico, Jr., APLC__ (my "Attorney") while my claim is pending.

I understand that the Client Promissory Note I am signing authorizes my Attorney to make draws on my loan on my behalf and that all money borrowed on my loan will be deposited into an appropriate depository account of my Attorney.

I understand that (1) my loan from Lender will have to be paid off out of any funds received in partial or full satisfaction of my claim, and (2) repayment of my loan will have priority over any disbursement of claim proceeds to me. Accordingly, I direct my Attorney to pay off my loan from Lender prior to disbursing any claim proceeds to me.

For the limited purpose of inducing Lender to approve my loan and for Lender's use only, I authorize and instruct my Attorney to (1) make all my client files related to my claim available for review, inspection and copying by Lender, and (2) discuss with and provide to Lender any and all information related to my claim. This limited transmission of information regarding my claim to Lender shall be confidential and shall not constitute a waiver of the attorney-client privilege.

I certify that all statements contained in this application and all other information provided by me to Lender are accurate and truthful.

APPLICANT _____    DATE __9/14/2009__    CO-APPLICANT _____    DATE _____

WITNESS: __Patricia Wininger__    DATE __9·14·09__

__Patricia Wininger__
WITNESS PRINTED NAME

## INITIAL ADVANCE/DRAW REQUEST

DATE OF REQUEST: 9/11/2009

BORROWER: William B Barnett  CO-BORROWER: _____  LENDER:
   101 St. Ann Street, #32    _____   ADVOCATE FINANCIAL, L.L.C.
   Mandeville, LA 70448    _____   P. O. BOX 80839
SSN: 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    SSN: _____   BATON ROUGE, LA 70898-0839

| DATE OF NOTE | FACE AMOUNT OF NOTE | PRESENT PRINCIPAL BALANCE | DRAW NUMBER | AMOUNT REQUESTED TO BE DRAWN | NEW PRINCIPAL BALANCE AFTER DRAW | MATURITY DATE |
|---|---|---|---|---|---|---|
| 9/11/2009 | 45,000.00 | 0.00 | 1 | 20,710.92 | 20,710.92 | 9/11/2010 |

Pursuant to the above referenced note of Borrower the following draw request is submitted for approval and funding.

Total Amount Requested to be Funded Under this Draw          $ 20,710.92
Amount Used to Pay Off Prior Loan           $ 18,459.18
Total Disbursement From This Draw to Law Firm        $ 2,251.74
 Court Costs, Filing Fees, etc.(Itemized)        $ 470.00
  filing fees      $ 470.00
  _____  $ _____
  _____  $ _____
  _____  $ _____
  _____  $ _____

 Medical Expenses (Itemized)        $ 0.00
  _____  $ _____
  _____  $ _____
  _____  $ _____
  _____  $ _____
  _____  $ _____

 Expert Witness Fees (Itemized)       $ 0.00
  _____  $ _____
  _____  $ _____
  _____  $ _____
  _____  $ _____
  _____  $ _____

 Necessary Living Expenses (Itemized)     $ 1,758.00
  client advance  $ 800.00
  rent  $ 958.00
  _____  $ _____
  _____  $ _____
  _____  $ _____

 Other Expenses (Itemized)       $ 23.74
  courier  $ 23.74
  _____  $ _____
  _____  $ _____
  _____  $ _____
  _____  $ _____

### BORROWER CERTIFICATION AND AUTHORIZATION TO DISBURSE:

I certify that the above funding requests are accurate and truthful, and authorize disbursement of these funds into an appropriate depository account of my attorney

_signature_ 9/14/2009  _signature_ 9-14-2009
BORROWER  DATE    WITNESS    DATE

          DARRYL J. CARIMI
_____ _____  WITNESS PRINTED NAME
CO-BORROWER  DATE

### ATTORNEY CERTIFICATION AND AUTHORIZATION TO DISBURSE

I certify that the above funding requests are accurate and truthful, comply with Rule 1.8(e) of the Louisiana Rules of Professional Conduct and my law firm's Master Loan Facility Agreement with Lender. I also certify that the above funding requests are within the authority granted to me by Borrower in the referenced note and hereby authorize disbursement thereof directly into an appropriate depository account of my law firm. I further warrant that a copy of this request has been forwarded by regular mail to Borrower and Co-borrower, if any.

_signature_ 9/15/09  _signature_ 9-14-09
ATTORNEY  DATE    WITNESS    DATE

          Nancy Pavon
          WITNESS PRINTED NAME

forbearance by Lender to enforce the terms and conditions of this Agreement or the Loan Documents or to pursue its rights and remedies under this Agreement or the Loan Document shall be binding upon Lender only if Lender specifically agrees to any such waiver or forbearance in a writing signed by a duly authorized officer of Lender. A waiver or forbearance i to one Event of Default shall not constitute a waiver or forbearance as to any other Event of Default.

**14. MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with the other Loan Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreemer No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Applicable Law.** This Agreement has been delivered to Lender and accepted by Lender in the State of Louisiana. This Agreement shall be governed by and construed in accordance with the laws of the State of Louisiana.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including attorneys' fees, court costs and legal expenses, incurred in connection with the enforcement of this Agreement, whether by litigation or otherwise, and specifically including such fees and costs incurred in bankruptcy proceedings (and including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Notices.** To give Grantor any notice required under this Agreement, Lender may hand deliver or mail any notice to Grantor. Lender will deliver or mail any notice to Grantor (or any of them if more than one) at any address which Grantor may have given Lender by written notice as provided in this paragraph. In the event that there is more than one Grantor under Agreement, notice to any Grantor shall be considered notice to all Grantors. To give Lender any notice under this Agreement, Grantor (or any Grantor) shall mail the notice to Lender by registered or certified mail at the address specified in this Agreement, or at any other address that Lender may have given to Grantor (or any Grantor) by written notice as provided in this paragraph. All notices required or permitted under this Agreement must be in writing and will be considered as given on the day it is delivered by hand or deposited ir the U.S. Mail, by registered or certified mail to the address specified in this Agreement.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be invalid or unenforceable as to any person or circumstance, such finding shall not render provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified within the limits of enforceabilit validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceab.

**Sole Discretion Of Lender.** Whenever Lender's consent or approval is required under this Agreement, the decision whether to consent or approve shall be in the sole and exclusive discretion of Lender and Lender's decision shall be final and conclusive.

**Successors And Assigns Bound; Solidary Liability.** Grantor's obligations and agreements under this Agreement shall be binding upon Grantor's successors, heirs, legatees, devisee administrators, executors and assigns. In the event that there is more than one Grantor under this Agreement, all of the agreements and obligations made and incurred by Grantors und this Agreement shall be on a "solidary" or "joint and several" basis.

**Waiver Of Right To Jury Trial.** Grantor and Lender hereby waive the right to a jury trial in any action, proceeding, or counterclaim arising out of, or related to, the terms, condition or enforcement of this Agreement, or any other aspect of the Indebtedness, the Collateral or the transactions contemplated by or related to this Agreement and the Loan Documents.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS SECURITY AGREEMENT, AND GRANTOR AGREES TO ITS TERMS.**

| | | |
|---|---|---|
| _William Barnett_ 4-24-09 | | _____ _____ |
| GRANTOR             DATE | | CO-GRANTOR             DATE |
| WILLIAM BARNETT | | |
| GRANTOR PRINTED NAME | | CO-GRANTOR PRINTED NAME |

_Patricia Wininger_ 4-24-09
WITNESS                 DATE
PATRICIA WININGER
WITNESS PRINTED NAME


**ACKNOWLEDGMENT BY BORROWER**

State of Louisiana
Parish of _Orleans_

BEFORE ME, the undersigned notary, on _4·24·09_____ personally came and appeared _WILLIAM BARNETT_ [Borrower Name], who be: first duly sworn by me, did depose and say that Affiant executed this Client Security Agreement as his/her own free act and deed.

_____
NOTARY PUBLIC

_FRANK J. D'AMICO JR._
NOTARY PUBLIC PRINTED NAME

FIRM NO. **91-1**

# CLIENT PROMISSORY NOTE

| Principal | Interest Rate | Loan Date | Maturity Date | Firm Number |
|---|---|---|---|---|
| $ 20,000.00 | 12 % | 4/23/2009 | 4/23/2010 | 91-1 |

The information contained in this box is for Lender's internal use only and does not constitute a portion of the terms and conditions of this promissory note.

| BORROWER: | CO-BORROWER: | LENDER: |
|---|---|---|
| William B Barnett | | Advocate Financial, L.L.C. |
| 101 St. Ann Street, #32 | | TIN 72-1246887 |
| Mandeville, LA 70448 | | P. O. Box 80839 |
| SSN  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 | SSN | Baton Rouge, Louisiana 70898-0839 |

**1. PROMISE TO PAY.** I/We, __William B Barnett_____ ("Borrower"), promise to pay, on demand or if no demand is made then as set forth in Section 4 below, to the order of ADVOCATE FINANCIAL, L.L.C., a Louisiana limited liability company ("Lender"), the sum of _____ __TWENTY THOUSAND AND 00/100_____ Dollars ($20,000.00____), or such other amounts as may be shown from time to time on the books and records of Lender as reflecting the aggregate unpaid principal balance of loan advances made to Borrower under this Note, together with (a) simple interest assessed on a variable rate basis at the rate per annum equal to __8.75___ percentage points over the Bank Prime Loan Rate (defined below), as such interest rate may be adjusted from time to time, one or more times, (the "Stated Rate") assessed on the unpaid principal balance of this Note as outstanding from time to time, commencing on the date of funding and continuing until this Note is paid in full and (b) interest that has accrued pursuant to the terms of any and all promissory notes made by Borrower in favor of Lender which have been extended, renewed, rearranged, restructured or refinanced by this Note, to the extent that such accrued interest has not been paid, as reflected on the books and records of Lender as of the date hereof. For the sake of clarity, Borrower and Lender agree that this Note is an extension, renewal, rearrangement, restructuring or refinancing of any and all amounts of principal and accrued and unpaid interest, to the extent not previously paid by Borrower, represented by or accruing under any and all prior promissory notes executed by Borrower in favor of Lender relating to the case or cases financed by such prior promissory notes.

**2. VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change on or about January 15th of each year based on any change in the bank prime loan rate as identified by the Louisiana Supreme Court pursuant to Rule 1.8(e)(5)(iv) of the Louisiana Rules of Professional Conduct (the "Rules") (the "Bank Prime Loan Rate"). If the Bank Prime Loan Rate is unavailable during the term of this loan, Lender shall utilize in its place the "Prime Rate" as published by the Wall Street Journal on or about January 15th of each year during the term of the loan. The Bank Prime Loan Rate is currently __3.25___ % per annum. The Stated Rate to be applied to the unpaid principal balance of this Note will be at a rate of __8.75___ percentage points over the Bank Prime Loan Rate, resulting in an initial Stated Rate of __12.00___ % per annum. In no event, however, shall the interest contracted for, charged or received under this Note exceed the maximum interest permitted by Rule 1.8(e) or any other applicable provision of the Rules, and the Stated Rate shall be considered modified automatically to the extent necessary to comply at all times with the Rules. Any amounts of interest previously paid to Lender in excess of the amounts permitted by the Rules shall be applied by Lender to reduce the principal of the indebtedness evidenced by this Note, or, at Lender's option, be refunded.

**3. INTEREST.** Interest on this Note is computed on a 365/365 simple interest basis; that is, by multiplying the outstanding principal balance by the annual interest rate and by the ratio of the actual number of days the principal balance is outstanding over a year of 365 days. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing. Unless otherwise agreed or required by applicable law, payments will be applied first to accrued unpaid interest, then to principal.

**4. PAYMENT TERMS.** Borrower will pay this Note in readily available funds of all principal, accrued and unpaid interest and all accrued and unpaid interest referenced in clause (b) of Section 1 above on demand by Lender, or if no demand is made, then in one payment (a) upon the expiration of 15 days following (i) the receipt of funds in payment of any full or partial settlement or final and nonappealable judgment, or (ii) an adverse, final dismissal with prejudice of Borrower's case; or (b) on __April 23, 2010_____, whichever occurs earliest (the "Maturity Date").

**5. PREPAYMENT.** Borrower may prepay this Note at any time by paying the then unpaid principal balance of this Note plus accrued and unpaid interest hereon plus accrued and unpaid interest referenced in clause (b) of Section 1 above.

**6. DISBURSEMENTS AT LENDER'S DISCRETION.** Borrower acknowledges and agrees that no provision hereof, and no course of dealing by Lender in connection herewith, shall be deemed to create or shall imply the existence of any commitment or obligation on the part of Lender to disburse funds hereunder; any and all disbursements under this Note shall be at the sole and absolute discretion of Lender. Without in any way limiting the foregoing, Lender will require at a minimum compliance, to the sole and absolute satisfaction of Lender, with the following requirements prior to disbursing funds under this Note.

Submission Of Draw Request Form. Borrower and/or the firm representing Borrower, __Frank J. D'Amico, Jr., APLC_____ ("Law Firm") have executed and submitted to Lender a fully completed Draw Request form provided by Lender.

No Event Of Default. No condition exists which constitutes, or with the passage of time or the giving of notice by Lender would constitute, an Event of Default under this Note or any related loan document executed by Borrower.

Advancement Of Case. Borrower and Law Firm are prosecuting in a timely fashion the case or cause of action funded by disbursements under this Note with the progress in the case or cause of action to date suggesting an ensuing judgment favorable to Client in an amount necessary to cover all principal, interest, fees and charges due under this Note.

**7. SPECIAL POWER OF ATTORNEY.** Borrower hereby makes, constitutes, and appoints, both acting separately or together, Law Firm and __FD_____, individually, as Borrower's true and lawful agents, attorneys in fact and mandatories for Borrower and in Borrower's name, place and stead, and give and grant to Borrower's attorneys in fact full power and authority to do and perform each and every act and thing whatsoever requisite and necessary to be done with respect to the Note including, but not limited to, the execution of draw requests for funds and receipts for the disbursement of funds under this Note. **(BORROWER'S INITIALS** _[initials]_ **)**

**8. MANNER OF DISBURSEMENT OF FUNDS.** Borrower agrees and acknowledges that Lender shall have the right to and is hereby directed to deposit any funds disbursed to Borrower or for Borrower's benefit into the client trust account of Law Firm and, further, that such funds disbursed may be transmitted by single check, wire or other transfer with funds disbursed to or for the benefit of other clients of Law Firm. **(BORROWER'S INITIALS** _[initials]_ **)**

**9. DEFAULT.** Each of the following actions or inactions shall constitute an "Event of Default" under this Note.

Default Under This Note. Should Borrower default in the payment of any principal or interest due under this Note.

Other Defaults In Favor Of Lender. Should Borrower default under any other loan, extension of credit, security agreement or any other agreement or obligation in favor of Lender.

Default In Favor Of Third Parties. Should Borrower default under any loan, extension of credit, security agreement, or any other agreement in favor of any other creditor or person that may materially affect any of Borrower's property or ability to perform any obligation under this Agreement or any other agreement or obligation in favor of Lender.

Insolvency/ Bankruptcy. Should any of the following occur or exist: (a) the suspension, failure or insolvency, however evidenced, of Borrower; (b) the institution of proceedings for bankruptcy protection, readjustment of indebtedness, or reorganization under any insolvency law by or against Borrower; (c) the filing by Borrower of proceedings for a respite or to make a general assignment for the benefit of creditors; or (d) the application for or appointment of a receiver of all or any part of Borrower's property.

Death, Interdiction Or Incarceration. Should Borrower die, be interdicted, or be incarcerated with the result that Law Firm is prevented from prosecuting in a timely fashion the case or cause of action funded by disbursements under this Note.

Dismissal Of Law Firm. Should Borrower, despite any fee agreement, dismiss or otherwise remove Law Firm from representing Borrower, or retain other counsel to assume the primary responsibility of representing Borrower, in the case or cause of action funded by disbursements under this Note.

Affidavit Of Necessity. Should Borrower fail to execute, when requested by Lender, an affidavit, in a form satisfactory to Lender, attesting to the fact that all funds loaned to Borrower by Lender have been and will continue to be used for court costs, litigation expenses and legitimate and necessary living and medical expenses qualifying for attorney funding under the Louisiana Rules of Professional Conduct.

False Statements. Should any representation, warranty, or material statement of Borrower made in connection with the obtaining of the loan evidenced by this Note or any security agreement directly or indirectly securing repayment of this Note prove to be incorrect or misleading in any respect.

**10. LENDER'S RIGHTS UPON DEFAULT.** Should an Event of Default occur or exist under this Note, and remain uncured for ten (10) days after notice to Borrower by Lender of such Event of Default, Lender shall have the right, at its sole option, to declare formally this Note to be in default and to accelerate the maturity and insist upon immediate payment in full of the unpaid principal balance then outstanding under this Note, plus accrued and unpaid interest hereon plus accrued and unpaid interest referenced in clause (b) of Section 1 above, together with reasonable attorney's fees, costs and expenses as provided herein. Lender shall have the further right, again at its

sole option, to declare formal default and to accelerate the maturity and to insist upon immediate payment in full of every other loan, debt and obligation whatsoever that Borrower may then owe to Lender, all without further notice or demand.

**11. ATTORNEYS' FEES.** If Lender refers this Note to an attorney for collection or files suit against Borrower to collect this Note, or if Borrower files for bankruptcy or other relief from creditors, Borrower agrees to pay Lender's reasonable attorney's fees in an amount not exceeding twenty-five percent (25%) of the unpaid debt then owing under this Note.

**12. FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**13. GOVERNING LAW.** Borrower agrees that this Note and the loan evidenced hereby shall be governed under the laws of the State of Louisiana.

**14. WAIVERS.** Borrower and each guarantor of this Note hereby agree (a) to waive demand, presentment for payment, protest, notice of protest and notice of nonpayment, and all pleas of division and discussion; (b) that their obligations and liabilities to Lender hereunder shall be on a "solidary" or "joint and several" basis; (c) that discharge or release of any party who is or may be liable to Lender for the indebtedness represented hereby, or the release of any collateral directly or indirectly securing repayment hereof, shall not have the effect of releasing any other party, who shall remain liable to Lender, or of releasing any other collateral that is not expressly released by Lender; (d) that Lender's acceptance of payment other than in accordance with the terms of this Note, or Lender's subsequent agreement to extend or modify such repayment terms, or Lender's failure or delay in exercising any rights or remedies granted to Lender, shall likewise not have the effect of releasing Borrower or any other party from their respective obligations to Lender, or of releasing any collateral that directly or indirectly secures repayment hereof; (e) that Lender's failure or delay to exercise, or partial exercise of, any of Lender's rights and remedies shall not have the effect of waiving any of Lender's rights and remedies, it being Borrower's intent and agreement that Lender's rights and remedies shall be cumulative in nature; and (f) that any waiver or forbearance on the part of Lender to pursue the rights and remedies available to Lender, shall be binding upon Lender only to the extent that such waiver or forbearance is set forth in writing, and a waiver or forbearance on the part of Lender as to one Event of Default shall not be construed as a waiver or forbearance as to any other Event of Default.

**15. SUCCESSORS AND ASSIGNS LIABLE.** Borrower's and each guarantor's obligations and agreements under this Note shall be binding upon Borrower's and each guarantor's respective successors, heirs, legatees, devisees, administrators, executors and assigns. The rights and remedies granted to Lender under this Note shall inure to the benefit of Lender's successors and assigns, as well as to any subsequent holder or holders of this Note.

**16. NO REPRESENTATIONS BY LENDER.** Lender has made no representations to Borrower as to the use of the Note proceeds, Borrower's claim or cause of action or any other aspect of the transactions contemplated by or related to this Note. Borrower has established adequate means of obtaining information from Law Firm on a continuing basis regarding the use of the Note proceeds and Borrower's claim or cause of action funded hereby.

**17. GENERAL PROVISIONS.** Caption headings of the sections of this Note are for convenience purposes only and are not to be used to interpret or to define the provisions. In this Note, whenever the context so requires, the singular includes the plural and the plural also includes the singular. If any provision of this Note is held to be invalid, illegal or unenforceable by any court, that provision shall be deleted from this Note and the balance of this Note shall be interpreted as if the deleted provision never existed.

**18. WAIVER OF RIGHT TO JURY TRIAL.** Borrower and Lender hereby waive the right to a jury trial in any action, proceeding, or counterclaim arising out of, or related to, the terms, conditions or enforcement of this Note or any other aspect of the transactions contemplated by or related to this Note.

**BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS PROMISSORY NOTE AND BORROWER AGREES TO ITS TERMS.**

| | | |
|---|---|---|
| _WUBP_ 4-24-09 | | |
| BORROWER NAME          DATE | CO-BORROWER NAME          DATE |

_____          _____
BORROWER PRINTED NAME          CO-BORROWER PRINTED NAME

_Patricia Wininger_ 4-24-09
WITNESS NAME          DATE

_PATRICIA WININGER_
WITNESS PRINTED NAME

### ACKNOWLEDGMENT BY BORROWER

State of Louisiana
Parish of _ORLEANS_

BEFORE ME, the undersigned notary, on _APRIL 24_, _2009_ [Date] personally came and appeared _WILLIAM BARNETT_ [Borrower Name] ("Affiant"), who being first duly sworn by me, did depose and say that Affiant executed this Client Promissory Note as his/her own free act and deed.

_____
NOTARY PUBLIC

_FRANK J. D'AMICO, JR._
NOTARY PUBLIC PRINTED NAME

## FEDERAL TRUTH IN LENDING DISCLOSURE STATEMENT

| BORROWER: | CO-BORROWER: | LENDER: |
|---|---|---|
| William B Barnett | | ADVOCATE FINANCIAL, L.L.C. |
| 101 St. Ann Street, #32 | | P. O. BOX 80839 |
| Mandeville, LA 70448 | | BATON ROUGE, LA 70898-0839 |
| SSN 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 | SSN | (225) 924-6629 |

| ANNUAL PERCENTAGE RATE: The cost of my credit as a yearly rate. | FINANCE CHARGE: The dollar amount the credit will cost me. | AMOUNT FINANCED: The amount of credit provided to me or on my behalf. | PRIOR ACCRUED AND UNPAID INTEREST: | TOTAL OF PAYMENTS: The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|---|
| 12 | $ 2,400.00 | $ 20,000.00 | $ 0.00 | $ 22,400.00 |

**Payment Schedule:**

| NUMBER OF PAYMENTS: | AMOUNT OF PAYMENT: | MATURITY DATE: |
|---|---|---|
| 1 | $ 22,400.00 | 4/23/2010 |

ITEMIZATION OF THE AMOUNT FINANCED OF.................................................. $ 20,000.00
    Amount Disbursed to You Directly....................................................... $ 0.00
    Amount Disbursed to Your Attorney's Bank
      Client Account for Your Benefit.................................................... $ 20,000.00
AMOUNTS PAID TO LENDER:
    Prior Loan Balance......................................................................... $ 0.00
    Amount Not Yet Disbursed by Lender............................... .. ... .......... $ 0.00

**PRIOR ACCRUED AND UNPAID INTEREST:** Because your loan is an extension, renewal, rearrangement, restructuring or refinancing of a prior loan or loans made by Advocate Financial, L.L.C. to you, in addition to the foregoing you owe accrued and unpaid interest on such prior loan(s) in the amount of $ 0.00 .

**BASIS OF DISCLOSURES:** Because your loan will be advanced in multiple draws (the exact number and amounts of which are unknown at this time), this disclosure is based on the following assumptions: (a) principal outstanding of $ 20,000.00 (the maximum amount available under your loan), (b) 39 additional draws of $500.00 after the initial draw, and (c) a loan maturity date of one year. All disclosures are estimates.

**SECURITY INTEREST:** You are giving a security interest to Lender in any recovery you obtain from your _____
  Automobile Accident (type) claim against _____
  Lincoln General (persons or entities), and the following additional collateral: _____

**PREPAYMENT:** If you pay this loan off early, you will not have to pay a penalty.

**SEE YOUR LOAN DOCUMENTS FOR ANY ADDITIONAL INFORMATION REGARDING NON PAYMENT, DEFAULT, ANY REQUIRED PAYMENT IN FULL BEFORE THE SCHEDULED DATE, PENALTIES AND THE SECURITY RIGHTS GRANTED TO LENDER.**

I/WE HEREBY ACKNOWLEDGE READING AND RECEIVING A COMPLETE COPY OF THIS DISCLOSURE.

| _William B Barnett (signature)_ 4-24-09 | _____ |
|---|---|
| BORROWER        DATE | CO-BORROWER        DATE |

WILLIAM B. BARNETT
BORROWER PRINTED NAME                        CO-BORROWER PRINTED NAME

# State of Louisiana
## Uniform Commercial Code – Financing Statement
### UCC-1
**Important-Read instructions before filling out form.**

1. DEBTOR'S EXACT FULL LEGAL NAME – insert only one debtor name (1a or 1b) – do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR | 1b. INDIVIDUAL'S LAST NAME (AND TITLE OF LINEAGE [e.g. Jr., Sr., III], if applicable) | FIRST NAME | MIDDLE NAME |

Barnett | William | B

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 101 St. Ann Street, #32 | Mandeville | LA | 70448 | USA |

| 1d. TAX ID#: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR: | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | ☐ None |
|---|---|---|---|---|---|
| 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 | | | | | |

2. ADDITIONAL DEBTOR'S EXACT FULL NAME – insert only one debtor name (2a or 2b) – do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR | 2b. INDIVIDUAL'S LAST NAME (AND TITLE OF LINEAGE [e.g. Jr., Sr., III], if applicable) | FIRST NAME | MIDDLE NAME |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR: | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | ☐ None |
|---|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) – insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| ADVOCATE FINANCIAL, L.L.C. | | | |

OR | 3b. INDIVIDUAL'S LAST NAME (AND TITLE OF LINEAGE [e.g. Jr., Sr., III], if applicable) | FIRST NAME | MIDDLE NAME |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. BOX 80839 | BATON ROUGE | LA | 70898-0839 | USA |

4. This FINANCING STATEMENT covers the following collateral:

A continuing security interest in all present and future rights to recover damages and other sums payable under or as a result of the claim against Lincoln General, arising out of the accident or other cause of action occurring on 5/17/2003, in Suit #05-12216, captioned William B. Barnett and Amelia Barnett vs. Lincoln General Insurance Company, pending before the 22nd JDC, Parish of St. Tammany, State of LA as well as under or arising from any other or additional claims, demands, or causes of action that may be asserted by me or by others on my behalf, in litigation or otherwise, and further including all general intangible rights relating thereto, and all proceeds thereof.

5a. Check if applicable and attach legal description of real property: ☐ Fixture filing ☐ As-extracted collateral ☐ Standing timber constituting goods ☐ The debtor(s) do not have an interest of record in the real property (Enter name of an owner of record in 5b)

5b. Owner of real property (if other than named debtor)

6a. Check **only** if applicable and check **only** one box.
☐ Debtor is a Transmitting Utility. Filing is Effective Until Terminated.
☐ Filed in connection with a public finance transaction. Filing is Effective for 30 Years.

6b. Check **only** if applicable and check **only** one box.
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held In trust or ☐ Decedent's Estate

7. ALTERNATIVE DESIGNATION [if applicable]: ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

8. Name & Phone Number to contact filer
ADVOCATE FINANCIAL    225-924-6629

9. Send Acknowledgment To: (Name & Address)

10. The below space is for Filing Office Use Only

11. ☐ CHECK TO REQUEST SEARCH REPORT(S) ON DEBTOR(S) (ADDITIONAL FEE REQUIRED) ☐ ALL DEBTORS ☐ DEBTOR1 ☐ DEBTOR 2

LOUISIANA APPROVED FORM UCC-1 SECRETARY OF STATE FOX MCKEITHEN (REV. 7-2001)



# *Funding Report*

*Frank J. D'Amico, Jr., APLC*
*622 Baronne Street, 2nd Floor*
*New Orleans, LA 70113*

| Loan Number | Client Name | Draw | | Amount |
|---|---|---|---|---|
| 91-1-9000001 | Barnett, William | Draw: | 7 | $1,813.00 |
| 91-1-9000000R1 | Barnett, Amelia | Draw: | 7 | $450.00 |
| | | *Total Funded:* | | $2,263.00 |



# ADVANCE/DRAW REQUEST

DATE OF REQUEST: 6/30/2009

BORROWER: William B Barnett
101 St. Ann Street, #32
Mandeville, LA 70448

CO-BORROWER: _____

LENDER:
ADVOCATE FINANCIAL, L.L.C.
P. O. BOX 80839
BATON ROUGE, LA 70898-0839

SSN: 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         SSN: _____

| DATE OF NOTE | FACE AMOUNT OF NOTE | PRESENT PRINCIPAL BALANCE | DRAW NUMBER | AMOUNT REQUESTED TO BE DRAWN | NEW PRINCIPAL BALANCE AFTER DRAW | MATURITY DATE |
|---|---|---|---|---|---|---|
| 4/23/2009 | 20,000.00 | 11,845.50 | 7 | 1,813.00 | 13,658.50 | 4/23/2010 |

Pursuant to the above referenced note of Borrower the following draw request is submitted for approval and funding.

Amount requested to be funded                                              $ 1,813.00
Amount Paid on My Account                                          $ 0.00
Amount to be funded to firms Iolta client account (Itemized [X] Yes [ ] No)    $ 1,813.00

Court Costs, Filing Fees, etc. (Itemized)                     $ 55.00
   court costs                    $ 55.00
   _____          $ _____
   _____          $ _____
   _____          $ _____
   _____          $ _____

Medical Expenses (Itemized)                               $ 0.00
   _____          $ _____
   _____          $ _____
   _____          $ _____
   _____          $ _____

Expert Witness Fees (Itemized)                            $ 0.00
   _____          $ _____
   _____          $ _____
   _____          $ _____
   _____          $ _____

Necessary Living Costs (with the allowable
of the Rules of Professional Ethics) (Itemized)           $ 958.00
   rent july                    $ 958.00
   _____          $ _____
   _____          $ _____
   _____          $ _____

Other Expenses (Itemized)                                 $ 800.00
   client loan                  $ 800.00
   _____          $ _____
   _____          $ _____
   _____          $ _____

## ATTORNEY CERTIFICATION AND AUTHORIZATION TO DISBURSE

I certify that the above funding requests are accurate and truthful, comply with Rule L8(e) of the Louisiana Rules of Professional Conduct and the Master Loan Facility Agreement with Lender. I also certify that the above funding requests are within the authority granted to me by Borrower and hereby authorize disbursement thereof directly into an appropriate depository account of my law firm. I further warrant that a copy of this request has been forwarded by regular mail to Borrower and Co-borrower, if any.

_____ 6/30/09          _____ 6/30/09
ATTORNEY            DATE              WITNESS            DATE

Nancy Pavon
WITNESS PRINTED NAME

# *Funding Report*

*Frank J. D'Amico, Jr., APLC*
*622 Baronne Street, 2nd Floor*
*New Orleans, LA 70113*

| Loan Number | Client Name | Draw | Amount |
|---|---|---|---|
| | | Draw: 8 | $2,738.04 |
| 91-1-9000001 | Barnett, William | Draw: 8 | $2,790.47 |
| 91-1-9000000R1 | Barnett, Amelia | **Total Funded:** | $5,528.51 |




*Thursday, July 30, 2009*

# ADVANCE/DRAW REQUEST

DATE OF REQUEST: 7/29/2009

BORROWER: William B Barnett
            101 St. Ann Street, #32
            Mandeville, LA 70448

SSN: 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

CO-BORROWER: _____

SSN: _____

LENDER:
ADVOCATE FINANCIAL, L.L.C.
P. O. BOX 80839
BATON ROUGE, LA 70898-0839

| DATE OF NOTE | FACE AMOUNT OF NOTE | PRESENT PRINCIPAL BALANCE | DRAW NUMBER | AMOUNT REQUESTED TO BE DRAWN | NEW PRINCIPAL BALANCE AFTER DRAW | MATURITY DATE |
|---|---|---|---|---|---|---|
| 4/23/2009 | 20,000.00 | 13,658.50 | 8 | 2,738.04 | 16,396.54 | 4/23/2010 |

Pursuant to the above referenced note of Borrower the following draw request is submitted for approval and funding.

| | | |
|---|---|---|
| Amount requested to be funded | | $ 2,738.04 |
| Amount Paid on My Account | $ 0.00 | |
| Amount to be funded to firms Iolta client account (Itemized [X] Yes [ ] No) | $ 2,738.04 | |
|      Court Costs, Filing Fees, etc. (Itemized) | | $ 5.04 |
|          Pacer | $ 5.04 | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
|      Medical Expenses (Itemized) | | $ 175.00 |
|          RX | $ 100.00 | |
|          Medical | $ 75.00 | |
| | $ | |
| | $ | |
| | $ | |
|      Expert Witness Fees (Itemized) | | $ 0.00 |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
|      Necessary Living Costs (with the allowable of the Rules of Professional Ethics) (Itemized) | | $ 2,558.00 |
|          Advance/Loan | $ 1,600.00 | |
|          Rent | $ 958.00 | |
| | $ | |
| | $ | |
| | $ | |
|      Other Expenses (Itemized) | | $ 0.00 |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |

## ATTORNEY CERTIFICATION AND AUTHORIZATION TO DISBURSE

I certify that the above funding requests are accurate and truthful, comply with Rule 1.8(e) of the Louisiana Rules of Professional Conduct and the Master Loan Facility Agreement with Lender. I also certify that the above funding requests are within the authority granted to me by Borrower and hereby authorize disbursement thereof directly into an appropriate depository account of my law firm. I further warrant that a copy of this request has been forwarded by regular mail to Borrower and Co-borrower, if any.

_____ 7/29/09
ATTORNEY        DATE

Nancy Paven 7/29/09
WITNESS        DATE

Nancy Paven
WITNESS PRINTED NAME

# *Funding Report*

*Frank J. D'Amico, Jr., APLC*
*622 Baronne Street, 2nd Floor*
*New Orleans, LA 70113*

| Loan Number | Client Name | Draw | Amount |
|---|---|---|---|
| 91-1-9000001R1 | Barnett, William | Draw:  3 | $1,758.00 |
| 91-1-9000000R1 | Barnett, Amelia | Draw:  13 | $1,846.25 |
| | | *Total Funded:* | $3,604.25 |

ENTERED
10/1/09

# ADVANCE/DRAW REQUEST

DATE OF REQUEST: 9/29/2009

BORROWER: William B Barnett  
101 St. Ann Street, #32  
Mandeville, LA 70448

CO-BORROWER: _____

LENDER:  
ADVOCATE FINANCIAL, L.L.C.  
P. O. BOX 80839  
BATON ROUGE, LA 70898-0839

SSN: 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

SSN: _____

| DATE OF NOTE | FACE AMOUNT OF NOTE | PRESENT PRINCIPAL BALANCE | DRAW NUMBER | AMOUNT REQUESTED TO BE DRAWN | NEW PRINCIPAL BALANCE AFTER DRAW | MATURITY DATE |
|---|---|---|---|---|---|---|
| 9/11/2009 | 45,000.00 | 21,570.17 | 3 | 1,758.00 | 23,328.17 | 9/11/2010 |

Pursuant to the above referenced note of Borrower the following draw request is submitted for approval and funding.

$ _____ 1,758.00

**Amount requested to be funded** $ _____ 0.00  
**Amount Paid on My Account** $ _____ 1,758.00  
**Amount to be funded to firms Iolta client account (Itemized [X] Yes [ ] No)** $ _____ 0.00

Court Costs, Filing Fees, etc. (Itemized)  
$ _____  
$ _____  
$ _____  
$ _____  
$ _____

Medical Expenses (Itemized) $ _____ 0.00  
$ _____  
$ _____  
$ _____  
$ _____

Expert Witness Fees (Itemized) $ _____ 0.00  
$ _____  
$ _____  
$ _____  
$ _____

Necessary Living Costs (with the allowable of the Rules of Professional Ethics) (Itemized) $ _____ 958.00  
rent $ _____ 958.00  
$ _____  
$ _____  
$ _____

Other Expenses (Itemized) $ _____ 800.00  
advance $ _____ 800.00  
$ _____  
$ _____  
$ _____

## ATTORNEY CERTIFICATION AND AUTHORIZATION TO DISBURSE

I certify that the above funding requests are accurate and truthful, comply with Rule 1.8(e) of the Louisiana Rules of Professional Conduct and the Master Loan Facility Agreement with Lender. I also certify that the above funding requests are within the authority granted to me by Borrower and hereby authorize disbursement thereof directly into an appropriate depository account of my law firm. I further warrant that a copy of this request has been forwarded by regular mail to Borrower and Co-borrower, if any.

_____ 9/29/09  
ATTORNEY            DATE

_Nancy Pavon_ 9/29/09  
WITNESS            DATE

_Nancy Pavon_  
WITNESS-PRINTED NAME